UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| THE MAX STERN ESTATE,<br>Plaintiff,<br><br>VS.<br><br>MARIA-LOUISE BISSONNETTE, et al<br>Defendants | CA NO.: 06-211 ML<br><br>DEFENDANT MARIA-LOUISE BISSONNETTE'S MEMORANDUM IN SUPPORT OF HER 12 (b) MOTION TO DISMISS AND/OR FOR STAY |

DEFENDANT MARIA-LOUISE BISSONETTE'S MEMORANDUM IN SUPPORT OF HER 12 (b) MOTION TO DISMISS AND/OR FOR STAY

NOW COMES the defendant, Maria-Louise Bissonnette, who, by and through her attorney, files this Memorandum in support of her 12 (b) Motion to Dismiss and/or For Stay.

Introduction:

The plaintiffs in this action are not citizens of the United States nor are they citizens of Rhode Island, rather they are citizens of Canada. The plaintiffs have no substantial contact with the State of Rhode Island and suit was brought against the movant, simply, because she is presently living in Rhode Island.

As stated in the Complaint, this matter deals with a claimed painting entitled, "Girl from Sabiner Mountains," from the Galerie Stern. For most of the involved timework, the subject painting was in Germany. The Galerie was opened by decedent's father in 1913 in Düseldorf, Germany, and it was left to decedent in 1934. It was known as Galerie Stern. See ¶¶ s 9-11.

The Complaint further alleges, in 1935, the Nazi government ordered decedent to sell or liquidate the inventory in the Galerie Stern. And, in 1937, that order was upheld , the decedent, Max Stern, consigned the inventory and private collection to Lempertz Auction House of Cologne Germany. Thereafter, decedent fled Germany. See ¶¶ s 11-20.

In 1937, the Complaint alleges that defendant's step-father, who was a physician, who had joined the Nazi party (as did many, at the time) and was a medical officer. He purchased the painting through the Lempertz/Stern 1937 sale. See ¶ 27. Some time later, defendant inherited said painting from her mother. See ¶ 30

From that sale, the complaint alleges that the government forced decedent to pay excessive income and other discriminatory taxes from the sale proceeds. See ¶ 35.

As stated in the Complaint, after the war ( WW II ), in 1964, decedent, availed himself of the German courts and filed restitution claims with the German court in connection with said 1937 sale and/or auction. The decedent was awarded restitution by the German court in connection with the subject painting and all other paintings sold at that sale. See ¶¶ s 32-33.

Further, in January of 2005, representatives of plaintiff decedent's estate filed a claim for restitution for the subject painting with the State of New York, through its Banking Department, Holocaust Processing Office1. See ¶ 40.

It is to be noted that before the filing of this lawsuit, the subject painting had been sent to the German Court for judicial determination of ownership and claims-- where plaintiff Estate is a named party. However, despite plaintiff Estate's knowledge of the German

[1] The Banking Department Division for the State of New York and/or the State of New York has not been made a party to this lawsuit.

suit, plaintiff representatives claim not to have been served with process thereof, at the time of the filing of this federal suit. See ¶ 43.

In her Answer to the Complaint, at pgs 7-8, movant has requested of this court regarding the case pending before the German Court--of which the plaintiff had "notice," that the matter be stayed pending resolution of the case already pending in Germany, entitled Suit of Maria Louise Bissonnette, plaintiff against Estate of Dr. Max Stern . . . represented by the Executors and Trustees, before the County Court of Cologne, Chamber of Civil Rights, 101 Luxemburger Street, 50939 Cologne, Germany."

ARGUMENT

Forum Non Conveniens:

It is settled law, that a district court may decline to exercise its jurisdiction and venue, when it appears for the convenience of the parties and the court and the interests of justice indicate that the action should be tried in another forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249-50 (1981).

In assaying a dismissal and/or stay on the ground of forum *non conveniens*, a court considers 1) the "private interest" factors which affect the convenience of the litigants, which includes all of the "practical problems that make trial of a case easy, expeditious and inexpensive" conjoined with 2) the "public interest" factors, such as administrative difficulties flowing from court congestion; the local interest in having localized controversies resolved at home; the interests of having a forum that is familiar with the law that must govern the action; and the unfairness of burdening citizens in an unrelated forum with jury duty. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

Forum non conveniens allows a court, notwithstanding jurisdiction and proper venue, to decline the exercise of its jurisdiction in favor of letting another court, also with jurisdiction and venue hear the case, if this forum is so inconvenient that it would be unfair to litigate here. *See e.g., Gulf Oil,* 330 U.S. at 507. Further, a court may decline jurisdiction where "it appears that the convenience of the parties and the court, and the interests of justice indicate that the forum should be tried in another forum." *Royal Bed & Spring Co. Inc. v. Famossul Industria E. Commercio De Moveis, LTDA*., 906 F.2d 45, 48 (l990).

Plaintiff Estate cannot gainsay that Germany is not an "available" forum as set forth by the First Circuit in *Mercier v. Sheraton International Inc.,* 981 F.2d 1345, 1350 (1st Cir. 1992) (Cert. den. 508 U.S.912 [1993]).

Here, not only is the plaintiff Estate and its representatives amenable to process before the German court, the decedent, whose estate they represent, has, as stated in the Complaint, sought succor and relief before the German courts in connection with the subject auction and paintings sold thereat.

The decedent claimed to have possessed the painting in Germany, that he obtained it from his father's gallery in Germany, and that it was later sold in Germany at auction. Clearly, as between Rhode Island and Germany—Germany has the greater interest, as Rhode Island is only a way station, so to speak.

Hence, in this case, we have the further complication, that plaintiff has no connection to Rhode Island, coupled with the fact that decedent sought <u>*and obtained*</u> restitution from a German court, which is again considering a claim in relation to the subject painting. It would appear that the plaintiff Estate and its representatives are only

using this court to avoid the German courts, and hastily brought suit after there were put on notice of the pending German court case.

Here, the plaintiffs cannot argue that, in light of decedent's own recourse to the German courts for relief, that the German forum is inadequate. Plaintiff Estate cannot argue that there are any legal or political obstacles to pursuit of relief in Germany, since, by its own admission, where decedent sought and obtained earlier relief from the German court, that German court recognized the claim and provided relief.

A forum is considered inadequate only where in those rare cases that the remedy, which may be provided in that foreign jurisdiction, is wholly so unsatisfactory so as be determined not to provide any remedy at all. *See Piper Aircraft, supra,* 454 U.S. at 254.

In the instant premises, as shown in their complaint, the movant filed suit in the German court, well before the filing of this suit to determine ownership of the subject painting. There is, therefore, nothing to show that the German court is unfit to decide who has ownership of the subject painting.

If the German court finds that ownership of the painting rests with the Estate of Max Stern, then that clearly should satisfy their claim for ownership, which they seek to have this court decide.

Additionally, the plaintiff representatives, not being citizens of the United States or of the State of Rhode Island are not entitled to deference due to United States citizens. Moreover, the presumption that a plaintiff has chosen a sufficiently convenient forum "weakens" when the plaintiff is a foreigner litigating far from home. *Piper,* 454 U.S. at 256.

Further, the plaintiff Estate cannot show any substantial ties to the State of Rhode Island. The subject painting, as presented in its own Complaint, which she inherited in

Germany, under German law, from her mothers' estate, was brought to Rhode Island by the movant, a year or so ago (as stated by Plaintiff in its argument on their motion to compel). The painting, as shown in the pleadings, was also displayed publicly in Germany, well-after the war. Moreover, as shown in the pleadings, it was returned to Germany to the German courts for ownership consideration, before the filing of suit with this court. Thus, this is not a case where the plaintiff's choice of forum is dispositive, because "the facts in this case point to some other forum that may be more appropriate." *See Royal Bed & Spring Inc. v. Famossul Industria E. Commercio De Moveis, LTDA*., 906 F.2d 45, 48 (1990).

<u>Germany provides the most relative ease of proof access and witnesses:</u>

Here, the complaint itself establishes that Germany is the focal point of the proof of ownership and access to witnesses. In this regard, a court in considering the source of proof must "scrutinize the substance of the dispute between the parties to evaluate what the proof is required and determine whether pieces of evidence cited by the parties are critical or even relative to the plaintiff's cause of action and to any defenses to the action." *Van Cauwenberghe v. Baird*, 458 U.S. 517, 528 (1988).

In the instant premises, scrutinization of the complaint itself shows that the subject events took place in Germany relative to ownership, sale and inheritance of the subject painting. Hence, the law of Germany applies to ownership. Further, since the ownership, sale and inheritance of the subject painting took place in Germany, then most of the documentation is German. Also, most of the witnesses would have been German.2

[2] Indeed, at the hearing on plaintiff's Motion to Compel, plaintiff's counsel said that much of the documentation may be available in Germany and that the relationship of the German towns and the various German art agents and art buyers will support its claims.)

Furthermore, plaintiff's estate has already availed itself of the German courts in connection with the subject auction.

Therefore, in applying the substance of the dispute and the proof required, courts routinely hold that the most appropriate forum is that which is nearest to the relevant documents and witnesses. *See e.g. Everett/Charles Contact Products Inc. v. Gentee S.A.R.L.*, 692 F. Supp. 83, 88 (D.R.I. 1988). Clearly, Germany is the forum nearest the relevant documents, witnesses and events and, therefore, the most appropriate forum in which to hear this dispute.

Lack of Compulsory Process and Balancing the Private and Public Interest:

"Private interests" include, in Justice Jackson's phrasing, "ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses ... and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp. v.* Gilbert, 330 U.S. at 508, 67 S.Ct. 839.

As can be seen above, many of the witnesses and documents of this dispute are located in Germany and are in German. Foreign nationals are beyond the subpoena power of the courts of the United States. *Massaquoi v. Virgin Atlantic Airways*, 945 F. Supp. 58k 62 (S.D.N.Y. 1996); *Webber v. United States*, 395 F. 2d 3976, 399-400 (10th Cir. 1968). When this situation exists, courts are more likely to dismiss the case on the ground of forum -*non conveniens*. .

The doctrine of forum *non conveniens*, thus, permits a trial court, on a discretionary basis, to dismiss a case where an alternative forum is a available in another country that is fair to the parties and substantially more convenient for them or the courts. *Howe v. Goldcorp Investments, Ltd.*, 946 F.2d 944, 947 (1st Cir. 1991) (Cert. denied, 502

U.S. 1095*)*. ). In Mercier v. Sheraton Int'l, Inc., 9981 F.2d 1345, 1356 (1st Cir. 1992) (Mercier II), the First Circuit approved a determination that because a particular witness's credibility would be pivotal to any judicial resolution of the factual issues at the root of the parties' dispute... deposition testimony and letters rogatory, (to the nearby Canadian court) even if available to the American court, would be less than satisfactory substitutes for in-person testimony.

Here, Rhode Island does not have any significant interest in the painting or its ownership or in the plaintiffs. Rhode Island only has a tenuous interest, at best. Hence, this is not a situation where United States court has a particular interest, because it is not a diversity action brought by a citizen, see Mercier v. Sheraton Int'l, Inc., 935 F.2d 419, 423 (1st Cir. 1991) (Mercier I).

Germany on the other hand does have significant interest in the painting, its ownership and the parties. The public interest of Germany weighs far more heavily than any public interest in Rhode Island. Convenience, efficiency, and fairness all militate in favor of a trial in Germany.

Thus public and private interest favor dismissal on the ground of forum *non conveniens*.

Application of Law Favors Trial in Germany:

Because of the nature of this case, German law applies to the majority of claims in this Complaint. Hence, the matter before this court should be dismissed in favor of the pending action before the German Court.

This action is a diversity action, and jurisdiction is posited on state law claims.

Rhode Island follows a choice of law approach.

In determining choice of law questions, the Rhode Island Supreme Court has adopted an "interest-weighing" approach. *Najarian v. National Amusements, Inc*., 768 A.2d 1253, 1255 (R.I. 2001). *See also Taylor v. Mawss Flora Realty Inc.,* 840 A 2d 1176 (R.I. 2004). Under the interest-weighing approach, this, as stated in *Najarian,* the court will determine which state "bears the most significant relationship to the event and the parties." Id. (quoting *Cribb v. Augustyn*, 696 A.2d 285, 288 [R.I. 1997]). The Rhode Island Supreme Court has held that when choice of law questions are applied to tort cases, the following factors should also be considered: (a) location where the conduct leading to the injury occurred, (b) the parties' domicile, residence or place of business, and (c) the location where the parties' relationship was centered. Id. Public interests for this matter favor trial in the forum most familiar with the governing law. *See Piper Aircraft*, 454 U.S. at 241.

The public interest factor focuses on two issues: (1) allowing the court most familiar with the law to apply it to matters principally of concern to that nation and its citizens. *Howe v. Goldcorp Investments, Ltd*., 946 F.2d 944, 953 (1st Cir. 1991) (Cert. denied, 502 U.S. 1095*) (*dismissal of action subject to Canadian law); and (2) the time, expense involved in the development of any expert testimony on foreign law in a trial in this country. *Bank of Nova Scotia v. San Miguel*, 196 F.2d 950, 957 (1st Cir. 1952); *Banque Libanaise Pour le Commerce v. Khreich*, 915 F.2d 1000, 1006 (5th Cir. 1990).

Trial in Germany would also avoid imposition of jury service on Rhode Island residents who have little relation to the subject matter of this litigation. And proof of German law in this Court will add unnecessary time and expense for both parties.

<u>Principles of Comity Favor Dismissal, or in the Alternative, a Stay, Pending Resolution of Ownership by the German court:</u>

Withal, in addition to the various factors considered and weighed relative to the consideration of forum *non conveniens*, courts, when asked to consider the dismissal of a action brought in the United States in favor of a foreign court, take into consideration the principals of international comity, where the two actions are pending. *Ensign-Bickford v.ICI Explosives USA, Inc.*, 817 F.Supp. 1018, 1032 (D.Conn. 1993).

International comity was defined by the United States Supreme Court as:

> the recognition which one nation allows within its Territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of the laws.

*Hilton v. Guyot*, 159 U.S. 113, 164 (1895).

Comity principles also require domestic courts to take steps to prevent potential conflicts from developing into confrontations with foreign tribunals, especially where there is an action involving substantially the same issues and the same parties, which is pending before a foreign forum. *Ensign-Bickford Co*., 817 F. Supp. at 1032. Rather than dismiss the action on the grounds of comity, there is also an alternative procedure enjoyed by the court and that is the inherent power to stay the action before it pending the foreign action. *Culbertson v. Midwest Uraniam Co.*, 132 F. Supp. 678 (D. Utah 1955); *also Continental Time Corp. v. Swiss Credit Bank*, 543 F. Supp. 408, 410 (S.D.N.Y. 1982).

The doctrine of international comity can be applied retrospectively or prospectively. When applied retrospectively, domestic courts consider whether to respect the judgment of a foreign tribunal or to defer to parallel foreign proceedings. See, e.g., *Finanz AG Zurich v. Banco Economico S.A*., 192 F.3rd 340 (2d Cir. 1999) (affording comity in deference to concurrent foreign bankruptcy proceedings); (11th Cir. 1994) *Turner Entm't, Co. v. Degeto Film GmbH*, 25 F.3d 1512,25 F.3d at 1518 (11th Cir.1994)

(staying domestic legal proceedings to defer to concurrent German proceedings on the merits of the dispute); *Cunard S.S. Co. v. Salen Reefer Servs. AB,*K, 773 F. 2D 452(2d Cir. 1985) (deferring to foreign bankruptcy proceedings); see *also Canadian S. Ry. Co. v. Gebhard,* 109 U.S. 527, 3 S. Ct. 363, 27 L. Ed. 1020 (1883) (dismissing the claims of American railroad bond holders in favor of Canadian legislation and legal proceedings aimed at reorganizing the railroad's corporate structure).

When applied prospectively, domestic courts consider whether to dismiss or to stay a domestic action based on the interests of our government, the foreign government and the international community in resolving the dispute in a foreign forum. *See Bi v. Union Carbide Chems. & Plastics Co*.,984 F.2d 583 (2d Cir. 1993) (dismissing the claims of Indian nationals injured by a chemical plant explosion in Bhopal based on Indian legislation granting the Indian government exclusive standing to represent all victims); *see also Jota v. Texaco*,157 F.3rd 153 (2d Cir. 1998).

As stated in *Daewood Motor Inc. v. General Motors,* ___F.3rd ___, slip op'n August 11, 2006, (11th Cir. 2006)

> The analysis for both forms of international comity embody similar concerns with foreign governments' interests, fair procedures, and American public policy, but they emphasize different issues. When applied retrospectively, federal courts evaluate three factors: (1) whether the foreign court was competent and used "proceedings consistent with civilized jurisprudence," (2) whether the judgment was rendered by fraud, and (3) whether the foreign judgment was prejudicial because it violated American public policy notions of what is decent and just. *Turner Entm't, 25 F.3d at 1519.* Courts also consider whether the central issue in dispute is a matter of foreign law and whether there is a prospect of conflicting judgments. Id. at 1521.
>
> Applied prospectively, federal courts evaluate several factors, including the strength of the United States' interest in using a foreign forum, the strength of the foreign governments' interests, and the adequacy of the alternative forum. *See Jota*, 157 F.3d at 160 (holding that courts should consider the adequacy of the foreign forum and the strength of the foreign government's interests); *Pravin Banking Assocs.*, 109 F.3d at 854-55 (considering the strength of American public policy interests in debt enforcement and the foreign government's interest in debt

reorganization); *Bi*, 984 F.2d at 585-86 (considering the strength of the foreign government's interest in efficiently addressing a mass tort that took place within its borders). Our determination of the adequacy of the alternative forum is informed by forum non conveniens analysis. *See Jota*, 157 F.3d at 1610 (noting that forum non conveniens analysis on the adequacy of the foreign forum is equally pertinent to international comity analysis); *see also Ford v. Brown*, 319 F.3rd 1302, 1304 n.3 (finding that the international comity analysis and the forum non conveniens calculus were intertwined).

Here, if the court declines to dismiss, at this time, based on the doctrine of forum *non conveniens,* since the action is pending in Germany, it is still remains prospective and, as an alternative, this court should stay the proceedings until the German court determines ownership of the subject painting.

CONCLUSION

Based on the foregoing reasons, your movant would request that this court either dismiss the action on the ground of forum *non conveniens* or in the alternative, as part of is claims for relief in her Answer and pleadings, that this court stay the proceedings, pending the German court's decision regarding the subject painting.

DATED: At Cranston, Rhode Island this 28th day of November, 2006.

Respectfully submitted,

s/*Edward John Mulligan*

*Edward John Mulligan*, # 0143
1220 Pontiac Avenue, Suite 303
Cranston, R.I. 02920
Tel (401) 944-5820
Fax (401) 944-5823
Attorney for Marie-Louise Bissonnette

CERTIFICATION OF SERVICE

I hereby certify that I e-mailed, faxed and/or mailed a copy of the foregoing Motion to Dismiss and/or for Stay and Supporting Memoranda on behalf of defendant Maria-Louise Bissonnette, by United States mail, first-class, postage prepaid on November 28 2006 to the following counsel of record:

Tillinghast Licht LLP
Glenn R. Friedemann
10 Weybosset Street
Providence, R.I. 029203

Andrews Kurth LLP
Thomas R. Kline
L. Eden Burgess
1350 I Street NW, Suite 1100
Washington, D.C. 2005
Kevin F. Bowen, Esq.
395 Smith Street
Providence, R.I. 02908

DATED THIS 28th DAY OF NOVEMBER, 2006

s/*Edward John Mulligan*
*Edward John Mulligan*, # 0143
1220 Pontiac Avenue, Suite 303

Cranston, R.I. 02920
Tel (401) 944-5820
Fax (401) 944-5823