Case 1:06-cv-00211-ML-LDA Document 29 Filed 01/31/2007 Page 1 of 10

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| THE MAX STERN ESTATE, Plaintiff, | CA NO.: 06-211 ML |
| VS. | DECLARATION OF |
| MARIA-LOUISE BISSONNETTE, et al Defendants. | DR. ARNO SAATHOFF, ATTORNEY |
| | Fed R. Civ. P. Rule 44 1 |

**DECLARATION OF DR. ARNO SAATHOFF, ATTORNEY**

COMES NOW the defendant, Maria Louise Bissonnette, who, by and through her attorney, files this Declaration of Joachim ARNO SAATHOFF, Attorney at Law, in Cologne, Germany. which is attached herewith as Exhibit "A."

DATED: This 31st th day of January, 2007.

*Edward John Mulligan*, # 0143
1220 Pontiac Avenue, Suite 303
Cranston, R.I. 02920
Fax (401) 944-5823
e-mail: ejmull @ cox. net

Attorney for Defendant,
Maria-Louise Bissonnette

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| THE MAX STERN ESTATE,<br>Plaintiff,<br><br>VS.<br><br>MARIA-LOUISE BISSONNETTE, et al<br>Defendants | CA NO.: 06-211 ML<br><br>EXHIBIT "A"<br>DECLARATION OF<br>DR. ARNO SAATHOFF, ATTORNEY |

**EXHIBIT "A"**

**DECLARATION OF DR. ARNO SAATHOFF, ATTORNEY**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

Max Stern Estate,

Plaintiff,

v.

Civil Act. No. 06-211 (ML)

Maria-Louise Bissonnette, *et al.*

Defendants.

**DECLARATION OF DR. ARNO SAATHOFF**

DR. ARNO SAATHOFF deposes and certifies, as follows:

1. I am an attorney admitted to practice law in Germany and maintain my law offices in Cologne, Germany under the firm name of Saathoff & Kramer. I graduated from the University of Cologne Law School in 1980 and started to work as an attorney 1983 after having successfully passed my exam to be qualified for the position of a judge ("2nd Staatsexamen", this being the admission requirement for any attorney in Germany) In 1984 I have been awarded the degree of a "Master of Laws" of the University of Pennsylvania Law School and finally in 1987 the degree of a doctor juris (Dr. jur., to be compared with a Ph.D) of the University of Cologne Law School. I have not authored any articles in the past ten years and have not appeared as an expert witness in the past four years. My compensation in this matter is on a time basis of € 220,00 per hour.

2. On request of Defendant in the case Max Stern Estate vs. Maria-Louise Bissonnette et al., United States District Court for the District of Rhode Island, Civil Act No. 06-211 (ML) I make the statements following under paragraphs 3 to 8 regarding the ownership to the painting "Mädchen aus den Sabiner Bergen" under German law. Those statements to be given by me are based

a) on the allegations under paragraphs 9 to 30 of Plaintiff's Complaint of May 8, 2006, of which I have a copy

Sa

b) on my knowledge of the partial judgement ("Teilurteil") of the Landgericht Düsseldorf of Feb 24, 1964 in the matter of Dr. Max Stern vs. the State of Nordrhein-Westfalen regarding restitution, 26 O (Entsch) 454/62, of which I have a copy

c) on the understanding, that the inheritance of Defendant of whatever was the legal entitlement/position of Dr. Wilharm to the painting is not disputed.

I also read the statement given by Dr. Ulf Bischof at Dec. 13, 2006, of which I have a copy.

3. Under German law, § 929 BGB (= Civil Code), Dr. Wilharm validly has received title and ownership to the painting at the Lempertz auction on or about Nov 13, 1937 by agreement and transfer of possession. Agreement in this understanding is the consignment expressed by Dr. Stern towards Lempertz to sell and transfer ownership to the painting on his behalf and for his account to the person making the highest bid. § 929 BGB was and is the law of the land in Germany since Jan 1st, 1900.

4. The remedy provided in general by German law for persons having entered into legal agreements under threat/suppression/force/fraud/betrieval is the provision to contest/rescind such business according to § 123 sec. 1 BGB, reading in German

*Wer zur Abgabe einer Willenserklärung durch arglistige Täuschung oder widerrechtlich durch Drohung bestimmt worden ist, kann die Erklärung anfechten,*

and in English

*A person having expressed/made an agreement/a representation/a legal declaration caused by fraud or forced unlawfully by threat may rescind such agreement/representation/legal declaration.*

German law leaves it to the discretion of the victim of fraud or suppression to make the respective business void by contestation or to leave it valid § 123 BGB was and is the law of the land in Germany since January 1st, 1900. The suppression of the Jewish population in Germany during the nazi-era is considered as threat in the understanding of § 123 BGB (KG SJZ 47, 257; BAG RzW 59, 502, see also Palandt-Heinrichs, BGB, § 123 Rndnr. 18). But without a contestation ("Anfechtung") being expressed by the person entitled to do so by § 123 BGB the respective agreement/representation/legal declaration stays valid. - However, in the case pending such contestation under § 123 BGB can not be made for several reasons:

5. Originally based on orders of the military government for the American, British and French occupation zones after the war Germany has issued restitution laws according to



31 Jan 2007 15:55 HP LASERJET FAX p.2

which persons having suffered losses due to nazi-treatment had to receive compensation from the government. According to the judgement of the Landgericht Düsseldorf of Feb. 24, 1964 any losses suffered by Dr. Max Stern due to the fact that he had his paintings sold for reason of suppression of the Jewish population in the 1937 Lempertz auction are subject to compensation under such restitution law. According to the judgement of the German High Court ("Bundesgerichtshof") of Oct 8, 1953 (BGHZ 10, 340) the restitution law is "lex specialis" for all cases governed by it to the effect that it ousts/supersedes the general rules of contestation. Thus, a contestation according to § 123 BGB by Dr. Max Stern or his successors in law would not be possible here. I attach to this deposition a copy of this judgement as it is published in the official collection of the Bundesgerichtshof.

6 According to § 124 BGB a contestation under § 123 BGB is to be made within one year after the threat has ended. Since Dr. Stern initiated restitution proceedings in the early 1960's, this period has elapsed. Even if contestation would not be barred by the restitution law (see paragraph 5 above) and even if the one year period of § 124 sec. 1 BGB would not have started to run a contestation of the auction business in 1937 would be barred by the further and absolute limitation period in § 124 sec. 3 BGB, which reads in German

> *Die Anfechtung ist ausgeschlossen, wenn seit der Abgabe der Willenserklärung 10 Jahre verstrichen sind*

in English

> *Contestation is excluded after a period of 10 years has elapsed after the date when the respective business/representation/legal declaration was made..*

Apart from the fact that this period until Dec 31st, 2001 was a period of 30 years, § 124 BGB is and was the law of the land in Germany since Jan 1st, 1900. This period has run out. It has run out even under consideration of the fact that in the remaining nazi-era from 1937 until 1945 Germany did not have an equitable judicial system which would have honoured and enforced a contestation made by Dr. Stern.

7. Result of the foregoing: The ownership to the painting validly acquired by Dr. Wilharm on or about the Lempertz auction at Nov 13, 1937 has not been validly contested under German law and cannot be contested under German law.

8. German law does not acknowledge "stolen property": To the contrary, § 935 BGB orders that nobody can acquire bona fide property to an item which has been stolen from the rightful owner. This provision does not apply to the acquisition of the property to the painting by Dr. Wilharm since Dr. Stern has given away the possession to the painting to Lempertz for the auction willingly. The fact that this willingness is the result of suppression against the Jewish population in

Case 1:06-cv-00211-ML-LDA Document 29 Filed 01/31/2007 Page 6 of 10

Germany at that time in general and that the nazi government did not allow Dr. Stern to continue his art gallery in particular does not make this legal act void, but would make it subject to contestation only (if not the exemptions laid out in paragraphs 5. and 6. above would apply). But even if Dr. Stern would not effectively have lost his property to the painting at the auction to Dr. Wilharm and now the legal successors of Dr. Wilharm would be in unlawful possession of the picture: The entitlement of the rightful owner to reclaim possession from the unlawful possessor (§ 985 BGB) is barred by the general limitation period of § 197 sec. 1 BGB. Until Dec 31st, 2000 this period was 30 years; now it is 10 years. According to § 199 sec. 4 BGB this general period of limitation started when such claim of Dr. Stern first would have become due - this being Nov 13, 1937 -, regardless whether Dr. Stern then or at a later time knew who bought his painting or not. Even if the nazi-era until 1945 would not count on this limitation period it would have run out when Plaintiff raised this suit. In this respect I also refer to paragraph 4 of the statement given for Plaintiff in this case by Dr. Ulf Bischof at Dec. 13, 2006.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: January 31, 2007

DR. ARNO SAATHOFF
Saathoff & Kramer
Rechtsanwälte
Overstolzenstrasse 2 a
D-50677 Köln
Germany
Telefone: 01149-221-931250-0
Facsimile: 01149-221-931250-50



31 Jan 2007 15:55 HP LASERJET FAX S.4

bei verschiedenen Prozeßziele verfolgt. Über diese Streitpunkte war vom Gericht zu entscheiden. Die dadurch entstandenen Mehrkosten einer streitigen Verhandlung und eines insoweit streitmäßigen Urteils hat der Kläger zu tragen, der insoweit unterlegen ist (§ 91 ZPO — vgl Baumbach-Lauterbach, Kostengesetze 11. Aufl 1953 § 20 GKG Anm 5). Die durch die Nebenintervention des Freistaats Bayern entstandenen Kosten sind nach § 101 ZPO dem Beklagten aufzuerlegen, soweit er die Kosten des Rechtsstreits zu tragen hat. Im übrigen hat sie der Nebenintervenient selbst zu tragen.

## 54

**Die Regelung, die in den Rückerstattungsgesetzen der einzelnen Besatzungszonen getroffen worden ist, schließt eine Rückforderung nach allgemeinem bürgerlichen Recht wegen Nichtigkeit oder Anfechtbarkeit für gewöhnliche Entziehungsfälle aus, dh für Entziehungsvorgänge, die sich im Rahmen der allgemeinen Verfolgungsmaßnahmen gehalten haben (hier entschieden für den Geltungsbereich der VO Nr 120).**

BGB §§ 123, 138; VO Nr 120 (FrZ) Art 12 Abs 2 Satz 3; REG (BrZ) Art 49 Abs 1; REG (AmZ) Art 57.

IV. Zivilsenat. Urt. v. 8. Oktober 1953 i. S. J. AG (Kl.) w. B. (Bekl.). IV ZR 30/53.

I. Landgericht Frankenthal
II. Oberlandesgericht Neustadt

Die Klägerin gehörte zu den Firmen, die der Judengesetzgebung des Dritten Reiches unterfielen. Der „Staatskommissar in der Privatwirtschaft und Leiter der Vermögensverkehrsstelle" in W. bestellte ihr im Jahre 1939 einen Treuhänder. Dieser verkaufte und übereignete dem Beklagten in den Jahren 1940 und 1942 110 Kesselwagen.

Die Klägerin hält das Rechtsgeschäft für nichtig, weil es gegen die guten Sitten verstoßen habe. Vorsorglich hat sie den Kaufvertrag angefochten, weil er nur unter Zwang und Drohung zustandegekommen sei. Sie verlangt Herausgabe



zweier Eisenbahnkesselwagen. Diese hat der Beklagte unstreitig gemäß Kaufvertrag vom 10. Mai 1940 vom Treuhänder erworben. Die staatliche Abwicklungsstelle hat diesen Vertrag mit Schreiben vom 23. Juli 1940 genehmigt.

Die Klägerin ist in allen drei Rechtszügen unterlegen.

### Aus den Gründen:

I. Nach dem Berufungsurteil sind die Parteien darüber einig, daß der als Anspruchsgrundlage vorgetragene Sachverhalt unter die Verordnung Nr 120 vom 10. November 1947 über die Rückerstattung geraubter Vermögensobjekte (Amtsblatt des französischen Oberkommandos in Deutschland — Journal Officiel — 1947 S 1219, 1269; 1948 S 1567, 1771) fällt. In dem Verfahren wegen Rechtmäßigkeit einer einstweiligen Verfügung hat die Klägerin auch ausdrücklich erklärt, sie wolle nicht behaupten, daß bei der Eigentumsübertragung in den Jahren 1940—1942 außer der gewöhnlichen Arisierung weitere Verstöße gegen die guten Sitten vorgekommen seien. Die Klägerin kann auf Grund der Verordnung Nr 120 keine Klage mehr erheben, weil sie die bis zum 15. August 1949 gesetzte Frist (Art 13 Satz 1 aaO in Verbindung mit Art 1 der VO Nr 213 — ABl des französischen Oberkommandos in Deutschland 1949 S 2003) nicht eingehalten hat.

II. Das Berufungsgericht hat die Klage als unzulässig abgewiesen, weil die in den Rückerstattungsgesetzen getroffene Regelung als lex spezialis der Anwendung der einschlägigen Vorschriften des bürgerlichen Rechts auf sog Entziehungsakte entgegenstehe und für solche Klagen die örtlich zuständige Restitutionskammer ausschließlich zuständig sei. Werde der von der Klägerin vorgetragene Sachverhalt seines Verfolgungscharakters entkleidet, so stelle der Verkauf der Kesselwagen durch den Treuhänder an den Beklagten weder die Verfügung eines Nichtberechtigten dar, noch lasse er einen Sittenverstoß, eine arglistige Täuschung oder eine Drohung erkennen. Das Berufungsgericht hat sich damit der im Schrifttum zum Rückerstattungsrecht weitaus überwiegend vertretenen Ansicht angeschlossen, daß die Rückerstattungsregelung

Case 1:06-cv-00211-ML-LDA Document 29 Filed 01/31/2007 Page 8 of 10




in allen Zonen der Bundesrepublik für ihren Bereich die Anfechtbarkeit oder Nichtigkeit des Entziehungsvorganges nach bürgerlichem Recht ausschließe (so Erman-Westermann Anm 9 zu § 123 BGB; ebenso hinsichtlich der Anfechtbarkeit nach § 123 BGB: RGRK 10. Aufl Anm 4 Abs 3; Soergel 8. Aufl Anm III 1 b; Palandt 11. Aufl Anm 1 d). Hierzu ist auch bei Harmening-Hartenstein-Osthoff-Falk 2. Aufl in Anm 3 zu Art 49 REG (BrZ) ausgeführt: Ansprüche, die sowohl nach dem Rückerstattungsgesetz wie nach allgemeinem Recht begründet seien, könnten nur im Rückerstattungsverfahren geltend gemacht werden, wenn das Rückerstattungsgesetz die Folgen aus dem gegebenen Tatbestand abschließend regeln wolle. Das sei zB der Fall, wenn eine ungerechtfertigte Entziehung und gleichzeitig die Nichtigkeit wegen Sittenwidrigkeit oder wegen Drohung oder Zwang geltend gemacht werde (ähnlich Kubuschok-Weißstein Anm 4 zu Art 49 REG (BrZ) und Art 57 REG (AmZ)). Auch nach der Rechtsauffassung von Goetze Anm zu Art 57 REG (AmZ) S 294 können „einwandfreie Rückerstattungsfälle", wenn die Frist für eine Rückerstattungsklage versäumt wurde, nur dann vor den ordentlichen Gerichten geltend gemacht werden, wenn sie anders begründet werden als mit Verfolgungsmaßnahmen. Eine abweichende Ansicht ist nur vereinzelt mit der allgemeinen Erwägung vertreten worden, es sei nicht anzunehmen, daß diese dem Verfolgten so gewogenen Gesetze die Rechtsstellung hätten schmälern wollen, die er nach bürgerlichem Recht innehabe (so von Godin 2. Aufl Anm 1 zu Art 57 REG (AmZ) S 189; ähnlich Dubro NJW 1953, 706).

Dem Berufungsgericht ist beizutreten. Der Bundesgerichtshof hat bereits ausgesprochen, daß die durch § 3 der Elften Verordnung zum Reichsbürgergesetz angeordneten Enteignungen niemals Recht, vielmehr schon zur Zeit ihrer formalen Geltung Unrecht waren (BGHZ 9, 34 [44]), ferner daß die auf Grund der Verordnung zur Ausschaltung der Juden aus dem deutschen Wirtschaftsleben vom 12. November 1938 (RGBl I, 1580) und der Durchführungsverordnung vom 23. November 1938 (RGBl I, 1642) durch behördlich bestellte Abwickler durchgeführten „Liquidierungen" von Einzelhan-



delsgeschäften jüdischer Inhaber rechtswidrig gewesen seien (Urt v. 18. März 1953, VI ZR 15/52). Entsprechendes gilt für die hier in Betracht kommende Verordnung über den Einsatz des jüdischen Vermögens vom 3. Dezember 1938 (RGBl I, 1709), auf die der Genehmigungsbescheid der Abwicklungsstelle vom 23. Juli 1940 sich stützt. Der II. Zivilsenat des Bundesgerichtshofs hat aber trotz dieses Ausgangspunktes wiederholt ausgesprochen, daß Ansprüche, die aus der Unrechtmäßigkeit nationalsozialistischer Akte von Vermögensentziehungen hergeleitet werden, nur noch nach Maßgabe der Rückerstattungs- und Entschädigungsgesetze und nur in den dort vorgesehenen Verfahren geltend gemacht werden können (Urt vom 31. Januar 1952, II ZR 56/51 [nicht veröffentlicht] und Urteil vom 11. Februar 1953, II ZR 51/52 = BGHZ 9, 34 [45]). Der IV. Zivilsenat schließt sich dieser Auffassung an. Sie wird durch die Entstehungsgeschichte der Rückerstattungsgesetzgebung und den Wortlaut einzelner Bestimmungen gerechtfertigt und entspricht auch der allgemeinen Forderung nach Rechtssicherheit und baldiger Beruhigung des Wirtschaftslebens.

Die Rechtsprechung hat schon vor Erlaß der Rückerstattungsgesetze (für die amerikanische Zone: Gesetz Nr 59 vom 10. November 1947; für die französische Zone: VO Nr 120 vom 10. November 1947; für die Britische Zone: Gesetz Nr 59 vom 12. Mai 1947; für Westberlin: Rückerstattungsanordnung vom 26. Juli 1949) versucht, in sog Entziehungsfällen auf Grund von Verfolgungsmaßnahmen dem Geschädigten unter Anwendung allgemeiner bürgerlichrechtlicher Bestimmungen zu helfen. Diese Versuche haben die besonderen Schwierigkeiten aufgezeigt, solche außergewöhnlichen Tatbestände, wie sie sich aus den Verfolgungsmaßnahmen des Dritten Reiches — auf Grund formell ordnungsmäßig erlassener Gesetze, in genau geregelten Verfahren, unter Mitwirkung behördlich bestellter Treuhänder — ergeben haben, mit dem bisher geltenden Recht voll zu erfassen und hierbei den berechtigten Belangen *aller* Beteiligten gerecht zu werden. Dabei gingen zum Teil schon die Meinungen auseinander, inwieweit dem Betroffenen nur unter dem Gesichtspunkt der

Case 1:06-cv-00211-ML-LDA Document 29 Filed 01/31/2007 Page 9 of 10





Kollektivdrohung über § 123 BGB (KG SJZ 1947, 257) oder allenfalls auf Grund des § 138 BGB wegen sittenwidriger Ausnutzung einer Zwangslage (OGHBZ Urt vom 9. Mai 1949 — II ZS 64/48, mitgeteilt von Delbrück MDR 49, 469) geholfen werden könne. Diese Schwierigkeiten führten zu der weit verbreiteten Auffassung, daß diese Fragen nur durch ein besonderes Gesetz zufriedenstellend gelöst werden könnten (vgl insbesondere die Anmerkung von Roemer zu dem Kammergerichtsurteil in SJZ 1947, 263 [265]).

Der Wortlaut der Rückerstattungsgesetze deutet auch darauf hin, daß sie — in Erkenntnis dieser Schwierigkeiten — die Ansprüche für reine Entziehungsfälle abschließend haben regeln wollen. Nach Art 49 Abs 1 Satz 1 REG (BrZ) und fast gleichlautend auch nach Art 57 Satz 1 REG (AmZ) können „Ansprüche, die unter dieses Gesetz fallen, soweit in ihm nichts anderes bestimmt ist, nur in dem in diesem Gesetz vorgeschriebenen Verfahren und unter Einhaltung seiner Fristen verfolgt werden". Nach Art 49 Abs 1 Satz 2 REG (BrZ) können allerdings „Ansprüche aus Gründen, die nicht unter dieses Gesetz fallen, im ordentlichen Rechtsweg geltend gemacht werden". Nach Art 57 Satz 2 REG (AmZ) gilt das gleiche für „Ansprüche aus unerlaubter Handlung, die nicht unter die Bestimmungen dieses Gesetzes fallen" Wie bei Kubuschok-Weißstein, Rückerstattungsrecht, Anm 4 zu Art 49 überzeugend dargelegt worden ist, beschränkt sich aber diese Ausnahme auf Ansprüche aus Fällen, die tatbestandsmäßig außerhalb des Rahmens des Rückerstattungsrechts liegen, also nicht den im Rückerstattungsgesetz festgelegten Entziehungstatbestand erfüllen. Die sehr viel knapper gefaßte Verordnung Nr 120 enthält zwar keine Regelung, die den vorerwähnten beiden Vorschriften voll entspricht. Immerhin bestimmt auch Art 12 Abs 2 Satz 3 dieser Verordnung, daß die Restitutionskammern „unter Ausschaltung jeder anderen Gerichtsbarkeit zuständig zur Entscheidung über Klagen von Opfern der den Vorschriften dieser Verordnung unterfallenden Akte" sind. Die hier in Betracht kommende Veräußerung war ein solcher Akt, der von der Verordnung Nr 120 betroffen und in ihr für nichtig erklärt wird, nämlich eine nach dem 30. Januar 1933 ohne die Zustimmung ihres Eigentümers vorgenommene Verfügung über Güter „im Verfolg von Maßnahmen, die auf Rasse gestützte Unterscheidungen eingeführt haben" (Art 1 Abs 1 aaO).



Das Berufungsgericht hat ferner mit Recht darauf hingewiesen, daß die gegenüber der allgemeinen 30jährigen Verjährungsfrist verhältnismäßig kurzen Klagefristen der Rückerstattungsbestimmungen ersichtlich gesetzt worden sind, um im Interesse einer baldigen Beruhigung des Wirtschaftslebens die durch die Rückerstattung neuerdings veranlaßten umfangreichen Vermögensverschiebungen innerhalb einer angemessenen Frist zum Abschluß zu bringen. Mit diesem Gesetzeszweck wäre es unvereinbar, wenn der Rückerstattungsberechtigte auch außerhalb eines Rückerstattungsverfahrens Ansprüche nach allgemeinen Grundsätzen geltend machen könnte. Eine solche Möglichkeit würde für die Rückerstattungspflichtigen einen Schwebezustand und damit eine starke Rechtsunsicherheit herbeiführen, die bei Abwägung der beiderseitigen und auch allgemeiner Belange nicht gerechtfertigt wäre. Denn dem Rückerstattungsberechtigten hat die Rückerstattungsgesetzgebung eine angemessene Grundlage für seine Ansprüche aus Verfolgungsmaßnahmen gegeben. Der Rückerstattungspflichtige konnte andererseits davon ausgehen und sich in seinen Vorhaben auch darauf einstellen, daß ihn nach Ablauf der Klagefristen der Rückerstattungsgesetze keine Ansprüche mehr bedrohen würden. Das Berufungsgericht hat mit Recht darauf hingewiesen, daß diese Rechtswohltat demjenigen nicht zukommt, der einen Tatbestand verwirklicht hat, welcher über die gewöhnlichen Entziehungsfälle hinausgeht, etwa demjenigen, der einen Juden bestohlen hat. Einen solchen weitergehenden Sachverhalt will die Klägerin aber nach ihrer ausdrücklichen Erklärung nicht behaupten.

Case 1:06-cv-00211-ML-LDA Document 29 Filed 01/31/2007 Page 10 of 10

CERTIFICATION OF SERVICE

I, hereby certify that hand-delivered, e-mailed and/or mailed a true copy of the Answer to the Complaint, to the following listed attorneys of record, by United States mail, first-class, postage prepaid on this 31st h day of January, 2007, VIZ:

Tillinghast Licht LLP
Samuel Zurier, Esq.
10 Weybosset Street
Providence, R.I. 02903-2818

Andrews Kurth LLP
Thomas R. Kline, Esq.
L. Eden Burgess, Esq.
1350 I Street NW, Suite 1100
Washington, D.C. 2005

Kevin F. Bowen, Esq.
395 Smith Street
Providence, R.I. 02908

Edward John Mulligan