**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| Max Stern Estate,<br><br>Plaintiff,<br><br>v.<br><br>Maria-Louise Bissonnette, *et al.*<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Civil Act. No. 06-211 (ML)** |

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**
**AND REQUEST FOR EXPEDITED REVIEW**

Pursuant to Fed. R. Civ. P. 65, Max Stern Estate ("Stern Estate" or "Plaintiff") hereby submits its Motion for Preliminary Injunction seeking an interim order (1) restraining Defendant Maria-Louise Bissonnette ("Bissonnette" or "Defendant") from further movement of the painting, without leave of Court, and (2) allowing a representative of Stern Estate to examine the painting to verify the storage conditions are appropriate and the painting is in satisfactory condition and not deteriorating. Plaintiff seeks no testing or the right to take any actions that would endanger the painting or inconvenience Defendant.

Plaintiff seeks this relief because Defendant refuses to allow the painting to be viewed in its current storage location. Defendant has also failed to provide an acknowledgement by Dr. Joachim Rosshoff that he is securing the painting pursuant to the agreement of the parties.

In support of this Motion, Plaintiff submits herewith its Memorandum of Law in Support of Plaintiff's Motion, the Declaration and Expert Report of Lynn H. Nicholas dated Dec. 28, 2006, and Declaration of Thomas R. Kline dated May 9, 2007. Plaintiff also relies on the Declaration of Anna B. Rubin, dated Dec. 15, 2006, previously filed with the Court as Exhibit 2

to Plaintiff's Memorandum of Law in Support of Plaintiff's Objection to Defendant Bissonnette's 12(b) Motion to Dismiss and/or for Stay.

Plaintiff requests expedited review of this motion.

WHEREFORE, Plaintiff moves that its Motion be GRANTED.

Dated: May 10, 2007

*/s/ Thomas R. Kline*
ANDREWS KURTH LLP
Thomas R. Kline (admitted *pro hac vice*)
thomaskline@andrewskurth.com
L. Eden Burgess (admitted *pro hac vice*)
edenburgess@andrewskurth.com
1350 I Street NW, Suite 1100
Washington, DC 20005
Telephone: (202) 662-2700
Facsimile: (202) 662-2739

*/s/ Samuel D. Zurier*
TILLINGHAST LICHT LLP
Samuel D. Zurier (R.I. Bar No. 3576)
szurier@tllaw.com
10 Weybosset Street
Providence, RI 02903-2818
Telephone: (401) 456-1200
Facsimile: (401) 456-1210

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on May 10, 2007, the foregoing was served electronically through ECF and by first-class U.S. mail, postage prepaid, on the following:

Edward J. Mulligan, Esq.
1220 Pontiac Avenue
Suite 303
Cranston, RI 02920
*Counsel to Defendant Maria-Louise Bissonnette*

Kevin F. Bowen, Esq.
Breggia, Bowen & Grande
395 Smith St.
Providence, RI 02908
*Counsel to Defendant Estates Unlimited*

____*/s/ Miranda Perkins*__

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| Max Stern Estate, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **Civil Act. No. 06-211 (ML)** |
| | § | |
| Maria-Louise Bissonnette, *et al.* | § | |
| | § | |
| Defendants. | § | |
| | § | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR EXPEDITED REVIEW**

Pursuant to Fed. R. Civ. P. 65, Max Stern Estate ("Stern Estate" or "Plaintiff") submits this Memorandum of Law in Support of its Motion for Preliminary Injunction asking that the Court enter an Order (1) restraining Defendant Maria-Louise Bissonnette ("Bissonnette" or "Defendant") from further movement of the Painting, without leave of Court, and (2) allowing Stern Estate to have a representative examine the Painting at its current location to ensure that the storage conditions are appropriate and the painting is in satisfactory condition and not deteriorating, and, in support thereof, states as follows:

**SUMMARY OF ARGUMENT**

Plaintiff asks this Court to bring the Painting at issue in this case, "Girl from the Sabiner Mountains," under the control of the Court – a simple step that does not infringe significantly on Defendant's rights – and to order Defendant to permit Plaintiff to examine the Painting at its current storage location, which is routine in cases concerning unique property. *See, e.g., Sotheby's, Inc. v. Rod Shene, et al.,* Civ. Act. No. 04 Civ. 10067 (TPG) (slip op.) at 4 (S.D.N.Y. Dec. 23, 2005) ("[T]he parties must be able to examine the Property as this litigation progresses.") (Decl. of Thomas R. Kline in Supp. of Mot. for Prelim. Inj. dated May 9, 2007

("Kline Prelim. Inj. Decl."), Ex. 1.) Although Bissonnette has agreed that her German lawyer will keep the Painting under his control,[1] she has never informed Stern Estate of its current location and the lawyer himself, Dr. Joachim Rosshoff, has failed to respond to requests that he endorse the agreement in order to demonstrate his commitment to its terms, creating uncertainty. Consequently, Plaintiff moves for the entry of an Order directing Defendant: (1) to have her German lawyer secure the Painting at its current storage location, and (2) to permit a representative of Stern Estate to examine the Painting at its current location.

**FACTUAL BACKGROUND**

As the Court is aware, Plaintiff first learned in January 2005 that the Painting at issue here was located in Rhode Island. When Plaintiff attempted to negotiate its return through the Holocaust Claims Processing Office, a division of the New York State Banking Department ("HCPO"), Defendant secretly removed the painting from Rhode Island, sent it to Germany, and commenced an action in that country to decide its ownership under German law. Plaintiff has since learned that this act of removal was not only secretive, but also highly irregular and probably in violation of Federal law, as Defendant sent the Painting to Düsseldorf, Germany – not Cologne – through the U.S. Postal Service, declaring its value to be the outrageously low figure of $50.00 for U.S. Customs purposes. (U.S. Postal Service, Customs Declaration and Dispatch Note, dated Sept. 15, 2005 (Kline Prelim. Inj. Decl. Ex. 2).) In contrast, Defendant informed this Court that the Painting's value was about $80,000. (*See* Def. Bissonnette's Aff. in Supp. of 12(b) Mot. to Dismiss and/or for Stay filed with the Court and dated Dec. 28, 2006

---

[1] After some delay, Defendant now says she is willing to allow an examination on May 16, but insists the Painting first be moved to her German lawyer's offices in Cologne, exposing the Painting to transportation risk during the trip from the current undisclosed location to Dr. Rosshoff's office and back, and denying Stern Estate the opportunity to determine the appropriateness of the current storage arrangements for a roughly 150-year-old painting.

("Bissonnette Aff."), at 3, ¶ 7(i) (stating that her "Complaint before the Cologne Court . . . states . . . the object value of the subject painting is 60,000. Euro," which is presently about $80,000).)

Other documents produced in discovery indicate that Dr. Rosshoff, on behalf of Bissonnette, was involved – after the filing of this lawsuit – in exploring sales opportunities for the Painting. (Letters from A. Strasoldo to J. Rosshoff, dated Aug. 9, 2006 and Aug. 16, 2006, (Kline Prelim. Inj. Decl. Ex. 3).)

After Plaintiff filed this lawsuit, Defendant moved to dismiss under Rule 12(b), arguing that the German proceedings she had started took precedence over this Court's review. The Court denied the Motion, noting its concern that Bissionnette "unilaterally took it upon herself to send [the painting] out of the country." (Mot. to Dismiss Tr. at 7:16-17; *see also id.* at 7:7-9 ("as I understand it, the painting was here in Rhode Island up until just prior to the filing of this lawsuit").) Since the January hearing, Stern Estate has heard nothing further about the proceedings in Germany, nor has it been served with process in that case.

With the discovery of Bissonnette's act of deceit on United States – and in all likelihood German Customs – concerning value, and with her failure to move forward with proceedings in Germany, Stern Estate became concerned that Defendant would no longer feel the need to keep the Painting secure in Germany. Once again, Plaintiff tried to work with the Defendant cooperatively, rather than to invoke this Court's jurisdiction. Plaintiff entered an agreement with Bissonnette providing that she would allow a Stern Estate representative to examine the Painting and that she would keep the Painting within the possession, custody or control of her German lawyer, Dr. Joachim Rosshoff. (Letter from S. Buckley to R. Vineberg, dated Apr. 10, 2007 (Kline Prelim. Inj. Decl. Ex. 4).)

Plaintiff also became concerned that it had no indication from Dr. Rosshoff himself that he accepted personal responsibility for the safety and security of the Painting. Accordingly, Plaintiff's lead counsel in this case Thomas R. Kline, and Clarence Epstein, representative of Stern Estate beneficiaries, joined Stern Estate counsel and co-trustee Robert S. Vineberg in co-signing the April 20 letter agreement. (*See* Kline Prelim. Inj. Decl. Ex. 5.) In spite of the April 20 agreement and the co-signatures on behalf of Stern Estate and its beneficiaries, Bissonnette has: (1) refused to allow a Stern Estate representative to examine the Painting at its storage location or even to disclose the current storage location; and (2) failed to have Dr. Rosshoff verify that he accepts responsibility for the Painting.

For these reasons, Stern Estate believes it necessary to seek Court intervention and to ask for entry of an interim Order: (1) restraining Bissonnette from further movement of the Painting, and (2) allowing a Stern Estate representative to examine the Painting and the storage conditions to make sure that the Painting is in satisfactory condition and not deteriorating. Taking these steps is minimally intrusive to Defendant and is necessary to protect Stern Estate's interest in being certain that Bissonnette would be able to return the Painting to it in reasonable condition.

## ARGUMENT

### I. Legal Standards For Preliminary Injunction.

Courts in this Circuit apply a four-factor test to a motion for preliminary injunction:

> (1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, *i.e.*, the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.



WAS:128831.3

*Esso Std. Oil Co. v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006). A plaintiff need not prove its claim at the preliminary injunction stage, but need only make out a *prima facie* case. *Coolbeth v. Berberian*, 313 A.2d 656, 660 (R.I. 1974).

## II. Plaintiff Has Demonstrated A *Prima Facie* Replevin Claim.

### A. The Court is Likely to Apply Rhode Island Law to Plaintiff's Replevin Claim

In a diversity case, a federal court must apply the choice of law analysis of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *see also Crellin Technologies, Inc. v. Equipmentlease Corp.*, 18 F.3d 1, 4 (1st Cir. 1994). Therefore, Rhode Island's choice of law rules will determine which law applies to this case.

In resolving conflict of law disputes arising out of tort actions, Rhode Island employs an interest-weighing approach. *Blais v. Aetna Cas. & Sur. Co.*, 526 A.2d 854, 856 (R.I. 1987). Under this approach, various interests are weighed in order to decide which jurisdiction has the most significant relationship with reference to a particular substantive issue. *Waters v. Walt Disney World Co.*, 237 F. Supp. 2d 162, 166 (D. R.I. 2002); *Pardey v. Boulevard Billiard Club*, 518 A.2d 1349, 1351 (R.I. 1986). The Court will take into account (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the place that the parties call home (*e.g.*, their domicile, residence, place of incorporation, or place of business); and (4) the place where the relationship, if any, between the parties is centered. *Brown v. Church of the Holy Name*, 252 A.2d 176, 179 (R.I. 1969). However, the resolution of choice of law problems may not turn on the number of contacts, but on the qualitative nature of those contacts affected by: (1) predictability of results; (2) maintenance of interstate order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law. *See Brown*, 252 A.2d at 178. The facts in this proceeding



WAS:128831.3

demonstrate that under Rhode Island's interest-weighing approach, this State has a more significant relationship with the substantive issues than Germany or any other jurisdiction.

**1. The injury occurred in Rhode Island.**

Upon learning that Estates Unlimited here in Providence possessed the Painting, Plaintiff made claim for restitution with HCPO in New York. (*See* Pl.'s Complaint ("Compl.") ¶¶ 38-39.) Shortly thereafter, acting on behalf of Plaintiff, HCPO sent a demand letter to Defendant through Estates Unlimited (which had the Painting on consignment from Defendant) seeking restitution of the Painting. (Declaration of Anna B. Rubin, dated Dec. 15, 2006 ("Rubin Decl."), previously filed with the Court as Ex. 2 to Pl.'s Mem. of Law in Supp. of Pl.'s Objection to Def. Bissonnette's 12(b) Mot. to Dismiss and/or for Stay ¶ 4, and Letter from Sherri North Cohen to Maria L. Bissonnette, dated Feb. 8, 2006 (Rubin Decl. Ex. A).) Defendant, living here in Rhode Island, refused to return the Painting as demanded by HCPO, giving rise to Plaintiff's replevin claim (Compl. ¶¶ 44, 49-57) and, instead, shipped the Painting from Rhode Island to Düsseldorf to evade Plaintiff. Therefore, the injury suffered by Stern Estate occurred in Rhode Island.

**2. Some conduct causing the injury occurred in Rhode Island.**

Defendant possessed the Painting in Rhode Island (Compl. ¶ 43) and consigned it to Estates Unlimited here for sale in this State. (Compl. ¶ 37; Answer to Compl. by Maria-Louise Bissonnette ("Ans.") ¶ 37.) Her wrongful possession started in Rhode Island, when she refused the demand of the lawful owner and secretly rushed the Painting out of the jurisdiction after being informed that Stern Estate was considering suit. (Compl. ¶¶ 41, 43; Ans. ¶ 41.)

**3. Bissonnette is a United States citizen domiciled in Rhode Island.**

Defendant is a United States citizen domiciled in Rhode Island (Ans. ¶ 3) and Stern Estate is domiciled in Canada. (Compl. ¶ 2.) Thus, consideration of this factor weighs in favor of applying Rhode Island law.

**4. There was no prior relationship between the parties.**

Prior to the inception of this proceeding, no relationship existed between the parties. Therefore, this consideration does not factor into the interest-weighing analysis.

**5. The qualitative nature of the contacts with Rhode Island, as affected by the relevant factors, indicates that Rhode Island law applies.**

Qualitative consideration of the context and history of this case further supports the application of Rhode Island law. *See Brown*, 252 A.2d at 178. Predictability of results, maintenance of interstate order, simplification of the judicial task, advancement of the forum's governmental interest, and application of the better rule of law (*see id.*) all weigh in favor of Rhode Island applying its own substantive law to the instant Motion.

In stolen art cases, especially those arising from theft of property during the World War II era, American courts are inclined to apply the substantive law of the jurisdiction where the property is found:

> The fact that the theft of the paintings did not occur in New York is of no relevance. In applying the New York rule that a purchaser cannot acquire good title from a thief, New York courts do not concern themselves with the question of where the theft took place, but simply whether one took place. Similarly, the residence of the true owner is not significant for the New York policy is not to protect resident owners, but to protect owners generally as a means to preserve the integrity of transactions and prevent the state from becoming a marketplace for stolen goods.

*Kunstsammlungen Zu Weimar v. Elicofon*, 536 F. Supp. 829, 846 (S.D.N.Y. 1981). New York courts, for example, apply local law to questions of title in recognition that, "New York enjoys a

worldwide reputation as a preeminent cultural center" and seeks to avoid becoming a haven for art stolen abroad. *Guggenheim Found. v. Lubell*, 569 N.E.2d 426, 431 (N.Y. 1991).[2] Here, a number of factors connect this case to Rhode Island: (1) Bissonnette brought the Property to this State long ago to enjoy it here and later tried to take advantage of the local art market, consigning it to Estates Unlimited for sale here, (2) Estates Unlimited received notification from HCPO that Stern Estate claimed to be the owner of the Painting; (3) Estates Unlimited informed Bissonnette that HCPO had received the Stern Estate claim; (4) Bissonnette, while living in Rhode Island, negotiated with Stern Estate, through the good offices of HCPO (Ans. ¶ 42); (5) Bissonnette rejected Stern Estate's demand for return when the Property was here and with Estates Unlimited for sale; and (6) Bissonnette used a U.S. Postal Service facility in Providence when she spirited the Painting out of the United States. In light of the foregoing, Rhode Island has a more significant relationship with the substantive issues in this case than Germany and as such, Rhode Island law should be applied.

**B. Under Rhode Island Law, Stern Estate is Likely to Prevail In Replevin.**

In order to recover on a replevin claim under Rhode Island law, Stern Estate need only establish that it is entitled to immediate possession of the property. *Brunswick Corp. v. Modern Pool Parlor*, 389 A.2d 1251, 1253 (R.I. 1978) ("Nothing more than the right of present possession . . . is necessary to enable plaintiff to maintain [a replevin] action."). A demand for the return of the property, and the refusal of such demand, are not required, but rather, "furnish[] evidence of an unlawful taking or detention against the rights of the true owner." *Id.* (quoting *Edumunds v. Hill*, 133 Mass. 445, 446-47 (1882)). Therefore, Stern Estate is entitled to immediate possession if it proves: (1) it is the lawful owner of the Painting and (2) the Painting

---

[2] Other courts have also applied the law of the forum state to property stolen abroad during war or its aftermath. *See Church of Cyprus v. Goldberg*, 917 F.2d 278, 286-87 (7th Cir. 1990).

was stolen from it. Both of these elements are easily satisfied. Additionally, although not required, Stern Estate easily proves that it made a demand for return of the Painting and that such demand has been refused.

Per Defendant's Answer, there is no question that: (1) she is a citizen of the United States and a resident and domiciliary of this District (Ans. ¶ 3); (2) the Lempertz auction house in Germany sold works which had belonged to Dr. Max Stern, including the Painting (*id.* ¶ 17); (3) Dr. Wilharm was her stepfather and she inherited or otherwise obtained the Painting from him (*id.* ¶¶ 28, 30); and (4) she refused Stern Estate's demand, communicated to her by HCPO, that she return the Painting (*id.* ¶ 41). It is also clear that Bissonnette unilaterally took the Painting out of the jurisdiction – and the country – in the midst of settlement discussions after being informed that Stern Estate was contemplating litigation. (*See* Rubin Decl. ¶¶ 4-7, and Letter from Sherri North Cohen to John J. Weltman dated Mar. 30, 2006 and attached Press Release, dated Mar. 23, 2006 (Rubin Decl. Ex. C).) Thus, if the Painting was stolen, Bissonnette's current possession is wrongful.

Defendant recognizes that Dr. Stern sought and obtained some limited relief from a German court in 1964, in a forum that was specially created to address post-War compensation claims against the West German government as successor to the Third Reich. (Bissonnette Aff. at 2, ¶¶ 7(g)-7(h).) West Germany's award of partial compensation to Dr. Stern for loss of his business shows the Federal Republic of Germany's recognition of the validity of Dr. Stern's claim that the Third Reich's destruction of his business was illegal under normal legal standards. In this proceeding, in which Stern Estate seeks recovery of the Painting, the West German court decision is also supported by the Declaration and Expert Report of Lynn H. Nicholas ("Nicholas"), dated Dec. 28, 2006 ("Nicholas Decl."), filed herewith. Nicholas, a well-respected

scholar and authority on Nazi and World War II art looting (*see* Nicholas Decl. ¶ 2), studied the documents concerning liquidation of Dr. Stern's art gallery that was ordered by the Nazis in 1937 because Dr. Stern was Jewish, with no further appeals available. (*Id.* ¶ 6.) In the end, Nicholas concludes that "Dr. Stern's surrender of the painting to Lempertz for auction was ordered by Nazi authorities and therefore the equivalent of an official seizure or a theft. The sale was forced by the Nazi government and also a theft as we would commonly understand the term." (*Id.* ¶ 9.)[3]

As in *Church of Cyprus*, where the owner of property never authorized removal and did not abandon it, the property has been wrongfully retained. 717 F. Supp. 1374, 1397-99 (S.D. Ind. 1989). In that case, the Church showed that it had owned the icons for many years, and had never authorized removal or abandoned the mosaics. *Id.* at 1398. This absence of authorization or permission by the true owner of the mosaics led the Court to find that the mosaics were, indeed, stolen. *Id.* at 1398-99.

Similarly here, Dr. Stern never authorized or permitted sale of the Painting. Rather, the Nazi government of Germany ordered that the Painting – and the rest of his Gallery and personal collection – be sold at auction under circumstances in which Dr. Stern could not use the proceeds. (Compl. ¶¶ 13-22, 33-35.) The Nazis did not obtain title by looting. *Menzel v. List*, 267 N.Y.S.2d 804, 812 (N.Y. Sup. Ct. 1966), *citing* H.A. Smith, *Booty of War*, 23 Brit. Yb. Intl. L. 227, 238-39 (Oxford 1946) ("The Germans have acquired no title to private movable property . . . which has been acquired by theft, looting, or pillage."). The Nicholas Declaration establishes that the Painting was improperly taken from Dr. Stern. (Nicholas Decl. ¶ 9.) Therefore, the Painting has been unlawfully or wrongfully retained by Bissonnette. (*See* Compl. ¶¶ 39-44.)

---

[3] Nicholas also concludes that Dr. Stern was "never able to access or use the proceeds of the sale of the Painting." (Nicholas Decl. ¶ 7.)

**III. Plaintiff Faces Imminent Irreparable Harm In The Absence Of The Relief Sought.**

In the absence of an interim Order, Plaintiff will have no choice but (1) to accept the transportation risk associated with moving the Painting from its current unidentified location (perhaps in Düsseldorf) to Dr. Rosshoff's office in Cologne; (2) accept storage in a location which Stern Estate has no assurance is appropriate to prevent deterioration of a mid-nineteenth century Painting; and (3) leave the Painting in Bissonnette's sole control, without assurance from her German lawyer that he is aware of his responsibilities or will protect the Painting.

Regrettably, Plaintiff must note that Defendant has shown herself capable of impulsive, duplicitous and even self-destructive actions. She secretly moved the Painting to Germany during the course of settlement talks to avoid the jurisdiction of this Court and forum shop in Germany. She commenced a lawsuit there, but has not served Stern Estate. Discovery now reveals that she mailed the Painting to Germany, falsely declaring its value to be $50.00 in U.S. Customs documents. A mis-description of this magnitude is significant, and could be viewed as a material misstatement, especially since Germany imposes an import tax based on the value of such an object. Discovery documents also show that Bissonnette's lawyer received correspondence after the filing of this case about the possible sale of the Painting.[4] Against this background, Stern Estate needs the Order sought, which will assist it and the Court in ensuring that the Painting is being protected and would be available to satisfy a judgment in this case.

**IV. Request For Expedited Review.**

Plaintiff, after trying to work out issues concerning examination and security of the Painting, seeks expedited review of this Motion. The parties are at an impasse in these

[4] The Court will also remember that, only moments before the January 25, 2007 Hearing, Bissonnette provided the Court and counsel with an affidavit from Dr. Rosshoff purporting to provide expert testimony in spite of his involvement in the German litigation and in efforts to sell the Painting. (Mot. to Dismiss Tr. at 2:6-3:2, 18:18-24.)

discussions and Plaintiff remains concerned about Defendant's pattern of untrustworthy behavior. The discovery period will soon close with the motions deadline following close behind, and Plaintiff needs to ensure that the Painting will be safe and protected and would be available to satisfy a judgment in this case. The parties have agreed to a May 16 examination of the Painting; Plaintiff asks that Defendant be ordered to make it available at its current storage location.

**CONCLUSION**

For all of the foregoing reasons, Plaintiff Stern Estate asks that this Honorable Court grant its Motion for entry of an Order (1) restraining Defendant Bissonnette from further movement of the Painting without leave of Court, and (2) allowing a representative of Stern Estate to examine the Painting at its current storage location.

Dated: May 10, 2007

Respectfully submitted:

*/s/ Thomas R. Kline*
ANDREWS KURTH LLP
Thomas R. Kline (admitted *pro hac vice*)
thomaskline@andrewskurth.com
L. Eden Burgess (admitted *pro hac vice*)
edenburgess@andrewskurth.com
1350 I Street NW, Suite 1100
Washington, DC 20005
Telephone: (202) 662-2700
Facsimile: (202) 662-2739

*/s/ Samuel D. Zurier*
TILLINGHAST LICHT LLP
Samuel D. Zurier (R.I. Bar No. 3576)
szurier@tllaw.com
10 Weybosset Street
Providence, RI 02903-2818
Telephone: (401) 456-1200
Facsimile: (401) 456-1210

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on May 10, 2007, the foregoing was served electronically by ECF and by first-class U.S. mail, postage prepaid, on the following:

Edward J. Mulligan, Esq.
1220 Pontiac Avenue
Suite 303
Cranston, RI 02920
*Counsel to Defendant Maria-Louise Bissonnette*

Kevin F. Bowen, Esq.
Breggia, Bowen & Grande
395 Smith St.
Providence, RI 02908
*Counsel to Defendant Estates Unlimited*

__*/s/ Miranda Perkins*___