**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| Max Stern Estate, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **Civil Act. No. 06-211 (ML)** |
| | § | |
| Maria-Louise Bissonnette, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**DECLARATION AND EXPERT REPORT OF**
**LYNN H. NICHOLAS**

Lynn H. Nicholas deposes and certifies, as follows:

1. I am above the age of twenty-one and reside at 1405 29TH Street, NW, Washington, DC 20007. I have been retained by Max Stern Estate to provide this Declaration and Report giving expert opinions on certain issues arising in this litigation.

2. I received my education in the United States, England and Spain and obtained my BA Honours in Romance Languages and Literature from Lady Margaret Hall, Oxford University in 1964. I worked several years at the National Gallery of Art in Washington, DC. Since then I have been researching and writing on displacement and restitution of works of art. I have been studying, writing, speaking, teaching and consulting on the subject of World War II and Holocaust art looting and its consequences since I began work on my book *The Rape of Europa: The Fate of Europe's Treasures in the Third Reich and the Second World War* which was published in 1994. My most recent publication was *Cruel World: The Children of Europe in the Nazi Web*. My expertise is in the field of World War II history, particularly relating to Nazis and their

activities relating to the seizure of property. My complete Curriculum Vitae is attached as Exhibit A, hereto. I am being compensated for my work in this case at the rate of $150 per hour. All publications of mine within the preceding ten years are set out in my CV. I have not testified as an expert at trial or by deposition within the preceding four years.

3. I have reviewed and am generally familiar with the Complaint and Answer in this lawsuit brought by the Estate of Max Stern to recover a painting entitled "*Mädchen aus den Sabiner Bergen*" ("Girl from the Sabiner Mountains") from Maria-Louise Bissonnette whose stepfather, Dr. Karl Wilharm, purchased the painting at an auction held by the Lempertz auction house in Cologne, Germany in 1937 based on the allegation that Nazi authorities forced Dr. Stern to sell the painting. A list of documents and other items I have reviewed in connection with the preparation of this report is attached as Exhibit B, hereto.

4. I have been asked by the plaintiff's lawyers to give my opinion about whether the Painting was stolen by the Nazis from Dr. Max Stern. I can answer this question in the affirmative. The methods used by the Gestapo and the Nazis to force Dr. Max Stern to sell the painting and thereafter prevent him from using the proceeds from the sale amount to theft.

5. It was the declared policy of Adolf Hitler and the Nazi regime to rid Germany of its Jews who were considered members of an "alien" race. The implementation of this policy was gradual. In the 1930's the emphasis was on emigration. Laws and regulations were enacted which segregated Jews from mainstream German life and eventually made it impossible for them to earn a living. The aim was to force them to move elsewhere. At first Jews were allowed to take possessions and assets with them, but as time went on the

transfer of assets abroad became more and more restricted. By the end of 1937, when Max Stern fled Germany, such transfers had essentially been eliminated. Max Stern's experience is a textbook example of the implementation of the Nazi anti-Jewish policies and of their method of confiscation of Jewish assets.

6. The documents I examined show that Dr. Stern, an art dealer, was refused membership in the Reich Chamber of Fine Arts on August 29, 1935 on grounds that he did not "possess the necessary qualities or reliability to promote German culture properly for the German people and nation" a euphemism to indicate that he was Jewish. Membership in the Chamber of Fine Arts, a branch of the Reich Chamber of Culture controlled by Joseph Goebbels, was obligatory for all art dealers. The refusal of membership meant that Stern was prohibited from dealing in works of art and that his livelihood would be eliminated. He was given a month to sell or liquidate his business. Dr. Stern appealed this decision and several delays occurred during which time he tried to sell his firm. Although Stern found two suitable candidates to take over the business they were not approved by the Nazi authorities and on September 13, 1937 Stern was advised by the Nazi authorities that no further appeals would be entertained and that he must sell any works of art still in the inventory of the Stern Gallery through an auctioneer or dealer who was an approved member of the Reich Chamber of Culture. He complied with this order and the sale took place on November 13, 1937 at Lempertz auctioneers in Cologne. Included in the sale was the painting in question which, according to the extant receipt, was sold for RM 3600 to a Dr. Karl Wilharm.

7. The proceeds of the sale were credited to Dr. Stern, but a few weeks later he fled from Germany leaving behind the monies from the liquidation of his works of art and other assets and all the rest of his possessions, most of which were auctioned off by the

Nazi government in later sales. His mother remained in Germany. During the following years the Nazi government relentlessly imposed various discriminatory exorbitant taxes on Stern's assets which were held in a frozen account. Large sums had to be used to pay the Reich's Flight Tax and guarantee permission for his mother to emigrate, which she did in the summer of 1938. On July 12, 1939 Dr. Stern's German citizenship was revoked. Under Nazi law this allowed the total confiscation of all his remaining assets, which were gradually discovered and liquidated for the benefit of the Reich government. Thus, in the end, Dr. Stern never was able to access or use the proceeds of the sale of the Painting.

8. The Nazi system of confiscation and theft was purposely convoluted and drawn out. The idea was to achieve their objective of eliminating Jews and other aliens from German society while exploiting their assets and making the process appear legal. The gradual aspect of the implementation of the Jewish laws gave false hope to many, who went along with Nazi demands until it became obvious that flight on Nazi terms was the only real option. This Max Stern realized in December, 1937 having had stolen from him his civil rights, his livelihood, and any possibility of utilizing the proceeds of the forced liquidation of his assets.

9. For all of the above reasons, I believe Dr. Stern's surrender of the painting to Lempertz for auction was ordered by Nazi authorities and therefore the equivalent of an official seizure or a theft. The sale was forced by the Nazi government and also a theft as we would commonly understand the term. The Nazi government's persecution of Max Stern resulting in the forced sale of the painting at Lempertz would have been considered as a transaction equivalent to a confiscation by the Nazi government under Allied Military Government Laws (attached hereto as Exhibit C and D), which applied in the American,

British and French Zone of Occupation, which included Cologne, Düsseldorf and Hofgeismar, the residence of Dr. Wilharm.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: December 28, 2006

LYNN H. NICHOLAS

**Exhibit A**

**LYNN H. NICHOLAS**

**1405 29TH STREET, NW**
**WASHINGTON, DC, 20007**
**202-333-8427**
**lynnick105@aol.com**

1. EDUCATION

1957-1959 Radcliffe College. Major in History and Literature of France, Germany and Russia in the Modern Period
1959-1960 University of Madrid, Spain. Diploma of Hispanic Studies.
1961-1964 Lady Margaret Hall, Oxford University. BA Honours in Romance Languages and Literature.

2. WORK EXPERIENCE

1964-1979 Intermittent paid and volunteer work, National Gallery of Art, Washington
1983-1994 Research on displacement and restitution of works of art in and after World War II for *The Rape of Europa: The Fate of Europe's Treasures in the Third Reich and the Second World War.*
1994-1998 Activities related to restitution of works of art.
1996-2005 Research for *Cruel World: The Children of Europe in the Nazi Web*

3. PUBLICATIONS

*The Rape of Europa: The Fate of Europe's Treasures in the Third Reich and the Second World War*. 1994. Alfred A. Knopf, NY. 1995,Vintage, NY. Also published in France, Germany, Spain, Brazil, Japan, Poland, China, the United Kingdom and Russia.

"The Fate of Europe's Treasures in the Third Reich and the Second World War" in *Art and Fact* Numero14/1995 University of Liege, Belgium

Preface to Christie's catalogue *Mauerbach: Items seized by the National Socialists to be sold for the benefit of the Victims of the Holocaust.* November, 1996

*3.1* The Spoils of War. World War II and its aftermath: The Loss, Reappearance and Recovery of Cultural Property. *Abrams, NY, 1997. Introduction and article. Member Editorial Board.*

"Les spoliations nazies en Europe" in *Pillages et Restitutions: Le destin des oeuvres d'art sorties de France pendant la seconde guerre mondiale.* Direction des musees de France, 1997.

*Cruel World: The Children of Europe in the Nazi Web.* Knopf, NY. 2005. Vintage, NY, 2006

4. SYMPOSIA AND PANELS (SELECTION)

Advisory Board, Presidential Advisory Committee on Holocaust Era Assets in the United States; Bard Graduate Center, NY ; Museum Trustee Association, Montreal; Smithsonian Institution, Washington, DC; Direction des Musees de France, Paris; The Newport Symposium, Newport, RI; National Jewish Museum, Washington, DC; Museum of Modern Art, NY; American University, Washington, DC; UJA-Federation, NY; American Institute for Conservation; American Jewish Committee, Seattle; US Department of State; United States Holocaust Memorial Museum; National Archives and Record Administration; All Russian Library for Foreign Literature, Moscow.

5. LECTURES AND EXPERT TESTIMONY

Banking and Finance Committee, US House of Representatives, 1997; 1998 U.S. Department of State, Washington Conference on Holocaust Era Assets, Presenter; Expert witness and consultant in various restitution claims; Interviews on major news networks in US and abroad; Lectures at numerous museums, art organizations, universities, clubs and humanitarian organizations.

6. HONORS AND AWARDS

National Book Critics Circle Award, 1995; Legion d'Honneur, France, 1999; Amicus Poloniae, Poland, 2003; National Jewish Book Award 2005: runner up-Eastern European Studies Category.

**Exhibit B**

Documents and other items I have reviewed in connection with the preparation of this report include:

PRODUCTION DOCUMENTS:

Bates Nos.:

SE00157-235
SE00236-245
SE00246-276
SE00663-674

PLEADINGS:

Plaintiff's Complaint
Defendant's Answer to Plaintiff's Complaint
Defendant's Statement of Facts and Law

LEGAL DOCUMENTS:

Allied Military Government Law
The American Journal of International Law

**Exhibit C**

Bundesministerium
der Justiz

Nichtamtliches Inhaltsverzeichnis

# 7. § 11

In diesem Gesetz werden bezeichnet

1.

als Rechtsvorschriften zur Rückerstattung feststellbarer Vermögensgegenstände

a)

das Gesetz Nr. 59 vom 10. November 1947 (Rückerstattung feststellbarer Vermögensgegenstände) der Militärregierung Deutschland - Amerikanisches Kontrollgebiet - (Amtsblatt der Militärregierung Deutschland - Amerikanisches Kontrollgebiet - Ausgabe G vom 10. November 1947 S. 1) in der bei Inkrafttreten dieses Gesetzes geltenden Fassung und seine Durchführungsbestimmungen,

b)

das Gesetz Nr. 59 vom 12. Mai 1949 (Rückerstattung feststellbarer Vermögensgegenstände an Opfer der nationalsozialistischen Unterdrückungsmaßnahmen) der Militärregierung Deutschland - Britisches Kontrollgebiet - (Amtsblatt der Militärregierung Deutschland - Britisches Kontrollgebiet - Nr. 28 S. 1169) in der bei Inkrafttreten dieses Gesetzes geltenden Fassung und seine Durchführungsbestimmungen,

c)

die Verordnung Nr. 120 vom 10. November 1947 (Rückerstattung geraubter Vermögensobjekte) der Militärregierung Deutschland - Französisches Kontrollgebiet - (Amtsblatt des französischen Oberkommandos in Deutschland Nr. 119 vom 14. November 1947 S. 1219) in der bei Inkrafttreten dieses Gesetzes geltenden Fassung und ihre Durchführungsbestimmungen,

d)

die Anordnung BK/O (49) 180 vom 26. Juli 1949 (Rückerstattung feststellbarer Vermögensgegenstände an Opfer der nationalsozialistischen Unterdrückungsmaßnahmen) der Alliierten Kommandantur Berlin (Verordnungsblatt für Groß-Berlin Teil I 1949 S. 221) in der bei Inkrafttreten dieses Gesetzes geltenden Fassung und ihre Durchführungsbestimmungen;

2.

als Nachfolgeorganisationen

a)

die gemäß Artikel 13 des Gesetzes Nr. 59 vom 10. November 1947 der Militärregierung Deutschland - Amerikanisches Kontrollgebiet - durch Ausführungsverordnung Nr. 3 bestimmte, ferner gemäß Artikel 9 der Anordnung BK/O (49) 180 vom 26. Juli 1949 der Alliierten Kommandantur Berlin durch die Anordnung vom 1. Oktober 1949 des Amerikanischen Kommandanten von Berlin und die Anordnung Nr. 58 vom 8. Juni 1950 der französischen Militärregierung von Berlin ernannte Jewish Restitution Successor Organization (IRSO),

b)

die gemäß Artikel 8 des Gesetzes Nr. 59 vom 12. Mai 1949 der Militärregierung Deutschland - Britisches Kontrollgebiet - durch die Siebente Durchführungsverordnung vom 1. August 1950, ferner gemäß Artikel 9 der Anordnung BK/O (49) 180 vom 26. Juli 1949 der Alliierten Kommandantur Berlin durch die Durchführungsverordnung Nr. 2 bestellte Jewish Trust Corporation for Germany (ITC) und

die durch die Achte Durchführungsverordnung vom 15. November 1950 und die Elfte Durchführungsverordnung vom 12. März 1951 zu dem vorgenannten Gesetz Nr. 59 der

britischen Militärregierung und gemäß Durchführungsverordnung Nr. 4 vom 29. März 1951 zu Artikel 9 der Anordnung BK/O (49) 180 errichtete Allgemeine Treuhandorganisation (ATO),

c)

die gemäß Artikel 9 Abs. 2 und Artikel 14 Abs. 1 der Verordnung Nr. 120 vom 10. November 1947 der Militärregierung Deutschland - Französisches Kontrollgebiet - (in der Fassung der Verordnung Nr. 268 vom 29. September 1951) von den Ländern errichteten Gemeinschaftsfonds

und

die gemäß der Anordnung Nr. 177 in Durchführung des Artikels 21a der Verordnung Nr. 120 (in der Fassung der Verordnung Nr. 268) benannte französische Abteilung der Jewish Trust Corporation for Germany;

3.

als Bundesentschädigungsgesetz

das Bundesgesetz zur Entschädigung für Opfer der nationalsozialistischen Verfolgung (Bundesentschädigungsgesetz - BEG) in der Fassung des Gesetzes vom 29. Juni 1956 (Bundesgesetzbl. I S. 559);

4.

als Umstellungsgesetz

das Dritte Gesetz zur Neuordnung des Geldwesens (Umstellungsgesetz) - Gesetz Nr. 63 der amerikanischen und der britischen Militärregierung (Amtsblatt der Militärregierung Deutschland - Amerikanisches Kontrollgebiet - Ausgabe J S. 21 und Amtsblatt der Militärregierung Deutschland - Britisches Kontrollgebiet - S. 862) und Verordnung Nr. 160 des französischen Oberkommandos (Amtsblatt des französischen Oberkommandos in Deutschland S. 1537);

5.

als Umstellungsergänzungsgesetz

das Gesetz über die Ergänzung von Vorschriften des Umstellungsrechts und über die Ausstattung der Berliner Altbanken mit Ausgleichsforderungen (Umstellungsergänzungsgesetz) vom 21. September 1953 (Bundesgesetzbl. I S. 1439);

6.

als Altsparergesetz

das Gesetz zur Milderung von Härten der Währungsreform (Altsparergesetz) in der Fassung vom 1. April 1959 (Bundesgesetzbl. I S. 169) in Verbindung mit dem Gesetz zu § 4 Abs. 4 des Altsparergesetzes vom 10. Dezember 1954 (Bundesgesetzblatt I S. 438);

7.

als Reichsbewertungsgesetz

das Reichsbewertungsgesetz vom 16. Oktober 1934 (Reichsgesetzbl. I S. 1035) in der Fassung des Gesetzes zur Bewertung des Vermögens für die Kalenderjahre 1949 bis 1951 (Hauptveranlagung 1949) vom 16. Januar 1952 (Bundesgesetzbl. I S. 22).

zum Seitenanfang
Seite ausdrucken
Datenschutz

**Exhibit D**

# SUPPLEMENT

TO THE

# American Journal of International Law

VOLUME 44

1950

---

## OFFICIAL DOCUMENTS

---

PUBLISHED BY

THE AMERICAN SOCIETY OF INTERNATIONAL LAW

PUBLICATION OFFICE:
LANCASTER PRESS, INC.
LANCASTER, PA.

EXECUTIVE AND EDITORIAL OFFICE:
1422 F STREET, N.W.
WASHINGTON 4, D. C.

Copyright, 1950, by the American Society of International Law

HeinOnline -- 44 Am. J. Int'l L. Sup i 1950

# RESTITUTION OF IDENTIFIABLE PROPERTY TO VICTIMS OF NAZI OPPRESSION [1]

## ALLIED KOMMANDATURA BERLIN ORDER

*BK/O (49) 26, February 16, 1949*

Subject: Restitution of Property to Victims of Nazi Oppression: Filing of Claims.

To: The Oberbuergermeister, City of Berlin.

The Allied Kommandatura Berlin orders as follows:

1. In order that due restitution may be made to those persons detailed in paragraph 2 of this order who were dispossessed of their properties, the following order is issued as preliminary to such restitution.

2. This order relates to all identifiable property in Berlin which was, between January 30, 1933, and May 8, 1945, confiscated, sold or removed from the ownership, possession or custody of any person by reason of his race, nationality, religion or political opinions, regardless of whether such confiscation, sale, removal and/or other form of dispossession was due to or authorized by legislation or procedure which purported to follow forms of law, or otherwise.

3. This order does not relate to any property having at the date of transfer a total value of less than RM 1000 (Reichsmark).

4. Any person who has or at any time since January 30, 1933, has had possession, custody or control of any property to which this order relates shall, within six months from the date of this order, make a report in duplicate in respect of such property to the Treuhaender der Amerikanischen, Britischen und Franzoesischen Militaerregierungen fuer zwangsuebertragene Vermoegen, Berlin W 30, Nuernbergerstrasse 53/55. This report will be on the form as attached hereto at Appendix "A." [2]

5. Any person who has knowledge of any specific transfer since January 30, 1933, of property subject to this order shall within six months from the date of this order make a declaration in duplicate to the Treuhaender der Amerikanischen, Britischen und Franzoesischen Militaerregierungen fuer zwangsuebertragene Vermoegen, Berlin W 30, Nuernbergstrasse 53/55. This declaration will be on the form as attached hereto at Appendix "B." [2]

6. Property shall be so declared even if it has been requisitioned or de-

[1] Federal Register, Sept. 1, 1949, pp. 5437–5445. Reprinted by the Department of State.

[2] Not printed here.



HeinOnline -- 44 Am. J. Int'l L. Sup 39 1950

clared for any purpose under any order of the respective Military Governments.

7. Any person deprived of property which is subject to this order may file a claim for its restitution. Claims may be made in duplicate on the form as attached hereto at Appendix "C"[2] and will be submitted to the Treuhaender der Amerikanischen, Britischen und Franzoesischen Militaerregierungen fuer zwangsuebertragene Vermoegen, Berlin W 30, Nuernbergerstrasse 53/55.

8. An adequate supply of all the forms referred to in the appendices to this order will be provided by the Treuhaender der Amerikanischen, Britischen und Franzoesischen Militaerregierungen fuer zwangsuebertragene Vermoegen, Berlin W 30, Nuernbergerstrasse 53/55.

9. All property to which this order relates is hereby declared to have been and to be subject to all the provisions of British, US and French Law No. 52.

10. Any person required by paragraphs 4 and 5 of this order to make a declaration who fails to do so, or omits any material fact or particular from such a declaration, or makes any false or misleading statement therein, is liable to prosecution for disobedience of an order of Military Government.

11. You will give the widest publicity to this order by means of press, radio and posters.

12. This order is effective from the date of publication.

13. Acknowledge receipt of this order, citing number and date.

By order of the Allied Kommandatura Berlin.

## ALLIED KOMMANDATURA BERLIN ORDER

*BK/O (49) 180, July 26, 1949*

Subject: Restitution of Identifiable Property to Victims of Nazi Oppression.
To: The Oberbuergermeister of the City of Berlin.

In order to provide for the restitution of property to those persons who between January 30, 1933, and May 8, 1945, were deprived thereof by reason of their race, creed, nationality or political belief and in pursuance of BK/O (49) 26, dated February 16, 1949;[3]

The Allied Kommandatura Berlin orders as follows:

### PART I—GENERAL PROVISIONS

#### ARTICLE 1—BASIC PRINCIPLES

1. The purpose of this order is to effect to the highest extent possible the speedy restitution of identifiable property (tangible and intangible) to persons who were unjustly deprived of such property between January

[2] Not printed here.
[3] See above, p. 39.

30, 1933, and May 8, 1945 (hereinafter called the "material period"), for reasons of race, religion, nationality, political views or political opposition to National Socialism. Subject to the provisions of paragraph 5 of Article 2 of this order, deprivation of property for reasons of nationality shall not include measures which were taken in time of war solely on the ground of enemy nationality.

2. Identifiable property of which a person was unjustly deprived for any of the reasons referred to in paragraph 1 may be made the subject of a claim for restitution in accordance with the provisions of this order.

3. Property shall be restored to its former owner or to his successor in interest in accordance with the provisions of this order, even though the interests of other persons who had no knowledge of the wrongful taking must be subordinated. Provisions of law for the protection of purchasers in good faith, which would defeat restitution, shall be disregarded except where this order provides otherwise.

4. For the purpose of this order the person entitled to claim restitution of identifiable property is hereinafter referred to as the "claimant"; the person against whom such claim is made is hereinafter referred to as the "defendant," and property which is capable of being the subject of a claim for restitution is hereinafter called the "affected property."

5. This order does not relate to any property having at the date of transfer a total value of less than RM 1,000.

## PART II—UNJUST DEPRIVATION

### ARTICLE 2—ACTS CONSTITUTING UNJUST DEPRIVATION

1. For the purpose of this order property shall be considered as having been the subject of unjust deprivation if the person entitled thereto was within the material period deprived of the ownership or possession thereof or any present or contingent rights thereover as the result of:

(a) A transaction contra bonos mores or induced by threats or duress or involving an unlawful dispossession or any other tort:

(b) A seizure by governmental or administrative act or by the abuse of governmental or administrative authority; or

(c) A seizure by measures taken by the NSDAP, its formations or affiliated organizations;

provided that the transaction, seizure or act in question constituted or resulted from a measure of persecution for any of the reasons referred to in Article 1.

2. A defendant may not plead that any act of his was not wrongful merely because it conformed with prevailing ideas involving discrimination against persons on account of their race, religion, nationality, political views or their political opposition to National Socialism.

HeinOnline -- 44 Am. J. Int'l L. Sup 41 1950

3. A governmental or administrative act within the meaning of paragraph 1 (b) shall be deemed to include a sequestration, confiscation, forfeiture by operation of law or by a court or other order and a transfer. by order of the State or any of its officials (including a trustee (Treuhaender)).

4. A judgment or order of a court or of an administrative agency which although based on general provisions of law duly applicable was issued solely or primarily with the object of injuring the party affected by it for any of the reasons referred to in Article 1 shall be deemed to be an abuse of a governmental act. The procurement of a judgment or of measures of execution shall also be deemed to be an abuse of a governmental act where the circumstances were such that the claimant was exploited in that he was prevented from protecting his interests on account of his race, religion, nationality, political views or his political opposition to National Socialism. The Restitution Authorities (Restitution Agency, Restitution Chamber, the Kammergericht and Board of Review) shall disregard any such judgment or order of a court or administrative agency whether or not such judgment or order may be the subject of an appeal or a re-opening procedure.

5. Where property has been placed under administration on the ground of enemy character and the administrator, curator or other custodian has transferred the title to the property under administration, such transfer shall be deemed to be an unjust deprivation unless such transfer constituted a proper exercise of the functions of the administrator, curator or custodian.

ARTICLE 3—PRESUMPTION OF UNJUST DEPRIVATION

1. The following transactions within the material period shall give rise to a presumption in favour of a claimant that they constituted an unjust deprivation within the meaning of Article 2:

(a) Any transfer or relinquishment of property made by a person who was directly exposed to measures of persecution on any of the grounds referred to in Article 1:

(b) Any transfer or relinquishment of property made by a person who belonged to a class of persons which the German government or the NSDAP intended on any of the grounds referred to in Article 1 to eliminate in its entirety from the cultural and economic life of Germany by measures taken by the State or the NSDAP.

2. In the absence of other factors proving or leading to the inference of an act of unjust deprivation within the meaning of Article 2 the presumption arising under the preceding paragraph may in the case of a transfer within paragraph 1 (a) be rebutted by showing that the transferor was paid a fair purchase price, that is to say, an amount of money

which a willing buyer would pay and a willing seller would take, including in the case of a commercial enterprise the goodwill which such enterprise would have in the hands of a person not subject to the measures of persecution referred to in Article 1, and in any case that the transferor had a free right of disposal of the said purchase price.

3. In the case of a transfer within paragraph 1 (b) of this Article, where such transfer took place between September 15, 1935, and May 8, 1945, the presumption arising under such paragraph may only be rebutted by evidence satisfactory to the Restitution Chamber (Article 57) and additional to the requirements of the preceding paragraph that:

(a) The transaction in the light of its essential terms would have taken place even in the absence of a National Socialism régime; or

(b) The transferee protected the proprietary interests of the claimant or his predecessor in title in an exceptional manner and with substantial success for example by helping him to transfer his assets abroad.

## Article 4—Gifts

Where a person persecuted for any of the reasons referred to in Article 1 transferred a property to another gratuitously within the material period, it shall be presumed in favor of the claimant that the transfer gave rise to a fiduciary relationship and was not a gift. No such presumption shall arise, where, from the personal relationship between the transferor and the transferee it can be shown that the transfer was a gift based on moral considerations (Anstandsschenkung) in which case no claim for restitution may be made.

## Article 5—Fiduciary Relationships

1. The provisions of Parts III to VII of this order shall not apply to agreements giving rise to a fiduciary relationship entered into for the purpose of preventing threatened damage to property or mitigating actual damage thereto arising from any of the reasons referred to in Article 1.

2. The claimant may at any time, by notice, terminate any agreement of the kind specified in the preceding paragraph. Termination shall be effective immediately on service of the said notice, any contractual or statutory provision to the contrary notwithstanding.

3. A person in a fiduciary relationship may not plead that the agreement giving rise to a relationship was made in breach of a statutory prohibition in force at or subsequent to the time of the transaction or that a statutory or other requirement as to form had not been complied with, where such non-compliance was attributable to any act or measure of the National Socialism régime or to conditions prevailing under such régime.

HeinOnline -- 44 Am. J. Int'l L. Sup 43 1950

## PART III—GENERAL PROVISIONS ON RESTITUTION

### ARTICLE 6—RIGHT TO LODGE CLAIMS

Subject to the provisions of Article 9, the right to lodge a claim for restitution shall belong to any person whose property was the subject of unjust deprivation or any successor in interest.

### ARTICLE 7—SUCCESSORSHIP OF DISSOLVED ASSOCIATIONS

1. If a juridical person or unincorporated association was dissolved or forced to dissolve for any of the reasons set forth in Article 1, the claim for restitution which would have appertained to such juridical person and unincorporated association had it not been dissolved may be enforced by a trust corporation to be appointed by Military Government. Either trust corporations or successor organizations, formed in Berlin under German law, or authorized to operate in the respective Zones, shall be eligible to apply for such status in the respective Sectors of Berlin. Such organizations or corporations are hereinafter referred to as the "trust corporation."

2. The provisions of paragraph 1 shall not be applicable to organizations referred to in Article 8.

### ARTICLE 8—RIGHTS OF INDIVIDUAL PARTNERS

If a partnership, company or corporation organized under the Commercial Law was dissolved or forced to dissolve for any of the reasons set forth in Article 1, the claims for restitution may be asserted by any associate (partner, member, or shareholder). The claim for restitution shall be deemed to have been filed on behalf of all associates who have the same cause of action. The claim may be withdrawn or compromised only with the approval of the appropriate Restitution Authority. Notice of the filing of the claim shall be given to all other known associates or their successors in interest and to a trust corporation competent according to Article 9. Within the limits of its authority the trust corporation may represent in the proceedings any associate whose address is unknown, in accordance with the provisions of Article 10.

### ARTICLE 9—TRUST CORPORATION IN RESPECT OF HEIRLESS AND UNCLAIMED PROPERTY

1. One or more trust corporations as referred to in Article 7 shall be appointed for the purpose of claiming unclaimed and heirless property.

2. Trust corporations shall claim any affected property:

(a) Where no claim for restitution has been lodged; or

(b) Where the victim of Nazi persecution has died or dies intestate without leaving a spouse or heir entitled to his inheritance.

3. Regulations to be made by the Military Governments of the respective Sectors will provide for the appointment of trust corporations and will define their rights and obligations and specify the classes of persons to whose property they may respectively lay claim.

### ARTICLE 10—SPECIAL RIGHTS OF TRUST CORPORATIONS

1. If within six months of the effective date of this order no petition for restitution has been filed with respect to an affected property, a trust corporation established pursuant to Articles 7 and 9 may file a petition and apply for all measures necessary to safeguard the property.

2. If the victim or his successor does not himself file a petition on or before June 30, 1950, a trust corporation shall by virtue of filing the petition succeed to the legal position and rights of the victim.

3. The provisions of paragraphs 1 and 2 hereof shall not apply to the extent to which any victim or his successor in interest in the period from May 8, 1945, to June 30, 1950, has delivered to the defendant, to the appropriate Restitution Authority, or to the Treuhaender der Amerikanischen, Britischen und Franzoesischen Militaerregierungen fuer zwangsuebertragene Vermoegen, Berlin W 30, Nuernbergerstrasse 53/55 (hereinafter referred to as "the Treuhaender"), an express waiver in writing of his claim for restitution.

### ARTICLE 11—OBLIGATION OF SUCCESSORS IN INTEREST TO GIVE INFORMATION

1. If so ordered by the appropriate Restitution Authority, a claimant whose claim for restitution is derived as an immediate or mediate successor in interest to the person who suffered an unjust deprivation of his property, shall disclose to the Authority the name and last known address of his predecessor in interest, or where any of these particulars are known to him, make a sworn declaration to that effect.

2. A trust corporation shall in respect of any claim which it may make under this order, if called upon, disclose the address of any person interested therein, provided such address is known to it, or such information known to it as may lead to the tracing of such person, or where none of these particulars are known, if so required make a sworn declaration to that effect through its legal representative.

### ARTICLE 12—PERSONS LIABLE TO MAKE RESTITUTION

The person liable to make restitution within the meaning of this order shall be the person who, on the effective date of this order, or on the making of any order for restitution, has the right of disposition of the property, or in an action for possession of property, the possessor.

### ARTICLE 13—EFFECT OF AN ADJUDICATION OF A RESTITUTION CLAIM

Unless otherwise provided in this order, an order for restitution shall have the effect that the title, of the claimant or his predecessor in title, to any property the subject of an unjust deprivation shall be deemed not to have been divested.

### ARTICLE 14—ALTERNATIVE CLAIM FOR ADDITIONAL PAYMENT

1. If he relinquishes all other claims under this order the claimant may demand from the person who first acquired the affected property the difference between the price received by the claimant therefor and the fair purchase price at the time of the transaction as defined in Article 3, paragraph 2. Appropriate interest shall be added to this amount in accordance with the provisions relating to profits contained in this order.

2. A demand under the preceding paragraph shall not be permissible:

(a) After the property has been restored to the claimant by an order no longer subject to appeal;

(b) After the Restitution Chamber has given a decision on the merits; or

(c) After the claimant and the defendant have reached an amicable agreement with regard to the restitution claim.

## PART IV—LIMITATIONS ON THE RIGHT TO RESTITUTION

### ARTICLE 15—EXPROPRIATION

1. Affected property which, subsequent to the privation, was expropriated for a public purpose, or was sold or assigned to an enterprise for the purpose of which the right of expropriation could be exercised, shall not be subject to restitution if, on the effective date of this order, the property remains in use for a public purpose still recognized as lawful.

2. If property is not subject to restitution by reason of the provisions of paragraph 1 the present owner shall compensate the claimant to the extent to which the claims open to the claimant under Part V of this order do not afford adequate compensation.

### ARTICLE 16—PROTECTION OF ORDINARY AND USUAL BUSINESS TRANSACTIONS

Except as provided in Articles 17 and 18, movable property shall not be subject to restitution if the present owner, or his predecessor in interest, acquired it in the course of an ordinary business transaction, in an establishment normally dealing in that type of property. The provisions of this Article shall not, however, apply to articles having a religious association, or to property which was acquired from a private owner, if such property is an object of unusual artistic, scientific, or personal value, or was acquired at an auction or private sale in an establishment engaged mainly in the business of disposing of property the subject of an unjust deprivation.

HeinOnline -- 44 Am. J. Int'l L. Sup 46 1950

ARTICLE 17—CURRENCY

Currency, so far as identifiable, shall be subject to restitution only if at the time he acquired the money the defendant knew or should have known in the circumstances that the person entitled thereto had been unjustly deprived thereof.

ARTICLE 18—BEARER INSTRUMENTS

1. If a bearer instrument was acquired in the course of an ordinary business transaction, good faith (gutglaeubiger Erwerb) shall be presumed unless the transaction falls within the provisions of paragraph 3 of this Article.

2. The provisions of paragraph 1 shall also apply to interests in bearer instruments deposited in a central account (Sammelverwahrung).

3. Bearer instruments and interests in bearer instruments shall, nevertheless, be subject to restitution under this order if at the time of the unjust deprivation they represented:

(a) A participation in a business with a small number of members, such as a family corporation;

(b) A participation in a business the shares of which had not been negotiated in the open market;

(c) A dominant participation in a business as to which it was known, generally or in the trade, that a dominant participation was held by persons who belonged to one of the classes described in Article 3, paragraph 1 (b); or

(d) A dominant participation in a business establishment which was registered under the Third Ordinance to the Reich Citizen Law (Reichsbuergergesetz) of June 14, 1948 (RGBl, I, p. 627).

4. A participation shall be deemed to be dominant if, either standing alone, or on the basis of a mutual working agreement in existence prior to or at the time of the unjust deprivation, it permitted the exercise of controlling influence upon the management of the business or enterprise.

ARTICLE 19—RESTITUTION WHERE CHANGES IN THE LEGAL OR FINANCIAL STRUCTURES OF AN ENTERPRISE HAVE OCCURRED

If within the material period a participation of the type described in Article 18, paragraph 3, was the subject of unjust deprivation and the enterprise was dissolved, merged into, consolidated with or transformed into another enterprise, or was changed in any other way in its legal or financial structure, or if its assets were transferred wholly or in part to another enterprise, the claimant may demand that he be given an appropriate share in the transformed or newly formed enterprise, or in the enterprise which acquired wholly or in part the assets of the original enterprise, thereby restoring as far as possible his original participation and the rights incidental thereto.

ARTICLE 20—ENFORCEMENT OF THE PRINCIPLES OF ARTICLE 19

The Restitution Chamber in taking the measures necessary and appropriate to give effect to the rights granted to the claimant under Article 19, may order the cancellation, new issue or exchange of shares, participation certificates, interim certificates, and other instruments evidencing a participation; the establishment of a partnership relationship between the claimant and the transformed enterprise referred to in Article 19, and order the performance of any act required by law to give effect to such rights. Such measures shall be taken primarily at the expense of the persons liable to make restitution in accordance with the provisions of this order. If such measures would affect any other shareholders, they shall be ordered so far as they are concerned only to the extent to which such other shareholders benefited, directly or indirectly, from the unjust deprivation in connection with the state of affairs referred to in Article 19; or if the enterprise itself would be liable to make restitution or to pay damages under this order or under the relevant provisions of the Civil Code, including the principle of respondeat superior.

ARTICLE 21—OTHER ENTERPRISES

The provisions of Articles 19 and 20 shall apply mutatis mutandis where the object of unjust deprivation was a business owned by an individual, a participation in a partnership or a limited partnership; a personal participation in a limited partnership corporation (Kommanditgesellschaft auf Aktien), a share in an association with limited liability (Gesellschaft mit beschraenkter Haftung) or in a Co-operative Society; or a share of a similar legal nature.

ARTICLE 22—SERVICE

When pursuant to Articles 19 to 21 it is necessary to effect service on any person whose identity or present address is unknown, service shall be effected by publication in accordance with the provisions of paragraph 2 of Article 55.

ARTICLE 23—DELIVERY OF A SUBSTITUTE IN LIEU OF RESTITUTION

1. Where subsequently to the unjust deprivation the affected property has undergone fundamental changes which have substantially enhanced its value, the Restitution Chamber may order the delivery of an adequate substitute in lieu of restitution. In determining the adequacy of the substitute the Restitution Chamber shall consider the value of the property at the time of the unjust deprivation and the rights and interests of the parties. The claimant may, however, demand the allocation of an appropriate share in the property unless the defendant offers a substitute of similar nature and of like value.

2. Where the defendant has combined the affected property with other property in such a way as to make it an essential part thereof he may where severance is possible sever the latter property and retain it. In such case he shall at his own expense restore the affected property to its former condition. Where the claimant has obtained possession of the combined property he shall be obliged to permit the severance; he may, however, withhold his consent unless security is given to him to indemnify him against any damage which may result from the severance.

3. In determining whether property has been enhanced in value within the meaning of paragraph 1, only that enhancement in value for which the defendant may claim compensation under the provisions of this order shall be taken into account.

### Article 24—Restitution of an Aggregate of Properties

A claimant may not restrict his demand for restitution to separate items out of an aggregate of properties if the aggregate can be returned as a whole and if the limitation of the restitution to separate items would unfairly prejudice the defendant or the creditors.

### Article 25—Protection of Debtors

A debtor who is liable to satisfy a claim (Forderung) which has been the subject of unjust deprivation may at any time before notice to him of the filing of a petition for restitution discharge his debt or obligation by payment to the defendant. The same rule shall apply in favor of a debtor who, prior to the entry in the Land Register (Grundbuch) of an objection to its correctness, or of a notice concerning restitution proceedings, makes a payment to a defendant entered in the Land Register as the person to whom a payment is due.

## Part V—Compensation and Ancillary Claims

### Article 26—Subrogation

1. Upon request of the claimant, a former holder of affected property who would be liable to restitution if he were still holding it, shall surrender any pecuniary compensation or assign any claim thereto which he acquired during the period of his ownership. Whatever the claimant received from one of several defendants shall be set off against the claims he has against the remaining defendants, in connection with the event preventing the return of such property.

2. The same rule shall apply with respect to any compensation or any claim for compensation which the holder or former holder of affected property acquired in respect of any loss, damage, or deterioration of such property.

3. Where actual restitution is impossible, owing to loss or impossibility of establishing present identity, former holders of the property shall be liable in damages under the general rules governing tort liability. In such cases paragraph 2 of Article 27 shall apply.

4. In case of the unjust deprivation of a business enterprise the claim for restitution shall extend to assets acquired after the unjust deprivation unless the defendant shows that such assets were not paid for with funds of the enterprise. If the assets were acquired out of the funds of the enterprise, the resulting increase in the value of the business shall be deemed to constitute profits within the meaning of Article 28. This rule shall also apply to any other aggregate of property. If the purchase was not made with funds of the enterprise the defendant shall have the right of severance, conferred by Article 23, paragraph 2, provided, nevertheless, that the claimant shall have the right to take over the property if the operation of the enterprise would otherwise be seriously hampered.

### Article 27—Conditions of Restitution

1. The defendant may claim compensation neither for any increase in value of the affected property since the date of the original transfer, nor in respect of any capital expenditure by him, save in the latter case to the extent to which the value of the property is still enhanced by such expenditure at the date of restitution.

2. If the affected property has been lost or damaged or has deteriorated the defendant shall be liable in damages unless he can show that the loss, damage or deterioration was not due to his default. Nothing in this paragraph shall affect the claimant's rights under Article 26, paragraph 2.

### Article 28—Profits

1. A claimant shall be entitled to claim the net profits which since the date of the original transfer have been derived from the affected property by the defendant or any predecessor in title, or which ought to have been derived if the defendant or his predecessor in title as the case may be had managed the property as a prudent owner. For the purpose of calculating net profits there shall be taken into account amounts paid by the defendant or his predecessor in title in respect of the ordinary maintenance of the affected property, usual outgoings, interest on money borrowed to provide any purchase money and a reasonable sum for management.

2. Military Government may in regulations to be issued pursuant to Article 80 of this order more specifically define the rights and obligations under paragraph 1 of this Article either generally or in respect of special classes of case.

HeinOnline -- 44 Am. J. Int'l L. Sup 50 1950

### Article 29—Obligation to Furnish Particulars

The parties shall be obliged to furnish to each other such particulars as are material to any claims under this order. Sections 259 to 261 of the Civil Code shall apply mutatis mutandis.

## Part VI—Continued Existence of Interests and Liability for Debts

### Article 30—Continued Existence of Interests

1. Any rights over or interests in the affected property, of third parties, shall continue to be effective to the extent to which they existed prior to the act constituting the unjust deprivation, and to the extent that they have not subsequently been extinguished or discharged. The same rule shall apply to any right or interest subsequently created to the extent to which the aggregate amount of all principal and ancillary claims does not exceed the aggregate amount of all such claims as they existed prior to the act constituting the unjust deprivation. Such rights and interests are hereinafter referred to as "the limit of encumbrances." A right or interest which does not involve payment of money shall continue to be effective only where an interest of the same kind already existed prior to the unjust deprivation and the interest subsequently created is not more burdensome than that existing at the time of the unjust deprivation or where such interest would have come into existence even though the property had not been the subject of an unjust deprivation.

2. The limit of encumbrances may be increased by the amount of any encumbrance created for the purpose of capital expenditure enhancing the value of the property. Any other interest of a third person which exceeds the limit of encumbrances and which arises out of expenditure for which the defendant cannot claim compensation pursuant to Article 27 shall be extinguished except to the extent to which at the time of the restitution the value of the property remains correspondingly enhanced as a result of the expenditure.

3. Rights in or interests over the affected property which, in connection with the unjust deprivation, were created in favor of the claimant or his predecessor in interest shall continue to be effective irrespective of the limit of encumbrances and without prejudice to any claim of the claimant for the restitution of such interests where they were themselves the subject of an unjust deprivation.

4. Interests resulting from the commutation of the Home-Rent Tax (Hauszinssteuer), other than those in respect of overdue payments, shall continue to be effective irrespective of the limit of encumbrances.

### Article 31—Devolution of Encumbrances

If property in land (Grundstueck) has been encumbered by any transaction, act of law or any governmental act constituting an unjust deprivation within the meaning of this order, the right under such encumbrance shall devolve upon the claimant and shall not be considered in computing the limit of encumbrances.

### Article 32—Personal Liability

If, prior to the unjust deprivation of property in land the claimant or his predecessor in title was personally liable in respect of any debt which was secured by mortgage, land charge (Grundschuld) or annuity charge (Rentenschuld) on such property, he shall assume personal liability at the time of restitution to the extent to which the mortgage, land charge or annuity charge continues to be effective under the preceding provisions. The same shall apply in case of obligations in regard to which the defendant may demand to be released pursuant to Section 257 of the Civil Code. The same shall apply also in the case of liabilities which continue to be effective in accordance with Article 30, paragraph 1, second sentence, and replace charges for which the claimant or his predecessor in interest had been personally liable.

### Article 33—Demand for Assignment

1. The claimant may demand the assignment to him, without compensation, of any mortgage, land charge or annuity charge against property in land subject to restitution which is held by any holder or former holder of such property who at any time obtained the property by way of an unjust deprivation. This shall not apply to the personal debt on which the mortgage is based. Any interest created prior to the unjust deprivation shall be subject to the provisions of Article 39, paragraph 3, applied mutatis mutandis.

2. The provisions of this Article shall not apply to encumbrances which are to be registered in accordance with the provisions of this order.

### Article 34—Liability for Debts of a Business Enterprise

1. If the claimant recovers a business enterprise or any other aggregate of properties, creditors may in respect of debts to them incurred in the operation of the enterprise or obligations with which the aggregate of properties has been encumbered also assert such claims arising thereout against the claimant insofar as they are in existence at the time of the restitution.

2. In such case the liability of the claimant shall be limited to the property restored and to any other claims to which he is entitled under this order. The claimant's right to limit his liability shall be governed by Sections 1990 and 1991 of the Civil Code.

HeinOnline -- 44 Am. J. Int'l L. Sup 52 1950

3. The claimant shall not be liable under paragraphs 1 and 2 to the extent to which the total amount of liabilities exceeds the limit of encumbrances to be computed by applying mutatis mutandis the provisions of Article 30 and insofar as the excess of liabilities is not covered by a surplus of assets resulting from the application of Article 26, paragraph 4. In such case the Restitution Chamber shall, in its discretion, take the requisite measures by applying mutatis mutandis the provisions of Article 30.

### Article 35—Leases and Tenancies

1. If a defendant or any former possessor has leased land to a third person, the claimant may terminate the lease by giving the notice required by law to the person entitled to possession under the lease. Such notice may not be given until the Restitution Authority has determined that the property is subject to restitution and such determination is no longer subject to appeal, or until the obligation to restore the property has been acknowledged in any other way. The notice must be given within three months of the happening of the said events, whichever shall first happen.

2. The provisions of the Law for the Protection of Tenants (Mieterschutzgesetz) in the version of December 15, 1942 (RGB1, I, page 712), shall not apply to any defendant or his predecessor in title who obtained the affected property by way of an unjust deprivation or who, at the time he acquired the property, knew, or should have known in the circumstances, that the property had at any time been obtained by way of an unjust deprivation. The provisions of the said Law shall also not apply where the claimant requires the premises as a suitable dwelling for himself or his near relatives (nahe Angehoerige). The said Law shall likewise not apply if a dwelling which at the time of the unjust deprivation or of the filing of the petition for restitution was used in connection with the operation of a business enterprise subject to restitution, is required for the continued operation of such enterprise. The provisions of the said Law shall not apply to premises used for commercial purposes if the claimant has a legitimate interest in the immediate return of such premises.

3. Leases entered into by or with the approval of Military Government may be cancelled only with the consent of Military Government.

### Article 36—Employment Contracts

Notwithstanding any contractual provision to the contrary, and without prejudice to the right of the claimant to terminate an employment contract for just cause without notice, the claimant may, by giving notice as provided in a collective labor agreement or in the absence thereof within the statutory period, terminate any existing employment contract made since the unjust deprivation by the defendant or any former holder of a business enterprise subject to restitution. A notice may not be given until the

Restitution Authorities have determined that the enterprise is to be restored and such determination is no longer subject to appeal, or until the obligation to restore it has been acknowledged in some other way. The notice must be given within three months of the happening of the said events, whichever shall first happen.

## PART VII—CLAIMS OF THE DEFENDANT FOR REPAYMENT AND INDEMNITY

### ARTICLE 37—OBLIGATION TO REPAY

1. In exchange for the restitution of the affected property the claimant shall, subject to the provisions of paragraph 3, repay to the defendant and where appropriate, in kind, any consideration received by him. The amount shall be increased by the amount of any encumbrance against the affected property existing at the time of the unjust deprivation and discharged thereafter, unless such encumbrance has been replaced by another encumbrance which continues to be effective, and unless the discharged encumbrance was created as the result of an act of unjust deprivation within the meaning of this order.

2. Where several items of affected property were the subject of a total consideration, but restitution takes place in regard to only some of these items, the total consideration shall be reduced in the proportion which at the time of the unjust deprivation the item restored bore to the entirety of the affected property.

3. If, at the time of the unjust deprivation, the claimant, for any of the reasons referred to in Article 1, did not obtain, wholly or in part, the power freely to dispose of the consideration received, the repayment shall be diminished by a like amount. The claimant shall surrender to the defendant any claim for indemnity to which he may be entitled in the circumstances.

4. The claimant shall not in any case be required to repay any amount exceeding the value of the affected property at the time of restitution, less the amount of any encumbrance remaining against the property.

### ARTICLE 38—LIEN

The defendant shall have no lien (Zurueckbehaltungsrecht) in respect of his claims where such lien would substantially delay the speedy restitution of the affected property. The same shall apply to any execution against or attachment of the affected property founded on any counterclaim.

### ARTICLE 39—JUDICIAL DETERMINATION OF TERMS OF PAYMENT

1. The Restitution Authorities shall lay down the terms and conditions of payments to be made in connection with a restitution, after taking into

consideration the purpose of this order, the ability to pay of the person liable and the existing statutory prohibitions and limitations on payments.

2. In cases involving the restitution of property in land and interests of a like nature, the claimant may demand that an adequate period not exceeding ten years be allowed for the repayment of the consideration on condition that such repayment be secured by a mortgage in favor of the defendant, bearing interest at 4%, to be executed on the property. The terms shall upon application be laid down by the Restitution Authorities.

3. In cases provided for in Article 27 and Article 30, paragraph 2, the Restitution Authorities shall determine the maturity dates of debts and the terms of payment in such a way that the restitution of the affected property will not be prejudiced in any way nor its enjoyment by the claimant be unduly impaired.

### Article 40—Claims for Indemnification

1. Claims for indemnification which the defendant may have against his immediate predecessor in interest shall be governed by the rules of the Civil Law. The liability to make restitution shall be deemed to constitute a defect in the title within the meaning of the Civil Code. Section 439, paragraph 1 of the Civil Code shall not be applicable.

2. In case of restitution of real or tangible personal property, any claim provided in paragraph 1 may be asserted not only against the immediate predecessor but also against any mediate predecessor in interest who was not in good faith at the time he acquired the property. Such predecessors in interest shall be liable as joint debtors. They shall not be liable, if the defendant himself was not in good faith.

### Article 41—Lien of Third Persons over Claims of the Defendant

Any right over or interest in affected property which ceased to be effective by reason of the provisions of Article 30 shall constitute a lien on any claim which the defendant may have for repayment of consideration and for indemnity under this order and on the sum received by the defendant in satisfaction of such claim.

## Part VIII—General Rule of Procedure

### Article 42—Basic Principles

1. The restitution proceedings shall be commenced by petition and the proceedings shall be conducted in such a manner as to bring about a speedy and complete restitution. For the purpose of this order the filing of a petition in accordance with Berlin Kommandatura Order (49) 26 [4] shall constitute the filing of a petition.

[4] Above, p. 39.

2. In ascertaining the relevant facts the Restitution Authorities shall take fully into account the circumstances in which the claimant finds himself as a result of measures of persecution for the reasons referred to in Article 1. This shall apply in particular where the production of evidence is rendered difficult or impossible through the loss of documents, the death or nonavailability of witnesses, or similar circumstances. Sworn declarations made by the claimant or his witnesses shall be admissible notwithstanding the subsequent death of the person making any such declaration.

### Article 43—Right of Succession and Foreign Law

1. Any person who founds a claim upon a right of succession on death shall be required to prove such right.
2. Foreign Law shall be strictly proved where it is unknown to the Restitution Authorities.

### Article 44—Presumption of Death

Any persecuted person, or any person beneficially interested in his estate, whose last known whereabouts was in Germany or a country under the jurisdiction of, or occupied by Germany or her Allies and as to whose whereabouts or continued existence after May 8, 1945, no information is available, shall be presumed to have died on May 8, 1945; nevertheless, where it appears probable that such person died on a date other than May 8, 1945, the Restitution Authorities may presume such other date as the date of death.

### Article 45—Safeguarding

1. The Restitution Authorities shall, if the situation so requires, safeguard affected property in a suitable manner. To that end they may issue temporary injunctions (einstweilige Verfuegungen) or restraining orders (Arrestbefehle), either on their own initiative or upon application. Such injunctions or orders shall be modified or revoked if the property can be safeguarded by any measures other than those taken or if there is no further need for their continuation.
2. The provisions of the Code of Civil Procedure for the time being in force relating to "Arrest und einstweilige Verfuegungen," shall apply mutatis mutandis.

### Article 46—Trustee

1. Where supervision of any affected property is necessary and no other authority is entitled to exercise jurisdiction thereover a trustee shall be appointed for the purpose.
2. Appointment and supervision of trustees will be in accordance with regulations to be issued.

ARTICLE 47—COMPETENCE OF OTHER AUTHORITIES TO TAKE MEASURES UNDER ARTICLES 45 AND 46

Where the safeguarding measures described in Articles 45 and 46 are within the competence of another agency, the Restitution Authorities shall request that agency to take such measures.

## PART IX—DUTY TO REPORT

ARTICLE 48

1. Any person who has or at any time since January 30, 1933, has had possession, custody, or control of any property to which this order relates, shall make a report in duplicate in respect of such property to the Treuhaender der Amerikanischen, Britischen und Franzoesischen Militaerregierungen fuer zwangsuebertragene Vermoegen, Berlin W 30, Nuernbergerstrasse 53/55 (herein referred to as "the Treuhaender"). Such report will be made pursuant to all terms prescribed in Berlin Kommandatura Order (49) 26, dated February 16, 1949, and must contain information required in the form attached to that order as Appendix A.

2. Any person who has knowledge of any specific transfer since January 30, 1933 of property subject to this order, shall make a declaration in duplicate to the Treuhaender. This declaration must be in accordance with requirements of Berlin Kommandatura Order (49) 26, dated February 16, 1949, in the manner described on form attached to that order as Appendix B.

3. Declarations referred to in paragraphs 1 and 2 hereof must contain the information required by the relevant forms, but the declaration may be on any paper or form available to declarants, providing it is legible.

## PART X—FILING OF CLAIMS

ARTICLE 49—FILING OFFICE

1. The Treuhaender der Amerikanischen, Britischen und Franzoesischen Militaerregierungen fuer zwangsuebertragene Vermoegen, Berlin W 30, Nuernbergerstrasse 53/55 (hereinafter referred to as "the Treuhaender), referred to in Berlin Kommandatura Order (49) 26, dated February 16, 1949, shall perform the functions of a central filing office.

2. This office shall transmit any petition filed with it to the Restitution Agency or Agencies competent to deal with it under the provisions of Article 53.

ARTICLE 50—TIME LIMIT AND OTHER REQUIREMENTS

1. The filing of a petition for restitution shall be made in accordance with the requirements of this order and of Berlin Kommandatura Order (49) 26, dated February 16, 1949, as amplified by the provisions following or any regulations to be issued by the Allied Kommandatura.

2. A petition for restitution shall be deemed to have been submitted in a timely manner if such petition is delivered to the Treuhaender by June 30, 1950, or if the petition or the envelope or other papers accompanying it when received by the Treuhaender clearly show by the official notation of the postal or telegraph, or British, French or US diplomatic authorities that it was posted or received for dispatch to the Treuhaender on or before June 30, 1950, and such petition is received by the Treuhaender not later than August 31, 1950. Petitions received after that date will not be considered to have been submitted within the prescribed period.

3. The petition shall when necessary be substantiated by documents or sworn declarations, or the petition shall contain the information required by this order and by Berlin Kommandatura Order (49) 26 and attachments thereto. However, claimants may supply the required information on any paper available, so long as writing is legible.

4. The petition may be effectively filed by any one of several co-claimants.

5. Any petition filed by a person who is not entitled to restitution of the property shall be deemed to have been effectively filed in favor of the true claimant, or where appropriate, of a trust corporation.

6. Petitions should be written in German, if possible, to facilitate handling by German agencies; but may be written in French or English. They need not be submitted on forms prescribed for petitions in Berlin Kommandatura Order (49) 26, but shall contain the information required by Appendix C of that order, and must be legibly written.

7. The time limit for the submission of the report or declaration referred to in paragraphs 4 and 5 of Berlin Kommandatura Order (49) 26 and Article 48 of this order is hereby extended to February 16, 1950.

### Article 51—Relation to Other Remedies

Unless otherwise provided in this order, any claim within the scope of this order may be prosecuted only under the provisions and within the limits of time laid down in this order. Any claim based on a cause of action outside the scope of this order may be prosecuted in the ordinary courts.

### Article 52—Contents of Petition to be Filed

1. The petition shall contain a description of the affected property and such other particulars as a claimant is required to give in the form referred to in Berlin Kommandatura Order (49) 26.

2. The Treuhaender or the Restitution Authorities may request the claimant to supplement his petition by a statement (in an appropriate case by way of sworn declaration) containing such information as may be necessary for the purpose of adjudicating the claim.

3. If the claimant has no domicile or residence in Germany and has not appointed there an attorney authorized to accept service of process, he may nominate a person domiciled there for such purpose. If he fails to nominate such a person within a reasonable time, the Restitution Agency shall do so and notify the claimant of the appointment.

4. The Treuhaender shall notify the claimant of the Restitution Agency or Agencies to which the petition has been transmitted pursuant to Article 49, paragraph 2.

5. The time-table prescribed in Article 50 shall be deemed to have been complied with notwithstanding any formal or other defects in the petition.

### Article 53—Venue

1. Any petition for restitution shall be transmitted by the Treuhaender to the Restitution Agency of the district in which the affected property is situated. If it appears that a petition has been transmitted to a Restitution Agency which lacks jurisdiction, such petition shall be referred by such Restitution Agency to the Restitution Agency having jurisdiction. The order of reference shall be binding on the Agency to which the petition has been so referred.

2. Regulations may provide for additional rules as to venue, and in particular as to claims for compensation and ancillary claims.

### Article 54—Jurisdiction Ratione Materiae

The Restitution Authorities shall have jurisdiction ratione materiae irrespective of whether under any other statutory provision a claim for restitution would come within the jurisdiction of any ordinary administrative or other court or whether no court whatsoever would have jurisdiction.

### Article 55—Notice of Claim

1. The Restitution Agency shall give notice of the petition by formal service on the parties concerned requiring that an answer be filed within two months of such service. Parties concerned shall be deemed to be the defendant, lessees or tenants of, or persons holding other interests in, the affected property, as well as any other person the claimant may demand to be joined in the proceedings. If the German Reich, a former Land, the City of Berlin, the former NSDAP or one of its formations or affiliated organizations is a party concerned, service shall be made upon the Oberbuergermeister von Gross-Berlin. If a presently existing Land or Province is a party concerned, service shall be made upon the appropriate Minister of Finance of the Land. In the cases last mentioned the City of Berlin, the Land or the Province shall be authorized to join in the proceedings as a party having an interest therein. The provisions of this paragraph shall

not impose any liability upon the City of Berlin other than that which may arise by reason of other provisions of this order.

2. Where the identity or present address of a defendant is unknown or where it appears from the petition that any unidentified third person may have an interest in the affected property, the Restitution Agency shall effect service of notice of the petition by publication requiring the defendant and the unidentified third person to declare within two months to the Restitution Agency their interests (with proof thereof). Service by publication shall be effected in accordance with the provisions of Section 204, paragraph 2, of the Code of Civil Procedure as amended by Control Council Law No. 38 in the form applicable to a summons. Service shall be deemed to be effective one month after publication in the periodical specified in Section 204, paragraph 2, of such Code. Special regulations may be issued to provide for additional methods of service.

3. Upon service of the petition the case shall be deemed to be a lis pendens (rechtshaengig).

4. When the claim for restitution affects property in land or an interest of a like nature, the Restitution Agency shall request that an entry be made in the Land Title Register to the effect that a claim for restitution has been filed (Rueckerstattungsvermerk). The notice of restitution shall be effective against any third person.

5. The provision of the Code of Civil Procedure concerning Third Party procedure shall apply mutatis mutandis.

ARTICLE 56—PROCEDURE BEFORE THE RESTITUTION AGENCY

1. If no answer is made to the petition within the time specified in the notice, the Restitution Agency shall issue an order granting the petition. Where there is no dispute as to the limit of encumbrances and as to the continued existence of rights or interests, the Restitution Agency shall also make the appropriate findings on such matters.

2. Where a petition for restitution does not disclose a cause of action, or the truth of any of the allegations contained therein is controverted by entries in public records or by public documents available to the Restitution Agency, the latter Agency shall require the claimant to submit a statement within an appropriate period of time. The Agency shall dismiss the petition on the merits if the claimant does not within this period submit an explanation justifying his petition or supplementing the facts alleged therein.

3. Where an answer is filed but an amicable settlement is reached the Restitution Agency shall, on application, record the settlement in writing, and shall deliver a certified copy of the terms thereof to the parties concerned.

HeinOnline -- 44 Am. J. Int'l L. Sup 60 1950

ARTICLE 57—REFERENCE TO THE COURT

1. If an amicable agreement cannot be reached either wholly or in part or if the requisite measures to be taken are not within the competence of the Restitution Agency, it shall to the extent necessary refer the case to the Restitution Chamber of the Landgericht having jurisdiction over the Restitution Agency. This shall apply in particular to cases where only the limits of encumbrances or the continued existence of rights or interests or the liability for debts is in dispute.

ARTICLE 58—APPEAL (EINSPRUCH)

1. Any party may, by filing an appeal with the Restitution Agency, appeal to the Restitution Chamber against a decision of the Restitution Agency given pursuant to Article 53, paragraph 1, second sentence, or Article 56, paragraphs 1 and 2; notice of appeal shall be filed within one month unless the appellant resides in a foreign country, in which case the period shall be three months. The time for appeal shall begin to run from the service of the decision appealed against. Article 55, paragraph 2, shall apply mutatis mutandis.

2. An appeal shall be permissible only when it is founded on a violation of the provisions of Article 53, paragraph 1, second sentence, or Article 56, paragraph 1 or 2.

ARTICLE 59—EXECUTION

Agreements recorded by the Restitution Agency and orders of the Restitution Agency which are no longer subject to appeal may be enforced by execution pursuant to the provisions of the Code of Civil Procedure. For this purpose, the Restitution Agency shall have the powers of a court (Vollstreckungsgericht). In effecting execution, the Restitution Agency may avail itself of the services of other agencies and in particular of the courts.

## PART XI—JUDICIAL PROCEEDINGS

ARTICLE 60—MEMBERS OF THE RESTITUTION AGENCIES AND THE RESTITUTION CHAMBER

1. The Restitution Agencies shall be composed of a Chairman, who shall have the qualifications of a Judge, and two members qualified for the higher administrative service.

2. The Restitution Chamber shall be composed of a Presiding Judge and two Associate Judges, eligible for the office of judge or for the higher administrative service, to be assigned from among the judges of the Landgericht.

### ARTICLE 61—PROCEDURE

1. The Restitution Chamber shall adjust the legal relations of the parties in accordance with the provisions of this order.

2. Unless otherwise provided in this order, the procedure shall be governed by the rules applicable to matters of non-contentious litigation, subject, however, to the following modifications:

(a) The Chamber shall order an oral hearing which shall be public.

(b) The proceedings may at the request of the claimant be stayed for a period not exceeding six months.

(c) The Chamber may give a judgment on part of the claim (Teilurteil) before it, or on part of a claim, where the determination of any counterclaim, set-off or lien or any other defense in the nature of a set-off or counterclaim would substantially delay the decision on restitution.

(d) Without prejudice to the final decision, the Chamber may order the temporary surrender of the affected property to the claimant either with or without security. In such cases the claimant shall have, with respect to third persons, the rights and obligations of a trustee (Treuhaender).

### ARTICLE 62—FORM AND CONTENTS OF THE DECISION

1. The Decision of the Restitution Chamber shall be pronounced in an order, the grounds for which shall be given. Such order shall be served on the parties concerned. The order may be enforced by execution, a subsequent appeal notwithstanding. The provisions of Section 713, paragraph 2, and Sections 713a to 720 of the Code of Civil Procedure shall apply mutatis mutandis.

2. An objection (sofortige Beschwerde) may be made against the order by filing notice of such objection within one month or, in the case of a person residing in a foreign country, within three months. The time for giving notice of objection shall begin to run from the date of service of the order. Article 55, paragraph 2, shall apply mutatis mutandis. The Kammergericht shall hear the objection. The objection may be founded only on an allegation that the decision violated the Law. The provisions of Sections 551, 561 and 563 of the Code of Civil Procedure shall apply mutatis mutandis.

### ARTICLE 63—POWERS OF REVIEW

A Board (or boards) shall have the power to review any decision on any petition for restitution under this order and to take whatever action is deemed necessary with respect thereto. Regulations of Military Government will provide for the appointment and composition of such Board (or boards), its jurisdiction, procedure, and such other matters as are deemed appropriate.

HeinOnline -- 44 Am. J. Int'l L. Sup 62 1950

## PART XII—SPECIAL PROVISIONS

### ARTICLE 64—CONFLICT OF JURISDICTION

1. If any claim of any of the kinds specified in Articles 1 to 41 is made by a person entitled to restitution in proceedings before a court or by way of execution, defense or counterclaim, the court concerned shall notify the Restitution Agency. The court may, and on request of the Restitution Chamber shall, stay the proceedings or temporarily suspend execution by an order against which there may be no appeal. The Restitution Chamber may direct that the claim be dealt with under this order and not by exercise of jurisdiction by the ordinary courts, or it may authorize the claimant to prosecute his claim before such courts; in which latter case the authorization shall be binding on the courts. If an action in the ordinary civil courts is terminated by reason of the claim being dealt with under this order, any court fees charged shall be remitted and neither party shall be entitled to any extra-judicial costs.

2. The court shall report to the Treuhaender any measures taken under paragraph 1.

## PART XIII—PROVISIONS AS TO COSTS

### ARTICLE 65—COSTS

1. No court fees shall normally be charged in proceedings before Restitution Authorities. Regulations may, nevertheless, provide for the levying of costs, fees, and expenses in certain cases.

2. No advance payment, or bond or security for costs may be demanded from a claimant.

## PART XIV

### ARTICLE 66—PENALTIES

1. Any person who alienates, damages, destroys, or conceals any affected property in order to defeat the rights of a claimant shall upon conviction be punished with imprisonment not exceeding five years, or a fine, or both, unless heavier penalties under any other law are applicable.

2. Penal servitude not exceeding five years may be imposed in especially serious cases.

3. An attempt shall be punishable.

## PART XV—RESTORATION OF RIGHTS OF SUCCESSION AND ADOPTION

### ARTICLE 67—EXCLUSION FROM INHERITANCE

1. An exclusion from the right of succession by will or on intestacy or the forfeiture of an estate which occurred during the material period by virtue of a legislative measure for any of the reasons referred to in Article 1 shall be deemed not to have occurred.

2. For the purpose of determining any periods of limitation, the event giving rise to the succession shall be deemed to have occurred on the effective date of this order.

### Article 68—Avoidance of Testamentary Dispositions and of Disclaimers of Inheritance

1. Testamentary dispositions and contracts of inheritance made in the material period by virtue of which any descendant, parent, grandparent, brother, sister, half-brother, half-sister, or their descendants, as well as a spouse, was excluded from inheritance for the purpose of avoiding a seizure of the estate by the State, anticipated by the party making the disposition, for any of the reasons referred to in Article 1, shall be capable of being avoided. Subject to the provisions of paragraph 3 of this Article the power of avoidance shall be governed by Sections 2080 et seq. or 2281 et seq. of the Civil Code.

2. Disclaimers of inheritance by persons described in paragraph 1 shall be capable of being avoided provided such disclaimers were made within the material period in order to prevent an anticipated seizure of the property by the State, for any of the reasons referred to in Article 1. Subject to the provisions of paragraph 3 of this Article, the right of avoidance shall be governed by Sections 1954 et seq. of the Civil Code.

3. Testamentary dispositions, contracts of inheritance or disclaimers of inheritance must be avoided not later than June 30, 1950.

### Article 69—Testamentary Disposition of a Persecuted Person

1. A testamentary disposition made within the material period shall be valid, notwithstanding noncompliance in whole or in part with any formal requirements, if the testator made such disposition in view of an actual or imagined immediate danger to his life, based on measures of persecution for any of the reasons referred to in Article 1, and where the circumstances were such that he could not reasonably be expected to comply with the statutory formal requirements.

2. The provisions of paragraph 1 shall not apply if the testator was still capable of making a testamentary disposition complying with the statutory requirements after September 30, 1945.

### Article 70—Re-Establishment of Adoption

1. If an adoption relationship was revoked within the material period for any of the reasons referred to in Article 1, such relationship may be reinstated nunc pro tunc by a contract between the foster-parent or his heirs and the child or his heirs. Sections 1741 to 1772 of the Civil Code, with the exceptions of Sections 1744, 1745, 1747, 1752 and 1753, shall apply to

the contract of reinstatement. A contract of reinstatement may be judicially confirmed notwithstanding the death of the parties to it. If one of the parties concerned is not capable of being brought before the court, a guardian ad litem (Pfleger) may be appointed to represent his interests in the proceedings for reinstatement.

2. Where an adoption was revoked by decision of a court during the material period for any of the reasons referred to in Article 1 and no facts appeared which would have entitled any of the contracting parties to revoke the adoption subsequently on his own initiative, such party or his heirs may require that the decision be quashed.

3. The Amtsgericht which cancelled the adoption shall have jurisdiction in cases falling within the provisions of paragraph 2. Paragraph 1, fourth sentence, shall apply mutatis mutandis. The decision of the court shall be discretionary and shall take into account the interests of the parties. Upon a revocation of the order cancelling the adoption, the adoption shall be deemed to be reinstated nunc pro tunc. The court may stipulate that certain parts of its order shall not have retrospective effect.

4. No costs or fees shall be charged in such proceedings.

5. An application for re-establishment of an adoption must be made on or before June 30, 1950.

### Article 71—Jurisdiction

Any claims arising under Articles 67 to 70 shall be decided by the ordinary civil courts. A filing of a claim with the Treuhaender shall not be necessary, but the Treuhaender shall be informed of any action entered in conformity with Articles 67 to 70.

## Part XVI—Reinstatement of Trade Names and of Names of Associations

### Article 72—Re-Registration of Cancelled Trade Names

1. Where a trade name was cancelled in the Commercial Register within the material period after the business establishment had been closed for any of the reasons referred to in Article 1, the cancelled trade name shall on application be registered if the business is reopened by its last owner or owners or his or their heirs.

2. If the business establishment closed was conducted at the time of its closing by a single owner, the last owner or his heirs shall be entitled to demand the re-registration of the cancelled trade name. If there are several heirs, and if not all of them participate in the resumption of the enterprise, the re-registration of the cancelled trade name may be demanded, provided that the heirs who do not participate in the business assent to the resumption of the trade name.

3. If at the time of its closing the business establishment was conducted by several partners personally liable, re-registration of the cancelled trade

name may be demanded if all the partners so liable establish a business enterprise, or if one or several of them do so with the consent of the remaining partners; in respect of heirs of partners the provisions of paragraph 2 shall apply mutatis mutandis.

### ARTICLE 73—CHANGE OF FIRM NAME

Where a firm's name was changed in the material period for any of the reasons referred to in Article 1, the former firm's name may be restored upon the application of the person who owned the business concern at the time the change was made, or of his heirs, provided he or they now own the enterprise. The provisions of Article 72, paragraph 2, second sentence, and paragraph 3, shall apply mutatis mutandis.

### ARTICLE 74—NAMES OF JURISTIC PERSONS

The provisions of Articles 72 and 73 shall be applicable to the trade names of juristic persons.

### ARTICLE 75—REINSTATEMENT OF TRADE NAMES IN OTHER CASES

Whenever the use of a former trade name is requisite to secure full restitution, the Restitution Chamber may permit the reinstatement of a cancelled or changed trade name in cases other than those provided for in Articles 72 to 74.

### ARTICLE 76—NAMES OF ASSOCIATIONS AND ENDOWMENTS (STIFTUNGEN)

Article 75 shall apply mutatis mutandis to the resumption by an association or an endowment of its former name.

### ARTICLE 77—PROCEDURE

Applications for the registration in the Commercial Register of former firm and trade names must be filed within the period prescribed by this order for the filing of claims for restitution. The Amtsgericht in its capacity as Court of Registry shall have jurisdiction over these applications except in the cases provided for in Article 75. In all other respects the procedure shall be governed by the rules of procedure applicable to matters of non-contentious litigation. No costs or fees shall be charged in such proceedings.

## PART XVII—FINAL PROVISIONS

### ARTICLE 78—LIMITATION

To the extent to which the provisions of the Civil Code as to limitation of actions, or as to prescriptive rights, defeat any claim falling under this order, any relevant periods of limitation or prescription shall be deemed

not to have expired until six months after such cause of action arises by reason of the operation of this order, and in no event prior to December 31, 1950.

### ARTICLE 79—TAXES AND OTHER LEVIES

1. Taxes and other public levies shall not be imposed in connection with restitution. No fiscal claims shall be imposed on a claimant in respect of the period during which he was unjustly deprived of the affected property.

2. No taxes, including inheritance taxes, or other public assessments, fees, or costs shall be refunded in connection with the return of affected property.

### ARTICLE 80—IMPLEMENTING AND CARRYING-OUT PROVISIONS

Unless otherwise provided for in this order or ordered by the Allied Kommandatura, the Magistrat or Stadtverordnetenversammlung of the City of Berlin shall issue the legal and administrative regulations necessary for the implementation of this order.

### ARTICLE 81—JURISDICTION OF GERMAN COURTS

Subject to the limitations on the jurisdiction of German courts imposed by Military Government Law No. 2, so far as applicable in Berlin, and by supplemental orders issued by the Allied Kommandatura, German courts are hereby authorized to exercise jurisdiction in cases involving offenses against any of the provisions of Article 66.

### ARTICLE 82

The Allied Kommandatura, if it considers it advisable or necessary, will publish implementing regulations.

### ARTICLE 83—EFFECTIVE DATE

This order comes into force on the twenty-sixth day of July 1949.

### ARTICLE 84

Acknowledge receipt of this order citing number and date.
By order of the Allied Kommandatura Berlin.

LT. COL. G. M. OBORN,
*Chairman Chief of Staff.*

[SEAL]

EDWARD F. WITSELL,
*Major General,*
*The Adjutant General.*

[F. R. Doc. 49–7081; Filed, Aug. 31, 1949; 8:59 a. m.]

HeinOnline -- 44 Am. J. Int'l L. Sup 67 1950