**LAWSON & WEITZEN, LLP**
ATTORNEYS AT LAW

88 BLACK FALCON AVENUE, SUITE 345
BOSTON, MASSACHUSETTS 02210-2414

BOSTON
TELEPHONE (617) 439-4990
TELECOPIER (617) 439-3987
EMAIL: POST@LAWSON-WEITZEN.COM
WWW.LAWSON-WEITZEN.COM

CAPE COD
LAWSON, WEITZEN & BANKERT, LLP
SIX GRANITE STATE COURT
BREWSTER, MASSACHUSETTS 02631
TELEPHONE (508) 255-3600

MARLBOROUGH
LAWSON, WEITZEN & HAILER, LLP
171 LOCKE DRIVE, SUITE 101
MARLBOROUGH, MASSACHUSETTS 01752
TELEPHONE (508) 618-1025

EVAN T. LAWSON
RICHARD B. WEITZEN*
PAMELA B. BANKERT
FRANK L. BRIDGES
IRA H. ZALEZNIK
JOHN J. WELTMAN***
VALERIE L. PAWSON
GEORGE F. HAILER, PC*
GEORGE E. CHRISTODOULO, PC
KENNETH B. GOULD
JOSEPH FRIEDMAN
JOHN A. TENNARO
WILLIAM F. COYNE, JR
DAVID A. RICH*
DENNIS J. MANESIS**
NATALIE A. KANELLIS†
PATRICIA L. FARNSWORTH
K. SCOTT GRIGGS
MICHAEL J. McDEVITT
STEVEN M. BUCKLEY
SONIA K. GUTERMAN, Ph.D.
J. MARK DICKISON**
CLARE B. BURHOE
ROBERT J. ROUGHSEDGE***
RICHARD J. SULLIVAN, JR.
CAROLINE A. O'CONNELL*
MARISSA A. GOLDBERG
MICHAEL WILLIAMS
KATHRYN E. PIECZARKA
DEAN J. HUTCHISON
SCOTT T. BUCKLEY
KRISTINA A. ENGBERG
C. KIMBERLY BAKEBERG
JAMES M. HENRY

April 19, 2006

Sherri North Cohen, Esq.
State of New York
Banking Department
1 State Street
New York, NY 10004

Dear Sherri,

I enclose a copy of an action that was recently commenced in Germany by Baroness Bissonnette against the Estate of Max Stern. Your recent correspondence and the press release you forwarded to our attention made clear to Baroness Bissonnette that we would not be able, at this time, to amicably resolve the questions regarding the ownership of the Winterhalter painting (the "Artwork"). Accordingly, she has obtained German counsel who has commenced the attached action in Germany. Please note that it is my understanding that the painting has been in Germany for some time, and that Baroness Bissonnette and her counsel believe that the German courts, which have already addressed issue regarding the painting, are the best ones to resolve to whom the painting belongs.

Although we have not yet had the action translated, it is our understanding that the action is similar to an action in the United States for a declaratory judgment, and seeks a declaration of ownership of the Artwork.

We understand from Baroness Bissonnette's German counsel that he believes that this case must be litigated in the German system for a number of reasons. First, the Artwork is located in Germany. Furthermore, all the events occurred in Germany years ago and all potential witnesses are in Germany. Finally, the German court has already dealt with the issues in this case when it ordered the German government to pay to the Stern Estate the difference between the selling price of the artwork in the Stern Gallery at the auction in Germany and the fair market value of the collection.

* ALSO ADMITTED IN NY
** ALSO ADMITTED IN NH
*** ALSO ADMITTED IN CA
ALSO ADMITTED IN DC
** ALSO ADMITTED IN NJ & PA
*** ALSO ADMITTED IN RI, CT, NH & ME
† ALSO ADMITTED IN NH & NY

**LAWSON & WEITZEN, LLP**



Since the Artwork was a part of the collection for which the German government compensated Mr. Stern directly, it is German counsel's position that the previous case should have brought about a final resolution of this matter. Even if this is not the case, there appears to be no jurisdiction for this action in the United States, since the artwork is in Germany and the Stern estate is in Canada.

Since Baroness Bissonnette has now had to expend additional funds to bring about the resolution of this matter, her previous offers of settlement are rescinded. However, Baroness Bissonnette has given us authority to continue to negotiate a settlement for return of the Artwork to the Stern Estate for fair market value. As time progresses, however, I imagine that she will seek legal fees as well. Therefore, if the Stern Estate would like to begin settlement discussions again, we are willing to consider an offer at fair market value. Otherwise, we understand that Baroness Bissonnette will proceed with the action in Germany, where we understand the courts move swiftly to resolve such disputes.

While our office is not representing Baroness Bissonnette in the German action, we do have authority to handle settlement negotiations. If you or counsel for the Max Stern estate wish to contact Baroness Bissonnette's counsel in Germany, he is Dr. Rainer Koehne and his number is 011-49-221-931-93204.

Very truly yours,

Scott T. Buckley

Enclosure

Cc: Baroness Maria Bissonnette
John J. Weltman, Esq.

**WIRTZ & KRANEIS**
RECHTSANWÄLTE

DR. HEINZ WIRTZ III (-1987)
DR. KRISTIAN KRANEIS*
JOACHIM ROSSHOFF
JÜRGEN FUCHS
JÖRG REINARTZ
DR. RANDOLF MOHR*
DR. THOMAS KLEIN*
MANFRED MEYER**
VOLKER SCHMITZ-VOLLBRACHT

* FACHANWALT FÜR STEUERRECHT
** FACHANWALT FÜR ARBEITSRECHT

SACHSENRING 83
50677 KÖLN

POSTFACH 25 03 60
50519 KÖLN

FACH LG KÖLN: K 1810
FACH OLG KÖLN: K 158

DURCHWAHL (0221) 931 93-203
TELEFAX (0221) 931 93-104
E-MAIL ROSSHOFF@WIRTZ-KRANEIS.DE
AKTEN-NR 0504/074 BP

07.04.2006

Landgericht Köln
Zivilkammer
Luxemburger Str. 101

50939 K ö l n

**K L A G E**

der Frau Maria-Luise Bissonnette, 50 Park Row West , Apt. 905, Providence, R.I. 02903-1151 (USA),

**- Klägerin -**

Prozessbevollmächtigte: die beim Landgericht Köln zugelassenen Rechtsanwälte der Sozietät Wirtz & Kraneis in Köln

**g e g e n**

Estate of Dr. Max Stern, City of Montreal, Kanada, vertreten durch die "Executors" und "Trustees"

a) Herrn H. Heward Stikeman, Q.C. 3940, Cotes-des-Neiges, Montreal, Quebec H3H 1W2, Kanada
b) Herrn Philip Fischell Vineberg, Q.C. 32, Summit Crescent, Montreal, Quebec H3Y 1L3, Kanada
c) Herrn R. Fraser Elliot, Q.C. Commerce Court West 199, Bay Street, #5300, Toronto, Ontario M5L 1B8, Kanada

**- Beklagter -**

**wegen:** **Feststellung**
**vorläufiger Gegenstandswert: € 60.000,00**

Gerichtskosten in Höhe von € 1.668,00 zahlen wir per anliegendem Verrechnungsscheck.

Wir erheben namens und in Vollmacht der Klägerin Klage zum Landgericht Köln, Zivilkammer.

Wir beantragen,

> festzustellen, dass die Klägerin Eigentümerin des Gemäldes von Franz Xaver Winterhalter "Mädchen aus den Sabiner Bergen" ist und dem Beklagten Herausgabeansprüche wegen dieses Bildes nicht zustehen.

Es wird weiter beantragt,

> die Zustellung der Klageschrift und der Ladung im Ausland zu vermitteln sowie die Einlassungsfrist für die Beklagte auf 1 Monat festzusetzen.

Im Hinblick auf die Auslandszustellung wird beantragt,

> die zuzustellenden Schriftstücke übersetzen zu lassen und die Übersetzungen zuzustellen.

Für die mit der Übersetzung verbundenen Kosten sagt sich der Unterzeichner persönlich stark. Wir bitten darum, eine entsprechende Vorschussanforderung zu stellen, die dann unverzüglich ausgeglichen werden wird. Wir bitten aber darum, die Übersetzung bereits vor Eingang des Vorschussbetrages zu veranlassen, damit die Zustellung möglichst kurzfristig erfolgen kann.

**Begründung:**

Die Klägerin war deutsche Staatsbürgerin und wird von dem Beklagten auf Herausgabe des im Klageantrag genannten Gemäldes in Anspruch genommen, welches sich derzeit in Köln befindet. Der Rechtsvorgänger der Klägerin hat das im Klageantrag genannte Gemälde im Jahre 1937 bei einer Versteigerung durch das Kunsthaus Math. Lempertz erworben. Der Beklagte vertritt die Rechtsauffassung,

hierbei sei die Klägerin nicht rechtmäßige Eigentümerin geworden, da es sich um im Zusammenhang mit dem Holocaust gestohlene Kunst handele.

Das Herausgabeverlangen des Beklagten ist unbegründet, da die Klägerin rechtmäßige Eigentümerin des Gemäldes ist.

## I.
## Zuständigkeit

Das angerufene Gericht ist für die Entscheidung des Rechtsstreits international und örtlich gemäß § 23 ZPO zuständig. Das Gemälde befindet sich in Köln. Es soll durch Kunsthandlung Lempertz untersucht werden, ob Sicherungs- und Restaurierungsmaßnahmen erforderlich sind. Außerdem soll der Wert geschätzt werden im Hinblick auf eine beabsichtigte Versteigerung.

Die weitere Inlandsbezogenheit der Sache ist gegeben, weil die Klägerin deutsche Staatsangehörige gewesen ist und der Verkauf und die Eigentumsübertragung, die gerichtlich zu beurteilen sind, in Deutschland stattgefunden haben, so dass auch nach den jeweils geltenden nationalen Rechtsvorschriften des internationalen Privatrecht - würde man auf den heutigen Wohnsitz der Parteien abstellen - deutsches Recht Anwendung findet.

## II.
## Rechtsschutzbedürfnis und Passivlegitimation

Der Beklagte berühmt sich Herausgabeansprüchen an dem hier streitgegenständlichen Gemälde. Der Beklagte beruft sich insoweit darauf, dass der frühere Eigentümer, der inzwischen verstorbene Kunsthändler Dr. Max Stern, unter dem nationalsozialistischen Regime zur Eigentumsaufgabe gezwungen worden sei. Im Zusammenhang mit den geltend gemachten Herausgabeansprüchen sind Verhandlungen zwischen den Parteien geführt worden, in denen von Seiten der Klägerin der Verkauf des Gemäldes angeboten wurde. Eine Einigung ist daran gescheitert, dass der Beklagte nicht bereit war, mehr als 10% des von ihm angenommenen Marktwertes zu zahlen. Wir überreichen in diesem Zusammenhang das Schreiben der Vertreter des Beklagten an die Vertreter der Klägerin vom 10.11.2005 als

**Anlage K 1.**

Falls das Gericht die Einreichung einer Übersetzung dieses Schreibens für notwendig erachtet, wird höflich um einen entsprechenden **Hinweis** gebeten.

Mit der Durchsetzung von Herausgabeansprüchen von durch die Nationalsozialisten konfiszierten oder zwangsverkauften Kunstbesitz des verstorbenen Dr. Max Stern ist die Concordia Universität im kanadischen Montreal beauftragt, für die wiederum als Leiter für Sonderprojekte der im Passivrubrum genannte Dr. Clarence Epstein zuständig ist.

**Anlage K 2.**

Aufgrund der durch den Beklagten geltend gemachten Herausgabeansprüche ist eine durch die Klägerin am 06.01.2005 eingeleitete Versteigerung gescheitert, das Gemälde wurde aus der Versteigerung herausgenommen. Auch andere Auktionshäuser haben sich im Hinblick auf die geltend gemachten Herausgabeansprüche geweigert, das Gemälde in eine Versteigerung aufzunehmen. Die Klägerin will das Gemälde im Wege einer Auktion veräußern und ist daher im Verhältnis zum Beklagten darauf angewiesen, dass die Eigentumsverhältnisse geklärt werden, um dies tun zu können.

Rechtlich vertreten wird der Nachlass, gegen die Klage in Montreal zu richten wäre und der deshalb in Deutschland partei- und prozessbeteiligt ist, durch die "Executors" und "Trustees" des Estate, die durch das Testament des verstorbenen Max Stern vom 13.12.1985 eingesetzt worden sind, nämlich

a) Herrn H. Heward Stikeman, Q.C. 3940, Cotes-des-Neiges, Montreal, Quebec H3H 1W2

b) Herrn Philip Fischell Vineberg, Q.C. 32, Summit Crescent, Montreal, Quebec H3Y 1L3

c) Herrn R. Fraser Elliot, Q.C. Commerce Court West 199, Bay Street, #5300, Toronto, Ontario M5L 1B8

An diese ist die Klageschrift zuzustellen.

**III.**

**Sachverhalt**

1. Früherer Eigentümer war Dr. Karl Wilharm, Hofgeismar, der Stiefvater der Klägerin, der als Erbin seine Ehefrau, die Mutter der Klägerin, durch eigenhändiges handschriftliches Testament vom 07.01.1945,

**Anlage K 3,**

eingesetzt hat. Diese wiederum hat durch handschriftliches Testament vom 15.05.1966,

**Anlage K 4,**

ihr Vermögen an die Klägerin vermacht, die ihre vorverstorbene Mutter beerbt hat. Zu dem Vermögen gehört das im Antrag bezeichnete Gemälde, wovon eine Abbildung in Kopie beigefügt ist als

**Anlage K 5.**

2. Dr. Wilharm hat das Gemälde in der Auktion Nr. 392 des Kunsthauses Math. Lempertz, Köln (10.-12.11.1937) ersteigert. Einlieferer der Versteigerungsobjekte war Dr. Max Stern, Kunsthändler in Düsseldorf. Dr. Stern war "Jude" im Sinne der nationalsozialistischen Gesetze. Er hat die Gemälde seiner Galerie zur Versteigerung gebracht, weil er gezwungen wurde seinen Beruf als Kunsthändler in Deutschland aufzugeben.

Der Versteigerung lag eine interne Preisliste ("unverbindliche Schätzung") zu Grunde, die von Dr. Stern stammte. Darin waren die Mindestpreise für einen eventuellen Zuschlag festgelegt. Insgesamt handelte es sich um 228 Nummern. Das Gemälde von Winterhalter hat die Einlieferungsnummer 181.

Dr. Wilharm hat das Gemälde für RM 4.140,00 ersteigert. Der angegebene Schätzwert lag bei RM 4.000,00. Die Fotokopie der Quittung überreichen wir als

**Anlage K 6.**

Der Versteigerungserlös wurde von dem Kunsthaus Math. Lempertz auf ein Konto von Dr. Stern überwiesen.

3. Wegen der NS-Verfolgungsmaßnahmen ist Dr. Stern im Dezember 1937 nach London emigriert und sodann später nach Kanada. Er hat in Montreal mit Erfolg die Dominion Gallery of Fine Art geleitet, zunächst als Manager, dann als Partner. In den späteren Jahren war Dr. Stern einer der bedeutendsten Kunsthändler in Kanada, wie etwa eine Schrift der National Gallery of Canada, Library and Archives, Ottawa 2003, zeigt. Dr. Stern ist 1987 verstorben.

1962 hat Dr. Stern ein Wiedergutmachungsverfahren vor dem Landgericht Düsseldorf betrieben (Aktenzeichen: 26 O (Entsch) 454/62 LG Düsseldorf). Durch Teilurteil vom 24.02.1964 sind ihm wegen "Verschleuderungsschadens" DM 8.581,50 zuerkannt worden. Die Entschädigung bezieht sich auf die Versteigerung von 1937 und den dort erzielten zu geringen Erlös. Welche Gemälde im Einzelnen betroffen sind, ist unklar. Fest steht, dass nicht alle Gemälde 1937 versteigert worden sind. Unklar ist, ob der Verschleuderungsschaden sich auch auf das streitgegenständliche Bild bezieht, da es über dem Schätzwert zugeschlagen worden ist.

Von Seiten des Kunsthauses Math. Lempertz ist im Wiedergutmachungsprozess angegeben worden, dass die Bilder zu regulären Preisen versteigert worden seien. Im Urteil ist weiter festgehalten, dass die Versteigerung ordnungsgemäß abgewickelt wurde und der Versteigerer sich an die Vorgaben von Dr. Stern gehalten hat. Das Urteil kommt aber unter Berücksichtigung der Beweiserleichterungen nach dem Bundesentschädigungsgesetz zu dem Ergebnis, dass der Versteigerungserlös ohne die Verfolgungsmaßnahmen tatsächlich höher ausgefallen wäre. Auf dieser Basis wird im Schätzwege und im Einzelnen allein aufgrund des Urteils nicht nachvollziehbar ein Verschleuderungsschaden von RM 46.567,00 ermittelt, der umgerechnet zu dem Entschädigungsanspruch in Höhe von DM 8.581,50 geführt hat.

**Beweis:** Beiziehung der Akten 26 O (Entsch.) 454/62 LG Düsseldorf

4. Das Gemälde sollte am 06.01.2005 bei einer Auktion in Cranston, Rhode Island, durch die Estates Unlimited Inc. Auctioneers versteigert werden. Unmittelbar vor dem Versteigerungstermin meldete sich für die Beklagte Ms. Sarah Jackson und wies darauf hin, dass das Gemälde in der Liste der durch Verfolgungsmaßnahmen verloren gegangenen Werke geführt werde und als

"stolen property" zum Nachlass Max Stern gehören würde. Das Gemälde wurde daraufhin aus der Versteigerung genommen.

Mit Schreiben vom 08.02.2005 stellte das Holocaust Claims Processing Office unter Darstellung des Schicksals von Dr. Stem den Sachverhalt dar. Es berief sich auf einen erzwungenen Verkauf ("forced sale") und eine letztlich im Zuge des Holocaust erfolgte Entwendung des Kunstwerks. Deshalb verlange der Nachlass Dr. Max Stern die Rückgabe und Herausgabe des Gemäldes durch die Klägerin.

Die Klägerin hat dem Nachlass angeboten, das Gemälde zu einem angemessenen und herabgesetzten Preis zu erwerben. Hierauf ging der Beklagte nicht ein. Der Nachlass begehrt weiterhin die Herausgabe des Gemäldes.

**IV.**
**Rechtslage**

Die Klage ist zulässig und begründet.

1. Das Rechtsschutzbedürfnis der Klägerin liegt vor. Das Eigentum ist der Klägerin streitig gemacht worden. Das Bild ist aus der Versteigerung in Cranston herausgenommen worden. Ohne die gerichtliche Klärung der Eigentumsverhältnisse ist das Bild unverkäuflich.

2. Die Klägerin ist rechtmäßige Eigentümerin des Gemäldes.

   Die Klägerin selbst hat es im Wege der Erbschaft erworben. Wir gehen davon aus, dass dieser Sachverhalt unstreitig bleiben wird. Aber auch der Erwerb durch ihren Stiefvater im Jahre 1937 ist rechtlich nicht angreifbar.

   (1) Dr. Wilharm hat das Gemälde in einer ordnungsgemäß durch das Kunsthaus Math. Lempertz abgewickelten Versteigerung von dem damaligen Eigentümer erworben und zwar über dem Preis, den Dr. Stern als Mindestpreis angesetzt hatte. Auf das Gebot hat Dr. Wilharm Zahlung gemäß der Quittung vom 13.11.1937 geleistet

Es wird bestritten, dass dieses Gemälde "unter Preis" im Zusammenhang mit den Verfolgungsmaßnahmen gegenüber jüdischen Mitbürgern angesteigert worden ist und dass bei diesem Gemälde ein Verschleuderungsschaden vorgelegen hat. Denn bei der Auktion ist der von Dr. Stern angesetzte Mindestwert überboten worden.

(2) Aber selbst wenn man unterstellt, dass - entsprechend der Entscheidung des Landgerichts Düsseldorf - das Bild von dem Verschleuderungsschaden betroffen ist und zu einem unter dem Marktwert liegenden Preis angesteigert worden ist, weil sich der von Dr. Stern angesetzte Preis von RM 4.000,00 aus der NS-verfolgungsbedingten Zwangslage erklärt, kann die Rückgabe des Eigentums von der Beklagten nicht verlangt werden.

a) Es ist allerdings anerkannt, dass eine "allgemeine Zwangslage" genügt, um Willenserklärungen nach § 123 BGB wegen widerrechtlicher Drohung anfechten zu können. Eine solche Zwangslage wird man nach der Pogromnacht vom 08./09.11.1938 ab dieser Zeit annehmen müssen. Für den hier maßgeblichen früheren Zeitpunkt kann von einer derartigen Zwangslage nicht ausgegangen werden. Zweifelhaft ist dies insbesondere angesichts der Durchführung der Versteigerung durch das angesehene Kunsthaus Math. Lempertz. außerdem wurde dieses für das Unternehmen eines Kollegen in der Nachbarstadt tätig; schließlich ist das Mindestgebot für das streitgegenständliche Gemälde, das Dr. Stern angesetzt hatte, erzielt und geringfügig überschritten worden.

Demgemäß beruft sich die Klägerin darauf, dass schon aus tatsächlichen Gründen der Eigentumserwerb nicht mit Erfolg angegriffen werden kann.

b) Die Anfechtung gem. § 123 BGB greift aus mehreren, selbständig nebeneinander stehenden Gründen auch in rechtlicher Hinsicht nicht durch:

aa) Zunächst müsste hier gerade das abstrakte Übereignungsgeschäft den Anfechtungsvoraussetzungen

unterliegen. Das aber kann nur angenommen werden, wenn gerade der Übertragsakt selbst auf der Drohung beruht. Dies ist nicht der Fall.

bb) Sodann kommt § 123 BGB nicht zur Anwendung, soweit die Rückerstattungsgesetze eine Wiedergutmachung anordnen, die hier, sollte eine Verschleuderung bei dem streitgegenständlichen Gemälde vorgelegen haben, auch im Hinblick auf das Bild erfolgt ist. Nach höchstrichterlicher Rechtsprechung sind die Rückerstattungsgesetze lex specialis zu § 123 BGB, so dass dieser nicht mehr zur Anwendung kommen kann (BGHZ 10, 340, 343). Der Grund dafür liegt darin, dass die Rückerstattung die veranlassten unrechtmäßigen Vermögensverschiebungen innerhalb der in den gesetzten vorgesehenen Fristen zum Ausgleich, aber auch zum Abschluss bringen sollte.

cc) Schließlich wäre eine Anfechtung innerhalb eines Jahres seit Beendigung der Zwangslage vorzunehmen, § 124 Abs. 1 BGB. Da die Rückerstattungsansprüche 1962 geltend gemacht worden sind, ist jede denkbare Frist abgelaufen. Sie ist darüber hinaus ausgeschlossen, wenn nach bis zum 31.12.2001 geltendem Recht 30 Jahre und nach neuem Recht 10 Jahre vergangen sind.

Im Ergebnis ist also festzuhalten, dass der - soweit bekannt - ohnehin ordnungsgemäß abgewickelte Versteigerungs- und Erwerbsvorgang des Bildes wegen der NS-verfolgungsbedingten Zwangslage nicht angegriffen werden kann und Herausgabeansprüche der Beklagten nicht zustehen.

Demgemäß ist gemäß Antrag das Eigentum der Klägerin an dem Gemälde festzustellen.

**V.**
**Gegenstandswert**

Der Gegenstandswert wird angegeben mit € 60.000,00. Das Gemälde ist - vorläufig - aufgrund von Fotografien mit einem Wert von € 50.000,00 bis € 70.000,00 vom Kunsthaus Math. Lempertz geschätzt worden.

VI.

Wir bitten höflich,

> unverzüglich die Zustellung des Schriftsatzes nach erfolgter Übersetzung zu veranlassen.

(Rosshoff)
Rechtsanwalt