STATE OF NEW YORK
BANKING DEPARTMENT
1 STATE STREET
NEW YORK, NY 10004

HOLOCAUST CLAIMS
PROCESSING OFFICE

TEL: 212-709-5583
FAX: 212-709-5592
e-mail: sherri.cohen@banking.state.ny.us

February 8, 2005

Mrs. Maria L. Bissonnette
c/o Mr. Steven M. Fusco
Estates Unlimited, Inc.
63 Fourth Avenue
Cranston, Rhode Island 02910

Re: Franz Xaver Winterhalter's *Mädchen aus den Sabiner Bergen*

Dear Mrs. Bissonnette,

Mr. Fusco has kindly agreed to pass this letter along to you in the interest of beginning an amicable dialogue about the ownership of Winterhalter's painting *Mädchen aus den Sabiner Bergen*. I am writing to you on behalf of the estate of Dr. Max Stern who has filed an art claim with the New York State Banking Department's Holocaust Claims Processing Office ("HCPO"). We are working -- together with the estate's representatives, Dr. Clarence Epstein, Director of Special Projects at Concordia University, and Dr. Willi Korte -- to locate and recover artworks lost from Dr. Stern's private and Düsseldorf gallery collections.

The HCPO was created in June 1997 by New York State Governor George E. Pataki. Its mission is to assist individuals in recovering: assets deposited in European banks, monies never paid in connection with insurance policies issued by European insurance companies, and lost, stolen or looted art. In order to file a claim with the HCPO, all assets must have been lost, looted or stolen prior to and during World War II. The HCPO has successfully recovered numerous paintings considered stolen during the Holocaust, including paintings that were sold under duress. (*See* Exhibit 1, HCPO Press Release dated June 17, 2003.)

As you acknowledged in your decision to withdraw the Winterhalter from Estates Unlimited's January 6, 2005 auction, the art market does not look

favorably at items with a potentially tainted past. I am sure that you will also agree that there are moral considerations in this case. It has been our experience that open, honest, reasoned discussions produce the most beneficial resolutions for both original owners and current possessors of art stolen during the Holocaust. In this spirit, I have attempted to summarize Dr. Stern's persecution during the Third Reich and the fate of his Düsseldorf gallery, as well as provide you with key documents. Likewise, I would greatly appreciate copies of your documents concerning the Winterhalter, such as sales receipts, photographs, and catalogues.

Max Stern was born in München-Gladbach, present-day Mönchengladbach, Germany on April 18, 1904. (*See* Exhibit 2, Max Stern Chronology.) His father, Julius Stern, a successful textile manufacturer and avid art collector, established in 1913 the Galerie Julius Stern, which dealt mainly with academic and Dutch Old Master paintings. After studying art history in Berlin, Cologne, and Vienna, and obtaining a doctorate at the University of Bonn, Dr. Stern returned to Düsseldorf to manage his father's art gallery, working alongside his sister and mother. Dr. Stern became the gallery's sole owner after his father's untimely death in 1934.

At around the same time, the Nazis began regulating and controlling Germany's cultural realm. (*See* Exhibit 3, Shirer, William L., *The Rise and Fall of the Third Reich*, (Touchstone, 1990), pp. 241-244). The Reichskulturkammer (Reich Chamber of Culture "RKK") was created in September 1933 to ensure that all forms of artistic creation reflected the Nazi viewpoint. One of the RKK's subsidiaries, the Reichskammer der bildenden Künste (Reich Chamber for the Visual Arts "RKdbK") instituted mandatory membership in Reich subchambers for persons, such as art dealers, engaged in cultural fields.

On August 29, 1935, Dr. Stern received notice that as a Jew he did not fit the RKdbK's membership requirements and was legally prohibited from continuing to buy and sell art. (*See* Exhibit 4, Letter from RKdbK to Dr. Stern dated 29 August 1935). After several futile appeals, Dr. Stern received the final irrevocable order on September 13, 1937 that he was forbidden to deal in cultural property and had to sell the gallery's entire inventory immediately through a Nazi-approved RKdbK dealer. (*See* Exhibit 5, Letter from RKdbK to Dr. Stern with copy to Gestapo dated 13 September 1937). The local Gestapo office helped the RKdbK enforce this order against Dr. Stern. In subsequent correspondence, Dr. Stern was given until December 15, 1937 to dissolve the gallery. As a result, Dr. Stern was forced to close the Galerie Stern.

By 1937 German Jews were prohibited from exporting their artworks from Germany. Thus, Jewish art dealers, like Dr. Stern, were forced to consign their inventory to Nazi-authorized auction houses. In light of this historical context, Dr. Stern consigned the gallery's remaining inventory of 228 paintings to the Lempertz auction house in Cologne. On November 13, 1937, Lempertz auctioned off as sale No. 392 Galerie Stern's paintings at a fraction of the fair market value, which was not surprising because it was a forced Jewish sale. You have stated -- and we do not dispute -- that your stepfather, Dr. Karl Wilharm, purchased Winterhalter's *Mädchen aus den Sabiner Bergen* at this Lempertz sale. (*See* Exhibit 6, Lempertz catalogue No. 181). Unfortunately, Lempertz's business records pertaining to the Galerie Stern sale were destroyed in an air raid.

On December 23, 1937, Dr. Stern fled Germany. He joined his sister in London where he hoped to develop the West's Galleries. But his plans were short circuited by the outbreak of war in September 1939. Soon after, he was interned as an "enemy alien" on the Isle of Man. After his release in 1940, he immigrated to Canada, where he spent almost two years interned as a "civilian alien". Despite his harrowing past, Dr. Stern went on to become one of the most important art dealers in Canadian history, as director of the Dominion Gallery in Montreal.

After the war, Dr. Stern filed in the Court in Düsseldorf for restitution from the German government for his gallery's losses due to the National Socialist regime. Although Dr. Stern never recovered any of the Galerie Stern's paintings, he did receive compensation, known as Verschleuderungsschaden, for the rock bottom prices he was forced to sell the gallery's inventory for in late 1937. (*See* Exhibit 7, Court Order dated February 24, 1964). The Court recognized that Dr. Stern was persecuted as a Jewish art dealer and was forced to liquidate at below market value the gallery's entire inventory. The Court also noted that the November 1937 Lempertz auction consisted entirely of paintings owned by the Galerie Stern. Needless to say, this compensation does not bar Dr. Stern's estate from physically recovering possession of the gallery's lost paintings.

Upon his death in 1987, Dr. Stern bequeathed all residue of his property, including any potential recovery of lost artworks, to the charitable Dr. and Mrs. Max Stern Foundation. The Foundation benefits three non-profit institutions: McGill University (Montreal), Concordia University (Montreal), and Hebrew University of Jerusalem (Israel). The restitution of Galerie Stern's stolen art collection to these institutions located in Dr. Stern's beloved adopted country, as well as the Jewish state, is symbolically important. It would be a fitting tribute for a man who lost his profession and homeland just because he was Jewish. In addition, the public display at one

of these universities of the Winterhalter with its full proper provenance will have tremendous educational value as a physical reminder of the Nazi's injustices.

As discussed above, Dr. Stern's loss of Winterhalter's *Mädchen aus den Sabiner Bergen* (along with over two hundred other paintings) through a forced sale at Lempertz on November 13, 1937 -- solely because he was Jewish – is well documented. In light of this historical context, the Winterhalter must be considered art stolen during the Holocaust. Thus, Dr. Stern's estate respectfully asks for its return.

I look forward to an expeditious and amicable solution to this matter. Thank you in advance for your kind assistance.

Very truly yours,

Sherri North Cohen

Sherri North Cohen, Esq.

Enclosures

cc: Dr. Clarence Epstein
Dr. Willi Korte