THIS IS THE LAST WILL AND TESTAMENT of me, DR. MAX STERN, Art Dealer, of the City of Montreal, Province of Quebec.

ARTICLE I I revoke all Wills, Codicils and other testamentary dispositions made by me at any time and declare this alone to be my Last Will and Testament.

ARTICLE II I direct that all my just debts, funeral and testamentary expenses as well as all income taxes, taxes on capital gains and all taxes of similar nature shall be paid by my Executors and Trustees as soon as possible after my death. They shall pay out of the capital of my estate without recourse against any particular donee, legatee or beneficiary all succession duties or estate taxes or other levies having a like effect imposed under the laws of any province, state or jurisdiction, payable by reason of my death, including all duties, taxes or levies payable either upon or in connection with any pension fund benefit, annuity contract payments or insurance owned or effected by me upon my life, or upon or in connection with any gift, legacy or benefit made by me to any person either in my lifetime or by this my Will or by any Codicil hereto. The foregoing direction shall not extend to nor include any such duties, estate taxes or levies that may be payable in connection with any property disposed of or transferred on or after my death under any agreement made by me. Such payments shall be made at such time and in such manner as my Executors and Trustees may in their absolute discretion determine.

ARTICLE III As Executors of this my Will and Trustees of my estate, I appoint my accountant, PETER LURIE, H. HEWARD STIKEMAN, Q.C. and PHILIP FISCHEL VINEBERG, Q.C.

with seizin and possession of all my property, moveable and immoveable, and as such extend their powers, seizin and authority beyond the year and day limited by law and until the entire accomplishment of this my Will.

Should the said H. HEWARD STIKEMAN or PHILIP FISCHEL VINEBERG, Q.C. not act or for any reason cease to act, I appoint R. FRASER ELLIOTT, Q.C., to replace him with the same powers, seizin and authority.

Should the said PETER LURIE not act or for any reason cease to act, I appoint SIDNEY FELDHAMMER to replace him with the same powers, seizin and authority.

It is my desire that there shall always be three (3) Executors and Trustees in office. Should there be at any time less than three (3), the remaining Executors and Trustees shall appoint a replacement by instrument in writing and such replacement shall have the same powers, seizin and authority as my herein named Executors and Trustees.

My Executors and Trustees shall sometimes herein be referred to as my "Trustees", and the decision of the majority of them shall prevail and be final and binding upon all interested parties and I expressly release any dissenting Executor and Trustee from any responsibility for any decision so taken.

Any Executor and Trustee may resign at any time by simple notarial deed without judicial authorization and without assigning any reason for such resignation.

Any Executor and Trustee while so acting shall not be disqualified as a purchaser of any property comprised in my estate.

I exempt my Executors and Trustees from the obligation of giving security for their administration, anything to the contrary in the law of this or any foreign jurisdiction notwithstanding. I also exempt my Executors and Trustees from the obligation of making any formal inventory of my estate.

Any Executor and Trustee acting hereunder shall be entitled to reasonable remuneration for his or her services hereunder, in addition to all fees to which his firm or partners may be entitled for services rendered to my Estate.

Without in any way derogating from any of the other powers of my Executors and Trustees, my Executors and Trustees shall be entitled to effect any payments, inclusive of any payments to be made in respect of any heirs, legatees or any bequest as well as any other distributions either in cash or in kind and, in the latter event, their determination of the value of the asset or assets being transferred shall be final and binding and free from any challenge or question.

My Executors and Trustees may, in their absolute discretion, make any election or elections pursuant to the Federal or Quebec fiscal laws in connection

with the payment of any taxes under such laws, including without limiting the generality of the foregoing, any election or elections to defer any or all of such taxes or to pay any or all taxes in annual or other instalments as my Executors and Trustees, in their absolute discretion, may determine and to make any other election or elections, commutations, designations or determinations for any purposes whatsoever as they see fit.

ARTICLE IV I bequeath, by particular legacy and in absolute ownership, to each of my sister, GERDA THALHEIMER, and my niece, RUTH THALHEIMER, the sum of sixty thousand U.S. dollars ($60,000.00 U.S.), to be paid as soon as possible after my death.

ARTICLE V I bequeath, by particular legacy and in absolute ownership, the sum of fifty thousand dollars ($50,000.00) to HENRI DESBARATS.

ARTICLE VI I bequeath, by particular legacy and in absolute ownership, the sum of fifty thousand dollars ($50,000.00) to MICHEL MOREAULT.

ARTICLE VII I bequeath, by particular legacy and in absolute ownership, the sum of twenty-five thousand dollars ($25,000.00) to CARLO BIFERALI, if he is still in the employ of Dominion Gallery at the time of my death.

ARTICLE VIII I bequeath, by particular legacy and in absolute ownership, the sum of twenty thousand dollars

(e) To my sister-in-law, DAME LINEA BORN-WESTERBERG, of Sweden, the sum of fifty thousand dollars ($50,000.00).

In addition to the foregoing conditions, should any such legatee listed in this Article XII institute any proceedings against my Estate or the Executors and Trustees thereof or against the Estate of my late wife or the Executors and Trustees thereof, all legacies in favour of all such legatees shall lapse.

ARTICLE XIII I bequeath, by particular legacy and in absolute ownership, to MADELEINE R. BOYER of Montreal, the sum of six hundred thousand dollars ($600,000.00) and the apartment situate at 805 Port Royal in Montreal.

ARTICLE XIV I bequeath, by particular legacy and in absolute ownership, the sum of twenty-five thousand dollars ($25,000.00) to MRS. EUGENIE COZENS, 49 Torquay Garden, Redbridge, Ilford, Essex, England 1G4EPO.

ARTICLE XV I bequeath, by particular legacy and in absolute ownership, to MRS. JAMES (OLIVE) WEEKS, of Santana Florida, the sum of five thousand dollars ($5,000.00).

ARTICLE XVI I bequeath, by particular legacy and in absolute ownership, to the DR. AND MRS. MAX STERN FOUNDATION, all of the silver articles, articles of furniture and ornamentation and oriental rugs and vases owned by me at the time of my death including any said articles used by or located on the premises of my apartment in Palm Beach, Florida.

M.S.

ARTICLE XVII All paintings, sculptures, drawings and works of art not disposed of under Article XVI hereof which belong to me personally at the time of my death and are not part of the stock-in-trade of Dominion Gallery or Dominion Gallery Inc. (hereinafter referred to the "Painting Trust") shall be earmarked for and distributed to the following art galleries in the following approximate proportions, with my Executors and Trustees having, in their absolute discretion, and free from any challenge or question the right to determine which items form part of such earmarking and how and in what form, manner and composition, the distribution shall be effected amongst the various legatees including the right to convert by sale or otherwise any such item into cash for distribution to any legatee or legatees subject in each case to such arrangements for memorializing the bequests by reference to the name of my late wife and myself as may be arranged by my Executors and Trustees to such extent as they consider appropriate, in their absolute discretion:

(a) The Montreal Museum of Fine Arts, thirty percent (30%) of the Painting Trust;

(b) The Israel Museum of Jerusalem (or such agency thereof as may be determined in consultation with my Executors and Trustees, with the decision of my Executors and Trustees being final), ten percent (10%) of the Painting Trust;

(c) Musée d'Art Contemporain of Montreal, twenty percent (20%) of the Painting Trust;

(d) Edmonton Art Gallery of Edmonton, Alberta, five percent (5%) of the Painting Trust;

(e) Norton Art Gallery of Palm Beach, Florida, five percent (5%) of the Painting Trust;

(f) Art Gallery of Baltimore, two percent (2%) of the Painting Trust;

(g) Such other museums or art galleries, whether included in the foregoing list or not, as may be determined by my Executors and Trustees, in their absolute discretion, or THE DR. AND MRS. MAX STERN FOUNDATION, in such proportions as may be determined by them, with the right to give all to one legatee to the exclusion of others, all the residue of the Painting Trust.

<u>ARTICLE XVIII</u> I bequeath, by particular legacy, to my sister, MRS. GERDA THALHEIMER, the sum of one million U.S. dollars ($1,000,000.00 U.S.), payable as soon as possible after my death.

<u>ARTICLE XIX</u> I bequeath, by particular legacy, to my niece, MISS RUTH THALHEIMER, the sum of one million U.S. dollars ($1,000,000.00 U.S.), provided that if she should predecease me, same shall be paid to her husband, if living and failing him, to her lawful surviving issue, if any, in equal shares by roots, payable as soon as possible after my death.

10

ARTICLE XX I bequeath all the residue of my property, moveable and immoveable, real and personal, of every sort, nature and description, of which I may die possessed, or in which I may have any interest, or over which I may have any power of appointment or disposal (the same being hereinafter referred to as the "Residual Trust"), to the DR. AND MRS. MAX STERN FOUNDATION in absolute ownership and failing same, or should it not be a registered charity within the meaning of the Income Tax Act at the time of my death, I bequeath the Residual Trust to my Trustees IN TRUST to deal with same as follows:

(a) For a period of ten (10) years after my death or for such shorter period as my Executors and Trustees may, in their absolute discretion, determine as hereinafter provided, (hereinafter referred to as the "division date") my Executors and Trustees shall divide all or part of the income, from the Residual Trust as they shall, in the their absolute discretion, determine in equal shares among McGill University (Montreal), Concordia University (Montreal) and the Hebrew University of Jerusalem (Israel) and shall capitalize any income not so paid. I wish my Executors and Trustees to operate Dominion Gallery or any successor entity until the division date if practicable provided that it can be run as a sound commercial operation from a business and tax point of view. My Executors and Trustees shall however have absolute discretion to advance the division date for any reason whatsoever and their decision (whether as to advancement or not) shall be final and shall not be open to question by any residuary legatee hereunder.

(b) Upon the division date, my Executors and Trustees shall divide the capital of the Residual Trust in equal shares among McGill University (Montreal), Concordia University (Montreal) and the Hebrew University of Jerusalem (Israel), to be designated by the Universities as a bequest from DR. AND MRS. MAX STERN.

ARTICLE XXI All bequests herein made are intended as alimentary provisions and shall not be subject to seizure for the payment of any debts of my said legatees or their representatives, except in the case of express hypothecation or pledge after delivery to them of any portion of my estate. The share of any legatee and the income therefrom shall be and remain his or her private and separate property, free from the control of any consort and shall not form part of any community of property or partnership of acquests which may subsist between such consorts. The share of any legatee in capital or income shall not be capable of being anticipated or assigned while in the hands of my Executors and Trustees, without their consent, but this shall not prevent any voluntary alienation or hypothecation by my Executors and Trustees, under the powers conferred upon them.

Any legatee, save HENRI DESBARATS and DOMINICO PELLEGRINI, herein shall be deemed to have predeceased me, unless he or she shall have survived me for a period of at least thirty (30) days.

ARTICLE XXII In addition to all other powers vested in executors and trustees by law or statute, my Execu-

tors and Trustees shall have and may, from time to time, exercise, in their sole and absolute discretion, the following powers:

(a) to hold, retain, sell and otherwise dispose of any and all property of my estate, whether moveable or immoveable, real or personal, or other assets whatsoever, from time to time, for such prices or other considerations, and upon such terms and conditions as they may deem in the interest of my estate, to receive such prices and other considerations, if any, and give discharge therefor;

(b) to grant discharges without the consent of any residuary legatee for any sums paid to me during my lifetime and for which I may have up to the time of my death not executed a release or acquittance;

(c) to continue, discontinue or wind up any partnership, business, contract or transaction in which I may be interested at the time of my death, and to appoint attorneys or representatives to act for them in connection with any such partnership or business or any other matters concerning my estate;

(d) to borrow any sums of money on such terms as they may agree to or to advance their own moneys for the purpose of paying any debts or other obligations at any time due or incurred by my estate instead of realizing the assets of my estate, or any part thereof, and to pay or charge

interest thereon, and to mortgage, hypothecate or otherwise affect any of the property of my estate, moveable or immoveable, as security for any moneys so borrowed or advanced, and to receive the amounts so borrowed or advanced;

(e) to participate in the amalgamation, reorganization or recapitalization of any company or companies in which I may have any share or interest and to consent to any redemption of capital or other dealing with such securities as they may consider advantageous;

(f) to postpone the sale or realization of any of the property forming part of my estate at the time of my death, and they shall not be responsible for any loss or depreciation attributable to such postponement;

(g) to grant discharges and release any property affected by hypothec, privilege, mortgage or other charge, in whole or in part, for such consideration or without consideration as they may consider advisable; exchange property for other property of a like or different nature for such consideration and on such conditions as they may deem advisable;

(h) to employ and pay for such professional or other assistance as they deem requisite in the discharge of their duties and to act on the opinion or advice of or information obtained from any advocate or notary, valuator, surveyor, broker, auctioneer or other expert, and they

h st

HO

shall not be responsible for any loss occasioned by so acting or not acting;

(i) to renew in their discretion from time to time any endorsements, guarantees or surety contracts made by me and in force at the time of my death;

(j) to compromise, settle and adjust all claims and demands in favour of or against my estate, upon such terms as they may deem in the interest of my estate;

(k) to retain for such time as they see fit any shares, bonds, debentures or other property held by me at the time of my death, to exercise any or all options to purchase shares or other property, to vote any shares and to invest and reinvest all moneys of my estate requiring investment in such securities or other investments, including real estate, as they may deem in the interest of my estate without being restricted to investments to which executors and trustees are limited by the laws of any Province, state or jurisdiction, and from time to time to sell, alter and vary investments without restriction or limitation and without responsibility for any loss which may arise by reason of such investments or from the retention of any of the original assets of my estate; they shall not be obliged to amortize the premiums paid on bonds purchased at a price in excess of their par value;

(l) to make such expenditures upon the repairing, improving and rebuilding of any property of my estate as they may deem necessary;

(m) to make partitions in whole or in part of any part of the residue of my estate subject to such valuation as may be necessary or even without valuation as they may think proper;

(n) to form the shares or lots and to attribute them to the legatees entitled thereto without the intervention or consent of such legatees being required and the decision of my Executors and Trustees as to the value of the property of my estate and as to the distribution of the shares and the formation and the composition thereof shall be final and binding upon all my legatees even though some of them may be minors or otherwise incapable;

(o) to make any payment or distribution hereunder to any legatee who may be incapacitated by minority or otherwise to his or her parent, tutor, curator or guardian, whose receipt shall be a sufficient discharge for my Executors and Trustees;

(p) to register stocks, bonds, débentures and other securities from time to time forming part of the estate in the name of my Executors and Trustees or in the name of the estate of the late DR. MAX STERN;

h. i.t. de

(q) to sign all deeds of sale and other instruments in writing that may be necessary or expedient in and about the execution of my Will;

(r) to make any elections, determinations or designations pursuant to any income tax legislation, in their absolute discretion;

(s) to determine all questions of doubt which may arise in the course of their administration, realization, partition or winding up of my estate and generally to act with the fullest and most unrestricted powers in the administration and settlement of my estate and execution of this my Will.

the whole without the intervention of any of my legatees being necessary or any judicial or other authorization being required.

IN WITNESS WHEREOF I have signed at the City of Montreal, this 13th day of December in the year NINETEEN HUNDRED AND EIGHTY-FIVE.

Max Stern

SIGNED AND ACKNOWLEDGED by the said DR. MAX STERN as his Last Will and Testament in the presence of us both, present together at the same time who have at his request, in his presence and in the presence of each other hereunto subscribed our names as witnesses.

| | |
|---|---|
| Paul Dorval<br>Witness | P. Beauchemin<br>Witness |
| Notary<br>Occupation | Lawyer<br>Occupation |
| 432 Osborne Road, St. Lambert, Québec<br>Address | 5775 Scott Montreal<br>Address |

# C O D I C I L

I, DR. MAX STERN, presently residing at 1455 Sherbrooke Street West, City and District of Montreal, Province of Quebec, declare the following to be a Codicil to my Last Will and Testament executed in English form on the 13th day of December, 1985, namely:

## FIRST

In view of the winding-up of Dominion Gallery Inc. into 149469 Canada Inc., I hereby replace any reference in my Last Will and Testament to "Dominion Gallery Inc." with "149469 Canada Inc.".

## SECOND

In all other respects, I hereby confirm my Last Will and Testament.

IN WITNESS WHEREOF, I have signed in the City of Montreal, Province of Quebec, on the 7th day of August, 1986, this Codicil to my Last Will and Testament, in triplicate, any one of which shall avail alone for all purposes.

DR. MAX STERN

SIGNED BY the said Dr. Max Stern and acknowledged as a Codicil to Dr. Max Stern's Last Will and Testament in the presence of us both present together at the same time, who in his presence and in the presence of one another at his request have signed as witnesses:

| Name | Occupation | Address |
|---|---|---|
| J. Boileau | Secretary | 3486 Côte des Neiges, Montreal |
| L. Cavaltally | Secretary | 4144 Hingston Ave, Montreal |

CANADA
PROVINCE DE QUÉBEC

COUR SUPERIEURE

District de MONTREAL

No 14-002163-871

Montréal, le 30 juillet 1987

PRÉSENT: le protonotaire/adjoint

H. HEWARD STIKEMAN,

Partie requérante

et

la succession de

MAX STERN

JUGEMENT

Le protonotaire/adjoint, saisi de la requête en vérification

[x] du testament et du codicille

[ ] du(des) codicille(s)

de feu(e) MAX STERN, décédé le 28 mai 1987;

VU les pièces produites au dossier et la preuve;

PAR CES MOTIFS,

ACCUEILLE la requête;

DÉCLARE que le testament et le codicille

daté(s) du 13 décembre 1985 et 7 août 1986 respectivement

et annexé(s) au présent jugement a(ont) été dûment vérifié(s).

COPIE CONFORME
TRUE COPY
20 AOUT 1987
OFFICIER AUTORISÉ
AUTHORIZED OFFICER

RC/db
J.L. 1060

Protonotaire/adjoint

SJ-221 (84-12)

SE00902