258

26 O(Entsch) 454/62

Verkündet am 24.Februar 1964
Roelen
Justiz~~angestellter~~ Ass.z.A.
als Urkundsbeamter der Geschäftstelle

## Teilurteil

## Im Namen des Volkes

In dem Rechtsstreit

des Dr. Max S t e r n, Montreal /Kanada, 1438,Sherbrooke St. West,

Klägers,

- Prozeßbevollmächtigter: Rechtsanwälte Dr. Wenderoth, Dr. Weiser II, Düsseldorf -

g e g e n

das Land Nordrhein- Westfalen, vertreten durch den Regierungspräsidenten in Düsseldorf,

Beklagten,

wegen Entschädigung nach dem BEG

hat die 7. Entschädigungskammer des Landgerichts Düsseldorf auf die mündliche Verhandlung vom 3. Februar 1964 unter Mitwirkung des Landgerichtsdirektors Dr. Schaefer, der Landgerichtsrätin Hendricks und des Landgerichtsrats Oder

für R e c h t erkannt:

Das beklagte Land wird verurteilt, an den Kläger wegen Verschleuderungsschadens 8.581,50 DM zu zahlen. Im übrigen wird die Klage wegen des Verschleuderungsschadens abgewiesen.

185

Die Kostenentscheidung bleibt dem Schlußurteil vorbehalten.

Das Urteil ist gegen Sicherheitsleistung in Höhe von 8.581,50 DM vorläufig vollstreckbar.

Tatbestand:

Der am 18. 4. 1904 in Mönchengladbach geborene Kläger ist Jude. Er war Inhaber der Gemäldegalerie Julius Stern in Düsseldorf. Im Sommer 1937 wurde ihm aus Verfolgungsgründen untersagt, seine Kunsthandlung weiter zu betreiben. Er ließ deshalb am 13. 11. 1937 den größten Teil der Bilder seiner Galerie durch das Kunsthaus Lempertz in Köln versteigern. Nach seiner Erinnerung betrug der Versteigerungserlös nach Abzug der Unkosten 55.000,- RM ( Blatt 46 der Entschädigungskate).

Einige Bilder, die nicht versteigert werden konnten, hat er bis Dezember 1937 in seiner Galerie zu einem Preis, der unter dem normalerweise zu erzielenden Kaufpreis lag, verkauft. Es handelt sich im einzelnen um die im Katalog Blatt 158 ff der Entschädigungsakten näher bezeichneten Bilder, ausgenommen die Bilder Katalognummer 186,203,206, 216 und 217,(Blatt 158 EA), die dem Kläger auf andere Weise abhanden gekommen sind.

Der Kläger hat vorgetragen, der Erlös aus der Versteigerung habe zusammen mit dem Erlös aus dem anschließenden Verkauf höchstens 77.768,64 RM betragen, denn sein Konto

weise in der Zeit vom 13. 11.1937 bis 28. 12.1937 Gutschriften in dieser Höhe auf. In Wahrheit sei der Erlös jedoch niedriger, weil nicht sämtliche Gutschriften aus der Zeit nach dem 13. 11. 1937 aus dem Verkauf der Bilder herrührten, der Kläger haben nicht nur die Bilder, sondern auch Einrichtungsstände der Galerie und zwei Kraftwagen verkauft.

Mit der Behauptung, bei einem normalen ~~Verbrauch~~ Verkauf in seiner Galerie hätte er einen wesentlichen höheren als den bei der Versteigerung und dem anschließenden Verschleuderungsverkauf erzielten Preis gewinnen können, hat er Entschädigung wegen Verschleuderungsschadens nach dem BEG verlangt.

Der Kläger hat ein Gutachten von Josef Pfeiffer in Düsseldorf ( Blatt 237 ff der Entschädigungsakte) vorgelegt, wonach der Verkaufswert der im Jahre 1937 in der Galerie Stern verkauften Bilder 20.060,- RM betrug. Nach diesem Gutachten betrug der Mindererlös hinsichtlich der in der Galerie Lempertz versteigerten Bilder 37.055,30 DM.

Der Kläger hat weiterhin geltend gemacht, er habe im Jahre 1937 wegen der Verschleuderung der Bilder und anderer Vermögenswerte ein so hohes Einkommen gehabt, daß er zusätzlich 61.557,64 RM Einkommensteuer habe zahlen müssen.

Wegen dieses Steuerschadens hat er gleichfalls Entschädigung nach dem BEG begehrt.

Die Entschädigungsbehörde hatte bezüglich des Verschleuderungsschadens, entstanden durch die Versteigerung der Bilder beim Kunsthaus Lempertz, bei diesem eine Auskunft eingeholt.

Der Inhaber des Kunsthauses Lempertz hat in seinem Schreiben vom 4. August 1961 (Blatt 213 Entschädigungsakte) mitgeteilt, die einzelnen Bilder seien zu regulären Preisen versteigert worden, es könne deshalb von einer Verschleuderung keine Rede sein, zumal der Kläger für jede Position einen Mindestpreis vorgeschrieben habe, der nicht unterschritten worden sei.

Mit Bescheid des Regierungspräsidenten in Düsseldorf vom 9. August 1962 ist der Antrag des Klägers auf Gewährung einer Entschädigung für gezahlte Einkommensteuer zurückgewiesen worden. Wegen Verschleuderung von Gemälden wurden dem Kläger eine Entschädigung von in Höhe von 1.183,50 DM gewährt. Die darüber hinausgehenden Ansprüche wurden als unbegründet zurückgewiesen. Im Bescheid heißt es hinsichtlich des Verschleuderungsschadens, von der Firma Lempertz sei versichert worden, daß die einzelnen Bilder zu durchaus regulären der damaligen Marktlage entsprechenden Preisen versteigert worden seien. Deshalb habe insoweit keine ~~Entwertung~~ Verschleuderung vorgelegen. Bezüglich des späteren Verkaufs der Bilder in der Galerie Stern nahm die Entschädigungsbehörde zwar einen Verschleuderungschaden an, sie schätzte den Wert dieser Ge-

85

269
262



mälde auf 11.835,- RM und den erzielten Erlös auf 50%.

Bezüglich der Einkommenssteuer hat die Entschädigungsbehörde angenommen, es handele sich insoweit um einen Entziehungstatbestand im Sinne des § 5 BEG.

Gegen diesen am 24. August 1962 zugestellten Bescheid wendet sich der Kläger mit der am 6. Dezember 1962 bei Gericht eingegangenen Klage.

Er wiederholt im wesentlichen sein früheres Vorbringen und beantragt,

das beklagte Land zu verurteilen,

1) an den Kläger wegen Verschleuderungsschadens insgesamt 10.066, 41 DM zu zahlen,

2) an den Kläger wegen Steuerschadens 12.311,51 DM zu zahlen,

3) hilfsweise, den Anspruch inspweit an das zuständige Zentralanmeldeamt zu verweisen.

Das beklagte Land beantragt,

die Klage abzuweisen,

hilfsweise ihm Vollstreckungsnachlaß gemäß § 713 ZPO zu gewähren.

Es nimmt auf die Gründe des angefochtenen Bescheides Bezug.

185

Wegen der weiteren Einzelheiten des Parteivorbringens wird auf den Inhalt der gewechselten Schriftsätze und der den Kläger betreffenden Entschädigungsakte, die dem Gericht vorgelegen hat und Gegenstand der mündlichen Verhandlung gewesen ist, verwiesen.

Gemäß Beweisbeschluß vom 10.6.1963 in Verbindung mit dem Beschluß vom 4.10.1963 ist Beweis durch Einholung eines Sachverständigengutachtens erhoben worden.

Wegen des Ergebnisses der Beweisaufnahme wird auf das Gutachten von Günther Abels (Blatt 21 der Akte) Bezug genommen.

Entscheidungsgründe:

Die Klage ist frist- und formgerecht vor dem zuständigen Gericht erhoben worden.

Der Kläger ist Verfolgter im Sinne des § 1 BEG, er erfüllt auch die allgemeinen Wohnsitzvoraussetzungen des § 4 BEG. Die Klage ist jedoch nur bezüglich des Verschleuderungsschadens zur Entscheidung reif, es war deshalb zweckmäßig, über diesen Schaden durch Teilurteil vorab zu entscheiden. Wegen dieses Schadens ist sie nur in dem aus dem erkennenden Teil des Urteils ersichtlichen Umfanges begründet.

271
261



Es steht fest, daß die bereits genannten Bilder seiner Galerie teilweise im Kunsthaus Lempertz in Köln versteigert worden sind, teilweise in seiner eigenen Galerie verkauft worden sind. Sowohl bei der Versteigerung, als auch beim späteren Verkauf in der eigenen Galerie des Klägers ist diesem ein Verschleuderungsschaden entstanden. Zwar trifft es zu, daß das Kunsthaus Lempertz die Bilder des Klägers ordnungsgemäß versteigert ~~hat~~ und sich auch an die Mindestforderungen, die der Kläger bezüglich jedes einzelnen Bildes aufgestellt hat, gehalten hat. Das schließt aber nicht aus, daß die Bilder trotzdem zu einem Preis versteigert worden sind, der unter dem Preis lag, den der Kläger bei einem ordnungsgemäßen Kauf in seiner eigenen Galerie hätte erzielen können. Es stimmt zwar, daß nihht nur bei einem Notverkauf, zu dem der Kläger aus Verfolgungsgründen gezwungen war, Gemäldesammlungen versteigert werden, sondern daß auch heute noch Versteigerungen von Gemälden üblich sind und daß dabei durchaus der gleiche Preis erzielt werden kann, wie es auch bei einem Verkauf in einer Galerie der Fall ist. Das schließt aber nicht aus, daß trotzdem in Einzelfall bei einer Versteigerung erheblich geringere Preise erzielt werden können, als es beim normalen Verkauf der Fall ist.

Das gilt insbesondere, wenn eine Versteigerung unter den Verhältnissen zustande kommt, wie sie damals beim Kläger vorlagen. Es war allgemein bekannt, dumal in Kunsthändlerkreisen, daß der Kläger seine Bilder verkaufen mußte, es ist einleuchtend, daß diese Tatsache nicht ohne Einfluß auf die erzielten Preise geblieben ist. Dasgleiche gilt auch bezüglich

185

der Bilder, die der Kläger anschließend an die Versteigerung in seiner eigenen Galerie verkauft hat. Auch dabei war er gezwungen, die Bilder möglichst schnell zu verkaufen, das wird zumindest ein Teil der Käufer gewußt haben, es ist deshalb begreiflich, daß auch hierbei nicht der normale Preis erzielt worden ist.

Daß der wahre Verkaufswert der Bilder erheblich größer war als der erzielte Gewinn, zeigt das Gutachten des Sachverständigen Günther Abels in Köln.

Zwar ist dieses Gutachten sehr kurz gehalten, und der Sachverständige gibt keine genauen Angaben bezüglich der einzelnen Bilder, sondern er schließt sich dem Privatgutachten des Sachverständigen Josef Pfeiffer in Düsseldorf an. Trotz seiner Kürze sieht die Kammer keinen Anlaß, diesem Gutachten nicht zu folgen. Es besteht kein Grund zur Annahme, daß der Gutachter Abels nicht auf Grund sorgfältiger Überlegungen zu der Ansicht gekommen sein sollte, die im Gutachten Pfeiffer genannten Preise seien richtig. Wenn er aber auf Grund sorgfältiger Überlegungen und auf Grund seiner Sachkenntnis zu dem gleichen Ergebnis wie der Privatgutachter Pfeiffer gekommen ist, so bestand für ihn kein Grund, ~~dis~~ die schon im Gutachten Pfeiffer gemachten Ausführungen im einzelnen nochmals zu wiederholen. Er konnte sich deshalb auf dieses Privatgutachten beru-

273
L 6



fen und seine Ansicht äußern, daß dieses Gutachten richtig sei und dem damaligen Werte der Bilder entsprochen habe.

Es ist also davon auszugehen, daß die Bilder den im Gutachten Pfeiffer genannten Wert gehabt haben.

Nach diesem Gutachten hatten die Bilder, die in der Galerie Stern Ende des Jahres 1937 verkauft wurden, einen Handelswert von 20.060,- RM ( Blatt 238 der Entschädigungsakten). Die versteigerten Bildder hatten einen Wert von 104.275.- RM. ZU diesem Betrag ist die Kammer gekommen, in dem sie die unter der von der Spalte "möglicher V erkaufswert" genannten Beträge addiert hat, bei den Bildern, bei denen unter dieser Spalte kein Wert eingetragen worden ist, ist der unter der Spalte " Versteigerungserlös" genannte Betrag angenommen worden. Schließlich waren zu ~~den~~ diesen Werten noch 1.500,- hinzuzuzählen, da dem Gutachter bei dem Bild 161 von Hans Thoma insoweit ein Irrtum unterlaufen war.

Die versteigerten und die später verkauften Bilder hatten also zusammen einen Wert von 124.335,- RM.

Von diesem Wert ist dasjenige abzuziehen, was der Klägerin infolge der Versteigerung und des anschließenden Verkaufs erlangt hat. Diese Differenz ist sein Verschleuderungsschaden. Es läßt sich heute nicht mehr einwandfrei feststellen,welche Beträge damals erzielt worden sind.

185

274
267



Der Kläger selbst kann darüber keine genauen Angaben machen, es ist auch nicht ersichtlich, woher der Gutachter Pfeiffer, der in seinem Gutachten den Versteigerungs - erlös angegeben hat, die dort verzeichneten Werte hat. Zwar sind im Versteigerungskatalog am Rande Zahlen angegeben, es kann deshalb vermutet werden, daß diese dem Versteigerungserlös entsprechen, mit Sicherheit festzustellen ist das jedoch heute nicht mehr.

Es läßt sich jedoch auf andere Art ungefähr feststellen, welche Beträge der Kläger damals für seine Bilder erhalten hat. Es liegen die Kontoauszüge des Klägers aus der damaligen Zeit vor. Aus diesen ergibt sich, daß er ~~Kläger~~ damals 77.768,-RM eingenommen hat ( Blatt 198 ff der Entschädigungsakte). Nun ist zwar anzunehmen, daß diese Beträge nicht allein aus den versteigerten Bildern stammen, sondern der Kläger hat zur damaligen Zeit auch noch andere Gegenstände verkauft, andererseits ist aber zu berücksichtigen, daß das Geld, was der Kläger vom Kunsthaus Lempertz erhalten, nicht der gesamte Versteigerungserlös war, das Kunsthaus Lempertz hat von diesen Beträgen zunächst seine eigenen Unkosten abgezogen. Wie hoch diese Unkosten genau waren, ist heute gleichfalls nicht mehr festzustellen. Die Kammer geht deshalb im Wege der Schätzung davon aus, daß die Unkosten des Kunsthauses Lempertz sich in etwa mit den Beträgen decken, die der Kläger aus dem Verkauf anderer Gegenstände erhalten hat. Es erscheint deshalb richtig, von dem Werte der Bilder in Höhe von

185

275
268



124.335.-RM einen Erlös in Höhe von 77.768.-RM abzuziehen, so daß ein Verschleuderungsschaden in Höhe von 46.567.-RM verbleibt. Dieser Betrag ist im Verhältnis 10:2 auf ca. 9.300.-DM umzustellen. Hinzuzuzählen ist ein dem Kläger zustehender Nutzungsschaden gemäß § 56 Abs.2 BEG in Höhe von 5 %, also von 465.-DM, so daß sich 9.765.-DM ergeben. Hiervon sind die 1.183,50 DM abzuziehen, die dem Kläger bereits durch den angefochtenen Bescheid gewährt worden sind. Es verbleibt deshalb noch zu Gunsten des Klägers ein Betrag in Höhe von 8.581,50 DM. Seine weitergehende Klage bezüglich des Verschleuderungsschadens war hingegen abzuweisen.

Die Kostenentscheidung bleibt aus Gründen der Zweckmäßigkeit dem Schlußurteil vorbehalten. Die Entscheidung über die vorläufige Vollstreckbarkeit folgt aus § 209 Abs.1 BEG, in Verbindung mit § 710 ZPO.

Dr. Schaefer
zugleich für den an der Unterschriftsleistung wegen Urlaubs verhinderten Landgerichtsrat Oder.

Hendricks

Beglaubigt
(Fuder)
Justizsekretär als Urkundsbeamter der Geschäftsstelle

185

26 O (Decision) 454/62

Pronounced on February 24th 1964
Roelen
junior legal official of the court in training
as clerk of the court

Partial judgment

In the name of the people

In the case

of Dr. Max Stern, Montreal / Canada, 1438 Sherbrooke St. West,

plaintiff,

counsel for the plaintiff: attorneys Dr. Wenderoth, Dr. Weiser II, Düsseldorf –

versus

the state of North Rhine-Westphalia, represented by the District President in Düsseldorf,

defendant,

re compensation according to the Federal Law for the Compensation of the Victims of National Socialist Persecution

the 7. Compensation Division of the District Court of Düsseldorf upon the hearing on February 3, 1964 with the collaboration of District Court Chief Judge Dr. Schaefer, District Court Judge Ms. Hendricks and District Court Judge Oder

ruled:

We find against the defendant state to pay DM 8,581.50 to the plaintiff because of loss due to dissipation. The rest of the claim for loss due to dissipation is dismissed.

The order for payment of costs is reserved for final judgment.
The judgment is provisionally enforceable by way of security in the amount of DM 8,581.50.

Facts of the case

The plaintiff, born on 18.4.1904 in Mönchengladbach, is Jewish. He was the owner of the picture gallery Julius Stern in Düsseldorf. In the summer of 1937, for reasons of persecution, he was enjoined from continuing to run his art dealership. Therefore, he had the majority of the paintings from his gallery auctioned by the art house Lempertz in Cologne on 13.11.1937. Based on his recollection, the proceeds of this auction, after deduction of the expenses, were RM 55,000 (page 46 of the compensation file).

Some paintings, which could not be auctioned, he sold in his gallery until December 1937 at a price which was below the purchase price that could have been normally realized. Specifically these are the paintings specified in catalogue page 158 ff. of the compensation file, except the paintings with catalogue number 186, 203, 206, 216 and 217 (page 159 compensation file), which the plaintiff lost under different circumstahces.

The plaintiff argued that the proceeds from the auction together with the proceeds from the following sale could have amounted at most to RM 77,768.64, because his bank account

shows credit items in this amount in the period of 13.11.1937 to 28.12.1937. However, in reality the proceeds were lower, because not all credit items in the period after 13.11.1937 derived from the sale of the paintings. The plaintiff not only sold the paintings, but also the furnishings of the gallery and two automobiles.

With regard to the allegation that he could have achieved a much higher price through a normal sale in his gallery in comparison to the one realized at the auction and the following dissipation sales, he claims compensation for losses due to dissipation according to the Federal Law for the Compensation of the Victims of National Socialist Persecution.

The plaintiff submitted an expert opinion from Josef Pfeiffer in Düsseldorf (page 237 ff of the compensation file), whereby the market value of the paintings, which were sold at the gallery Stern in 1937, was RM 20,060.--. According to this expert opinion, the loss concerning the paintings auctioned at the gallery Lempertz amounted to DM 37,055.30.

Furthermore the plaintiff has asserted that because of the dissipation of the paintings and other assets in the year 1937, he had such a high income that he had to pay an additional income tax of RM 61,557.64.

Because of this tax los, he likewise has demanded compensation according to the Federal Law for the Compensation of the Victims of National Socialist Persecution.

The office for compensation obtained information from the art house Lempertz concerning the losses due to dissipation which arose from the auction of the paintings by it.

The owner of the art house Lempertz communicated in his letter of August 4, 1961 (page 213 compensation file) that the individual paintings were auctioned at regular prices. Therefore, there is no indication of dissipation, particularly since the plaintiff set minimum prices for every item, below which nothing was sold.

With official notification from the District President of Düsseldorf on August 9, 1962, the petition of the plaintiff to grant compensation for the paid income tax was denied. The plaintiff was granted compensation in the amount of DM 1,183.50 for the dissipation of his paintings. The claims going beyond it were dismissed as unfounded. Regarding the losses due to dissipation, the notification states that the Lempertz firm certified that the individual paintings were auctioned at absolutely regular prices, according to the market situation at the time. Therefore, in this respect no dissipation occurred. Concerning'the subsequent sale of the paintings at Gallery Stern, the office of compensation indeed assumed a loss due to dissipation; it assessed the value of these paintings

at RM 11,835.-- and the generated proceeds at 50%.

Concerning the income tax, the office of compensation has accepted that it was a case of deprivation according to § 5 of the Federal Law for the Compensation of the Victims of National Socialist Persecution.

The plaintiff appeals this decision served on August 24, 1962 by filing a lawsuit, which was received by this court on December 6, 1962.

He essentially repeats his prior allegations and pleads

for judgment against the defendant state
1.) for payment of an amount totaling DM 10,066.41 to the plaintiff because of losses due to dissipation
2.) for payment of DM 12,311.51 to the plaintiff because of a tax loss
3.) alternatively, to transfer the claim insofar to the competent central registration office.

The defendant state pleads

to dismiss the claim
alternatively to grant it stay of execution according to § 713 Code of Civil Procedure.

It refers to the reasons of the appealed notification.

Concerning the further particulars of the allegations of the parties, reference is made to the content of the reciprocal briefs and the compensation file concerning the plaintiff, which was available to the court and the subject-matter of the hearing.

According to the order to take evidence of 10.6.1963 in connection with the order of 4.10.1963, evidence was taken by obtaining an expert opinion.

Regarding the result of the taking of evidence, reference is made to the expert opinion of Günther Abels (page 21 of the file).

Reasons for the decision:

The suit was filed in due time and proper form with the competent court.

The plaintiff is a persecutee as defined by § 1 of; he also fulfills the general preconditions of residence of § 4 of the Federal Law for the Compensation of the Victims of National Socialist Persecution. However, the suit is only ready for a decision concerning the loss due to dissipation; it was therefore appropriate to pronounce a partial judgment regarding this loss in advance. Concerning this loss it is only justified to the extent that the judgment recognizes it.

It is certain that the already mentioned paintings from his gallery were partially auctioned at the art house Lempertz in Cologne and partially sold in his own gallery. At the auction as well as at the subsequent sale in the plaintiff's own gallery, he suffered a loss due to dissipation. It is indeed correct that the art house Lempertz auctioned the plaintiff's paintings in an orderly manner and also adhered to the minimum requirements, which the plaintiff established for each individual painting. But this does not rule out that nonetheless the paintings were auctioned at a price which was below the price the plaintiff could have realized in an orderly purchase at his own gallery. It is indeed correct that painting collections are not only auctioned at a distress sale to which the plaintiff was forced for reasons of persecution, but that also today auctions of paintings are still common and that the realized price thereby can by all means be the same as would also be the case with a sale in a gallery. But this does not exclude that nonetheless in an individual case the prices realized at an auction could be considerably lower than in the case of a normal sale.

This applies in particular if an auction materializes under the kind of circumstances that existed for the plaintiff at the time. It was generally known, especially in art dealer circles, that the plaintiff was forced to sell his paintings; it is obvious that this fact had its impact on the prices realized. The same also applies to

the paintings, which the plaintiff sold following the auction in his own gallery. Thereby he was also forced to sell the paintings as fast as possible. At least part of the buyers would have known that and it is therefore understandable that also in this connection a normal price was not realized.

The expert opinion of the expert Günther Abels in Cologne shows that the real market value of the paintings significantly exceeded the proceeds realized.

This expert opinion is indeed kept very brief and the expert gives no specifics as to the individual paintings, but he subscribes to the private expert opinion of the expert Josef Pfeiffer in Düsseldorf. Despite its briefness, the court sees no reason not to follow this expert opinion. There is no reason to assume that the expert Abels did not form his view that the prices stated in Pfeiffer's expert opinion are correct, on the basis of careful consideration. But if he came to the same conclusion as the private expert Pfeiffer on the basis of careful consideration and his special knowledge, he thus had no reason to repeat in detail the remarks made in Pfeiffer's expert opinion, again. He could therefore rely on this private expert opinion

and express his opinion, that this expert opinion has correct and correctly described the values of the paintings at the time.

It thus has to be assumed that the paintings had the value given in Pfeiffer's expert opinion.

According to this expert opinion, the paintings sold in the Gallery Stern at the end of the year 1937, had the market value of RM 20,060.-- (page 238 of the compensation file). The auctioned paintings had a value of RM 104,275.--. The court reached this figure by adding the amounts in the column "possible sales value". For the paintings for which no value was entered in this column, the amount given in the column "auction proceeds" was used. Finally, 1,500.-- had to be added to these values, because the expert made a mistake with the painting 161 by Hans Thoma.

The auctioned and subsequently sold paintings thus had a combined value of RM 124,335.--.

The amount, which the plaintiff realized as a result of the auction and the subsequent sale, has to be deducted from this value. This difference is his loss due to dissipation. Nothing further can be ascertained today, as to what amounts would have been realized at the time.

The plaintiff himself cannot give any detailed information about it; it is also not apparent, from where the expert Pfeiffer, who stated the auction proceeds in his expert opinion, got the listed values. In the auction catalogue numbers are indeed given in the margins and it can therefore be assumed that these correspond to the auction proceeds, but this cannot be established with certainty today.

However, it is otherwise possible to roughly establish the amounts the plaintiff received for his paintings at the time. The plaintiff's account statements from the time are available. It follows from them that he took in RM 77,768.—at the time (page 198 ff of the compensation file). It has indeed to be assumed that these amounts do not stem from the auctioned paintings alone, but that the plaintiff also sold other objects at the time. On the other hand one must consider that the money which the plaintiff received from the art house Lempertz, was not the total of the proceeds from the auction; the art house Lempertz first of all deducted its own expenses. Today, it is also impossible to determine the exact amount of these expenses. Hence, the court by way of an estimate assumes that the expenses of the art house Lempertz align with the amounts which the plaintiff received from the sale of other objects. It therefore appears correct to deduct from the value of the paintings the amount of

RM 124,335.-- the proceeds in the amount of RM 77,768.--, hence leaving a loss due to dissipation in the amount of RM 46,567.--. This amount has to be converted at a ratio of 10:2 to about DM 9,300.--. The plaintiff is entitled to a loss of use according to § 56 para. 2 of the Federal Law for the Compensation of the Victims of National Socialist Persecution in the amount of 5%, thus DM 465,--, which has to be added, hence resulting in a total of DM 9,765.--. From this the DM 1,183.50 has to be deducted, which was already awarded to the plaintiff by the appealed notification. Therefore, an amount of DM 8,581.50 remains in the favor of the plaintiff. His other claim concerning the loss due to dissipation must be dismissed.

The order for payment of costs is reserved for the final decision for reasons of convenience. The decision concerning the provisional enforceability is based on § 209 para. 1 of the Federal Law for the Compensation of the Victims of National Socialist Persecution in combination with § 710 Code of Civil Procedure.

Dr. Schaefer
at the same time for District Court Judge Oder, who is on vacation and unable to sign.

Hendricks

<Stamp:
Authorized
Officer of the Court *Puder* (Puder)
as clerk of the district court >

<Unidentifiable stamp>

June 14, 2007

To whom it may concern:

This is to certify that the attached translation from German into English is an accurate representation of the document numbered SE00550-SE00560. This document is designated as:

Text Captioned "Teilurteil"

Ori Z. Soltes, who certified this document, is fluent in German and standard North American English and is qualified to translate.

He attests to the following:
"To the best of my knowledge, the accompanying text is a true, full and accurate translation of the specified document."

Signature of Ori Z. Soltes

Subscribed and sworn to before me this 14th day of June 2007

ELIZABETH A. BALDWIN
Notary Public, District of Columbia
My Commission Expires June 14, 2010