APPENDIX 1

Uu 132 b

UNITED STATES COURTS
OF THE ALLIED HIGH COMMISSION FOR GERMANY

# COURT OF RESTITUTION APPEALS REPORTS

Opinions Nos. 1-60
Advisory Opinion No. 1
Military Government Law No. 59, Amendments and Regulations.
Other Pertinent Laws
Rules of the Court

---

Entscheidungen 1-60
Rechtsgutachten Nr. 1
Gesetz Nr. 59 der Militärregierung, Änderungen, usw.
Verfahrensordnung

Kammergericht zu Berlin

U.S. COURTS OF THE ALLIED HIGH COMMISSION FOR GERMANY
COURT OF RESTITUTION APPEALS

VOLUME I.
1951

Bibliothek des Kammergerichts
Zugangsverzeichnis Nr. II Ua. 26705 -1-

Es handelt sich um einen Antrag des Antragstellers auf Nachprüfung einer Entscheidung des Zweiten Zivilsenats beim Oberlandesgericht München, welche die Entscheidung der Wiedergutmachungskammer beim Landgericht München I bestätigte, die den Anspruch als unbegründet zurückgewiesen hat.

Der in München wohnhafte Antragsteller betrieb in München ein Zigarrengeschäft und eine Lotterieeinnahmestelle. Am 18. September 1938 wurde der Vertrag vom Staat gelöst und er mußte das Geschäft aufgeben. Die Staatsmaßnahme erfolgte auf Grund der zweimaligen Bestrafung des Antragstellers wegen Steuerhinterziehung und wegen Verkaufs und nochmaligem Verkaufs von Gewinnlosen und wegen Verstößen gegen das Arbeitsgesetz, indem er seine Angestellten zwang, in Ueberschreitung der gesetzlichen Arbeitszeit zu arbeiten.

Es liegen keine Beweise vor, welche die Behauptungen des Antragstellers, daß er Verfolgungsmaßnahmen ausgesetzt war, stützen könnten. Der Verlust des Geschäftes war eine direkte Folge seiner eigenen strafbaren Handlungen. Es liegen auch weiterhin keine Beweise dafür vor, daß jemals eine Entziehung des Eigentums des Antragstellers erfolgte.

Der Antragsteller ist keine der in Art. 1 REG aufgeführten Personen und die behauptete Entziehung des Geschäftes erfüllt nicht die Voraussetzungen des Artikels 2 REG. Der Anspruch wurde daher sowohl von der Wiedergutmachungsbehörde als auch von der Wiedergutmachungskammer zu Recht zurückgewiesen.

Die Beschlüsse der Wiedergutmachungsbehörde und der Wiedergutmachungskammer enthielten keine Rechtsirrtümer.

Das Oberlandesgericht traf jedoch die Feststellung, daß die sofortige Beschwerde unter Artikel 68 REG gegen den Beschluß der Wiedergutmachungskammer nicht zulässig ist, da die Entscheidung der Kammer in einem solchen Falle endgültig sei. Dieses Gericht hat in ständiger Rechtsprechung die gegenteilige Meinung vertreten (vergleiche Fall Hugendubel, Entscheidung Nr. 2, und Fall Straßmeier, Entscheidung Nr. 21 des Court of Restitution Appeals).

Der bei diesem Gericht eingereichte Antrag auf Nachprüfung wurde als Nachprüfung der Entscheidungen der Wiedergutmachungskammer und des Oberlandesgerichts gewürdigt.

Die Entscheidung des Oberlandesgerichtes wird aufgehoben. Die Entscheidung der Wiedergutmachungskammer wird bestätigt.

Es war zu erkennen wie geschehen.



**KATHARINA HELLMANN,**
**ELSA MOHR,**
**KONRAD HELLMANN,** Claimant-Appellants
vs
**HLG.-GEIST-SPITALSTIFTUNG Muehldorf,** Restitutor-Appellee

Opinion No. 23 Filed 10 May 1950 Case No. 59

Appeal from the decision of the Restitution Chamber Munich, Traunstein Chamber.

Attorney-at-Law Dr. Herbert Krause, Muehldorf/Inn, for the Appellants.

Attorney-at-Law Dr. Karl Mayer, Muehldorf/Inn, for the Appellee.

Before COHN, President, HARDING, Justice, sitting as an Associate Judge, and FLANAGAN, Judge.

The Opinion of the Court was delivered by COHN, President.

From a judgment of the Restitution Chamber Munich, Traunstein Chamber, dismissing the restitution claim of the appellants they appealed on questions of fact directly to this Court, as they had a right to do under Regulation No. 7, Art. 2, Par. 2, Law 59. The predecessor in interest of the appellants was Siegfried Hellmann, a Jew, who was a merchant in Muehldorf. Hellmann and his wife owned a meadow jointly in that town, containing 4,966 hectare. On November 26, 1934, the property was sold to the appellee, a legal entity under the administration of the Muehldorf municipality.

No news having been received about him since he was sent to a concentration camp, Hellmann has been officially declared dead. His widow and their children claimed a presumption of confiscation under Art. 3, Law 59. They assert further that the Hellmanns did not want to sell their property and that they were forced to do so because at a SA meeting in June 1934 it was stated that the Jew Hellmann no longer needed real estate and that the city was taking it over. A friend of Hellmann, who had heard about the statement at the SA roll call, told him about the assertion. Being a dealer in livestock, the SS attempted to impose a boycott on his business.

It is conclusively proven that the city paid a fair purchase price and that the Hellmann couple had the free right of disposal of the money received by them. It is also well proven that it was in line with good city administration to acquire the property for the hospital foundation. The resolutions of the city council and the sales contract were in an orderly and proper form. It is highly possible that Hellmann became frightened over the threats which were undoubtedly made at the SA meeting and that he thought it would be good policy for him, being a Jew, to sell the property to the city, especially since part of the transaction included a lease of the meadow to him so that he could harvest the hay therefrom for his livestock. It is also clearly shown in the record that Hellmann owned other property at Muehldorf and that he was not forced to sell it until after the passage of the confiscatory laws pertaining

to property owned by Jews. He did not lose the other property until March 15, 1939.

The claimants in early 1947 requested the city to return the property which is involved here and that sold in 1939. The city council on March 6, 1947, before the enactment of Law 59, approved the retransfer of the real estate purchased by it in 1939, recognizing that the property had been purchased as a result of duress. It refused to restitute the property mentioned in the claim finding that the sale was effected under normal conditions.

We do not think the sale was effected under entirely normal conditions. However, the Restitution Chamber did not abuse its discretion or make its findings of fact that the restitutor had effectively rebutted the presumption of confiscation on evidence which was not substantial.

Article 3 of Law 59 is as follows:

"1. It shall be presumed in favor of any claimant that the following transactions entered into between 30 January 1933 and 8 May 1945 constitute acts of confiscation within the meaning of Article 2:

a) Any transfer or relinquishment of property made during a period of persecution by any person who was directly exposed to persecutory measures on any of the grounds set forth in Article 1;

b) Any transfer or relinquishment of property made by a person who belonged to a class of persons which on any of the grounds set forth in Article 1 was to be eliminated in its entirety from the cultural and economic life of Germany by measures taken by the State or the NSDAP.

2. In the absence of other factors proving an act of confiscation within the meaning of Article 2, the presumptions set forth in paragraph 1 may be rebutted by showing that the transferor was paid a fair purchase price. Such evidence by itself shall not, however, rebut the presumptions if the transferor was denied the free right of disposal of the purchase price on any of the grounds set forth in Article 1.

3. A fair purchase price within the meaning of this Article shall mean the amount of money which a willing buyer would pay and a willing seller would take, taking into consideration, in the case of a commercial enterprise, the normal good will which such enterprise would have in the hands of a person not subject to persecutory measures referred to in Article 1."

Article 4 gives a power of avoidance. It is as follows:

"1. Any transaction entered into by a person belonging to a class referred to in Paragraph 1 (b) of Article 3 within the period from 15 September 1935 (the date of the first Nuernberg laws) to 8 May 1945 may, because of the duress imposed on such class, be avoided by a claimant where such transaction involved the transfer or relinquishment of any property unless:

a) The transaction as such and with its essential terms would have taken place even in the absence of National Socialism, or

b) The transferee protected the property interests of the claimant (Article 7) or his predecessor in interest in an unusual manner and with substantial success, for example, by helping him in transferring his assets abroad or through similar assistance.

2. In determining under paragraph 1 (a) whether the transaction would have taken place even in the absence of National Socialism, the fact that

the transferor himself offered to sell the property to the transferee, or the transferor received a fair purchase price (see Article 3, paragraph 3) the free right of disposal of which was not denied him on any of the grounds set forth in Article 1,



shall be considered by the Restitution Authority together with all other facts, but neither fact, either singly or in conjunction with the other, shall be sufficient to show that the transaction would have taken place even in the absence of National Socialism.

3. Similarly neither of these facts, either singly or in conjunction with the other, shall be sufficient to show that the claimant is estopped from exercising the power of avoidance by reason of his own previous conduct or that of his predecessor in interest.

4. The term "claim for restitution" as used in this Law shall be deemed to include all claims based on the right to exercise the power of avoidance. The exercise of the power of avoidance shall have the effect that the property transferred or relinquished pursuant to the voided transaction shall for the purposes of this Law be deemed to be confiscated property.

5. The filing of a claim for restitution shall, whether or not it is specifically stated, be deemed to be an exercise of the right of avoidance on behalf of the person entitled to exercise such right."

It must be closely observed that the presumption of confiscation during the period January 30, 1933, to the date of the first Nuernberg Laws, September 15, 1935, when the plans of National Socialism started to place a stranglehold on the economic life of Jews, may be rebutted when a fair purchase price had been paid an owner who falls within the categories listed in Article 1 and who had the free right of disposal of that purchase price. When the latter two components of the transaction are proven, other factors proving an act of confiscation within the meaning of Art. 2 must be shown, i. e. that the deprivation must have been the result of a transaction contra bonos mores, threats or duress, or an unlawful taking or any other tort; seizure due to a governmental act or by abuse of such act; seizure as the result of measures taken by the NSDAP, its formations or affiliated organizations. It must be noted that the legislator drew a sharp distinction between confiscations before September 15, 1935, and those transactions occurring after that date. Thereafter, under Article 4, the free right of disposal of a fair purchase price is not sufficient to rebut the power of avoidance which, of course, presumes confiscation under Article 3, if it can be shown that the transaction would not have taken place in the absence of National Socialism.

It is entirely possible in this case that the transaction would not have taken place in the absence of National Socialism. However, that third element cannot inure to the benefit of a claimant on transactions prior to September 15, 1935.

In the case before us we do not think the claimants produced sufficient evidence before the Restitution Chamber to conform the sale to any of the acts of confiscation set forth in Article 2, Law 59. Further we do believe that the city council of Muehldorf, as it was constituted in March 1947 when it returned the one item of real estate to the claimants, had there been sufficient grounds shown to them why the meadow should have been returned, they would have acted in good faith and would have atoned for the wrong done by the city council of 1934.

The Restitution Chamber was not in error in its conclusions. Its decision, therefore, is affirmed.

IT IS SO ORDERED:

10