**WIRTZ & KRANEIS**

**RECHTSANWÄLTE**

DR. HEINZ WIRTZ III (-1987)
DR. KRISTIAN KRANEIS[1]
JOACHIM ROSSHOFF
JÜRGEN FUCHS
JÖRG REINARTZ[4]
DR. RANDOLF MOHR[1]
DR. THOMAS KLEIN[1,3]
MANFRED MEYER[2]
VOLKER SCHMITZ-VOLLBRACHT
TOBIAS KORDES

[1] FACHANWALT FÜR STEUERRECHT
[2] FACHANWALT FÜR ARBEITSRECHT
[3] FACHANWALT FÜR HANDELS- UND GESELLSCHAFTSRECHT
[4] FACHANWALT FÜR VERSICHERUNGSRECHT

PARTNERSCHAFT
AG ESSEN PR 1608

SACHSENRING 83
50677 KÖLN

POSTFACH 25 03 60
50519 KÖLN

FACH LG KÖLN: K 1810
FACH OLG KÖLN: K 158

WWW.WIRTZ-KRANEIS.DE

DURCHWAHL : (0221) 272 50-204
TELEFAX : (0221) 272 50-333
E-MAIL : ROSSHOFF@WIRTZ-KRANEIS.DE
AKTEN-NR : 0504/074 DG

23.07.2007

Frau
Maria-Louise Bissonnette
50 Park Row West, Apt. 905

Providence, R.I. 02903-1151 (USA)
VEREIN. STAATEN VON AMERIKA

**per Telefax: 001-401 331 4773**

**Bissonnette ./. Max Stern Erben**

Sehr geehrte Frau Bissonnette,

ich berichte über den am 16.07.2007 stattgefundenen Ortstermin.

Mit dem Vertreter des Stern Estate, Herrn Kline, ist ein Besichtigungstermin für den 16.07.2007, 11:00 Uhr vereinbart worden. Herr Kline hat in einer E-Mail vom 05.07.2007, die ich zu Ihrer Kenntnisnahme beifüge, mitgeteilt, dass Herr Dr. Schlenke die Besichtigung durchführen und Fotografien fertigen wird. Wir wurden ausdrücklich dazu aufgefordert, möglichst keinen Kontakt mit Herrn Dr. Schlenke vor der Besichtigung aufzunehmen. Des Weiteren wurde mitgeteilt, dass Herr Kline Herrn Dr. Schlenke gebeten hat, jegliche Diskussionen über die Besichtigung mit uns zu vermeiden.

Am 16.07.2007 ist Herr Dr. Schlenke gemeinsam mit einer Dame am vereinbarten Treffpunkt erschienen. Herr Dr. Schlenke war etwas zu früh da, was aber

unschädlich war, da der Unterzeichner selbst ebenfalls verfrüht erschienen ist. Dies war gegen ca. 10:40 Uhr. Herr Dr. Schlenke hatte die beauftragte Spedition bereits auf das Bild angesprochen, als der Unterzeichner erschien.

Der Unterzeichner hat Herrn Dr. Schlenke darauf aufmerksam gemacht, dass durch Herrn Kline die Besichtigung lediglich durch eine Person, nämlich durch ihn, angekündigt worden sei, so dass der Unterzeichner überrascht sei, dass er eine weitere Person mitgebracht habe. Herr Dr. Schlenke reagierte hierauf aggressiv und versuchte dies als vollkommen unwichtig abzutun. Er teilte mit, bei der mitgebrachten Person handele es sich um seine „Assistentin", die nur fotografieren würde. Der Unterzeichner Herrn Dr. Schlenke versucht zu vermitteln, dass lediglich eine Person angekündigt worden sei. Herr Dr. Schlenke hat daraufhin wörtlich erklärt, dass er dies als „Querulantentum" auffasse. Auf die Bitte, möglichst nicht persönlich zu werden, hat Herr Dr. Schlenke in der Weise reagiert, dass er meinte, dass der Beruf des Unterzeichners sei, zu streiten, seiner hingegen darin bestehe, Bilder zu begutachten. Der Unterzeichner hat Herrn Dr. Schlenke daraufhin gefragt, ob er in der Lage sei, die Fotografien selber zu fertigen. Herr Dr. Schlenke hat daraufhin geantwortet, dass der dies könne, auch wenn dies schwieriger sei. Daraufhin hat der Unterzeichner darauf gebeten, dass Herr Dr. Schlenke die Fotografien selbst fertigt und die Besichtigung nur durch ihn durchgeführt wird.

Anschließend wurden Herr Dr. Schlenke und der Unterzeichner durch eine Mitarbeiterin der Spedition zum Lagerort im Keller der Spedition geführt, wo Herr Dr. Schlenke der Aufbewahrungsort des Gemäldes gezeigt wurde. Herr Dr. Schlenke bat darum, das Bild in einem Raum in Augenschein zu nehmen können, in welchem Tageslicht vorhanden ist. Ein von der Mitarbeiterin hinzugerufener weiterer Mitarbeiter transportierte das Bild in einen solchen Raum und packte es dort aus. Dies geschah in Anwesenheit von Herrn Dr. Schlenke. Herr Dr. Schlenke bat dann darum, dass das Bild für ihn gehalten werde. Dies wurde durch den Mitarbeiter der Spedition getan. Herr Dr. Schlenke fotografierte das Bild dann aus verschiedenen Perspektiven und nahm es genau in Augenschein. Anschließend wurde der Platz gewechselt und Herr Dr. Schlenke fertigte weitere Fotografien und machte Eintragungen in durch Herrn Dr. Schlenke vorbereitetes Millimeterpapier. Anschließend wurde das Bild durch zwei Mitarbeiter der Spedition wieder verpackt und im Beisein von Herrn Dr. Schlenke zurück zum ursprünglichen Lagerort verbracht. Der gesamte Termin war nach ca. 1 Stunde beendet.

Die Richtigkeit der vorstehenden Wiedergabe des stattgefundenen Ortstermins versichere ich hiermit sowohl anwaltlich als auch eidesstattlich in Kenntnis der Strafbarkeit einer falschen eidesstattlichen Versicherung.

Sie haben mir nunmehr die Darstellung des Ortstermins durch Herrn Dr. Schlenke zugänglich gemacht. Ich bin sehr erstaunt, dass in seiner E-mail an Herrn Dr. Korte vom 16.07.2007 davon die Rede ist, dass seine Assistentin in ihrer Eigenschaft als Restauratorin an dem Ortstermin teilnehmen sollte. Herr Dr. Schlenke hat dem Unterzeichner gegenüber lediglich angegeben, dass seine Assistentin Fotografien fertigen solle. Davon, dass seine Assistentin als Restauratorin tätig werden sollte, das Bild also ebenfalls für den Stern Estate als Expertin in Augenschein nehmen sollte, war zu keinem Zeitpunkt die Rede. Im Gegenteil hat Herr Dr. Schlenke darauf hingewiesen, dass die Anwesenheit seiner Assistentin im Grunde genommen, völlig belanglos sei, so dass die Erhebung von Einwendungen unverständlich sei. Diese Vorgehensweise ist zumindest nach deutschen Maßstäben nicht in Ordnung.

Abschließend kann ich die nunmehr entstandene Aufregung nicht nachvollziehen, da das Gericht angeordnet hat, dass dem Stern Estate die Möglichkeit einer „Inspection“ durch „a representative“, also einen Repräsentanten gegeben werden sollte. Nach meinem Verständnis sollte der Stern Estate sich durch eine Besichtigung ein Bild vom Zustand des Gemäldes machen können. Nach meinem Verständnis sollte die Anordnung aber nicht dazu dienen, dem Stern Estate Gelegenheit zu geben, das Bild durch beliebig viele Sachverständige untersuchen zu lassen. Der Stern Estate hat sich eines Sachverständigen bedient. Wenn dieser nicht allein in der Lage ist, den Zustand zu beurteilen, hätte der Estate einen anderen Sachverständigen wählen müssen. Herr Dr. Schlenke ist in keiner Weise in seiner Tätigkeit behindert worden. Den Wünschen von Herrn Dr. Schlenke im Hinblick auf Tageslicht, Halten und Versetzen des Bildes ist vollumfänglich nachgekommen worden.

Mit freundlichen Grüßen

(Schmitz-Vollbracht)
Rechtsanwalt

July 23, 2007

1

Dear Mrs. Bissonnette.

I am giving a report of the local appointment which took place on July 16, 2007
An agreement was made with the representative of the Estate Mr. Kline an appointment for viewing the painting on July 16, 2007 at 11:00 AM
Mr. Kline sent an e-mail on July 5, 2007 which I am including and said that Dr. Schlenke will conduct the viewing and will make photographs. We were asked to have no contact with Dr. Schlenke before the viewing. Further more was said that Dr. Schlenke should void any discussion with us about the viewing (order of Mr. Kline)
Dr. Schlenke showed up with a lady at the location on July 16, 2007
Dr. Schlenke came early that did no harm, since the undersigned was early too, This took place at 10:40 AM. Dr. Schlenke was already talking with the storage people about the painting when the undersigned arrived.
The undersigned pointed out to Dr. Schlenke that the viewing according to Mr. Kline should take place by one person Dr. Schlenke
Therefore the undersigned was surprised

 2

that Dr. Schlenke brought another person.
Dr. Schlenke reacted aggressive and tried to say that is unimportant. He told me the person who he brought along is an assistant who just will take pictures.
The undersigned tried to explain that there was only one person mentioned
Dr. Schlenke declared to that that he sees it as an querulous. I asked Dr. Schlenko not to get personal. Dr Schlenke reacted in this way that he want the profession of the undersigned to quarel, Dr. Schlenke's profession is to give an expert view and opinion on pictures. The undersigned asked Dr. Schlenke if Dr. Schlenke was able to take pictures by himself. Dr. Schlenke answered he can do it even so it will be hard to do it.
Then the undersigned asked Dr. Schlenke will take pictures by himself and the viewing can take place by him. After that Dr. Schlenke and the undersigned were taking by an assistant place to the basement of the storage place where the location of the storage is, was shown to Dr. Schlenko the stored painting
Dr. Schlenke asked that the painting should be brought to a room where he could view the painting, where was daylight

One of the assistants called another assistant to transport the painting in such a room and it was unpacked. This took place in the present of Dr. Schlenko. Dr. Schlenko asked that the painting should be held up for him.
This was done by an assistant of the storageplace. Dr. Schlenko took pictures of the painting in different perspectives and took a very good look at the painting. After the location of the painting was changed and Dr. Schlenko took more pictures of the painting and made remarks on Dr. Schlenko's prepared Millimeter paper. After that the two assistants of the storage place repacked the painting in the present of Dr. Schlenko, it was brought back to the original storage place. The appointment took one hour.

~~The correctness of the foregoing that took place~~

~~at the storage facility under pains of perjury~~

You gave me the statement of the local appointment by Dr. Schlenko.
I am surprised that in his email to Dr. Korte of July 16, 2007 mentioned that his assistant her profession as a restorator should be present at the local appointment.
Dr. Schlenko told the undersigned that his assistant should take pictures. The assistant was supposed to be working as a restorator who should work as an expert for the Stern Estate was never mentioned at any time
Dr. Schlenko pointed out that the presence of his assistant is unimportant therefore he doesn't understand the raising of the objection. This procedure is according to the German standard not in order.
I can not understand the excitement since the court ordered that the Stern Estate was given the possibility of an inspection by a representativ. My understanding was that the Stern Estate could take review of the painting and also to find out in what condition the painting is. The Stern Estate had an expert.
If he is not able to judge the condition of the painting the estate should have decided to take another expert

Dr Schlenko was not prevented from his work. The wishes of Dr. Schlenke in view of the daylight, the holding and moving of the paintings were fullfield.

Regard,

(Schmitz Vollbracht)
Lawyer

The correctness of the foregoing that took place at the Storage facility ~~under~~ I hereby certify under pain of perjury

**Joachim Rosshoff**

---

**Von:** Kline, Thomas R. [ThomasKline@andrewskurth.com]

**Gesendet:** Donnerstag, 12. Juli 2007 23:11

**An:** Joachim Rosshoff

**Cc:** dr.schlenke@gmx.de; Kline, Thomas R.

**Betreff:** RE: Viewing of Painting

Dear Mr. Rosshoff:

Thank you for your letters from yesterday, 11 July, and today, 12 July, concerning the arrangements for viewing the Winterhalter. Dr. Schlenke is prepared to go forward with inspecting the painting according to the procedures you outlined. Thank you for revealing the location of the painting where Dr. Schlenke will meet your colleague at 11:00 am on Monday, 16 July.

Stern Estate is willing to pay the reasonable costs of the warehouse in making the painting available to him for examination, and Dr. Schlenke will be prepared to assist, as needed, in the unpacking and repacking of the painting.

Thomas R. Kline
Andrews Kurth LLP
thomaskline@andrewskurth.com
1350 I Street, NW, Suite 1100
Washington, DC 20005
phone: (202) 662-2716
fax: (202) 662-2739
www.andrewskurth.com

---

**From:** Kline, Thomas R.
**Sent:** Thursday, July 05, 2007 3:10 PM
**To:** Joachim Rosshoff (Rosshoff@wirtz-kraneis.de)
**Cc:** dr.schlenke@gmx.de
**Subject:** FW: Viewing of Painting

Dear Mr. Rosshoff:

Stern Estate accepts July 16 as the date for viewing the painting at its current storage location.

Dr. Schlenke will view the painting on behalf of Stern Estate. Please accept this email as his authorization to view of the painting on behalf of Stern Estate. Dr. Schlenke's relationship to Stern Estate is limited to this inspection.

Dr. Schlenke would like to meet you at the storage location at 11:00 am CET on July 16. Please let me know if these arrangements are acceptable.

Dr. Schlenke expects to take about 2 hours to conduct his examination. His examination and photography will include the storage location, the painting as packed, unpacked and repacked, and the procedure of unpacking, viewing and repacking the painting. He will need to be left alone, to have adequate space and light to view the painting and to photograph it and the storage location. He will require an electric outlet for his black light lamp. Please let me know if you will be unable to satisfy any of these requirements.

I have asked Dr. Schlenke to be prepared to provide his professional services in unpacking and repacking the painting, if you do not have an appropriate professional available to conduct these steps.

Please refrain from contacting Dr. Schlenke before the viewing. I am copying him on this email for informational purposes only, and not to open a channel of communication between the two of you. All arrangements should be made through me.

13.07.2007