IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MAX STERN ESTATE | : | |
| | : | Civil Action No: 06-211ML |
| v. | : | |
| | : | |
| MARIA LOUISE BISSONNETTE | : | |

**DEFENDANT, MARIA LOUISE BISSONNETTE'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Now comes Defendant, Maria Louise Bissonnette ("Mrs. Bissonnette"), pursuant to Local Civ. R. 56 and Hereby files this Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.

## I. BACKGROUND

This case involves a dispute over the ownership of a painting that was purchased at an auction in Germany in 1937 by Mrs. Bissonnette's stepfather, Dr. Karl Wilharm. In the ensuing seven decades, the painting has remained in the care, custody and control of the Bissonnette family. In or around 2003, the painting was brought to an auction house in Cranston, Rhode Island by Mrs. Bissonnette in an effort to sell the painting. The painting remained at the auction house in Cranston for two years before it was to be auctioned. Prior to the auction of the painting, the auction house, Estates Unlimited, advertised the painting, along with several others that were to be auctioned on the same day. Upon information and belief, the painting was advertised on the internet and in mailings sent out by the auction house.

Just prior to the date of the auction, Estates Unlimited was contacted by Willi Korte, an individual who, upon information and belief, is associated with the Estate of Max Stern in its quest to find and retrieve art that Mr. Stern was dispossessed of by the Nazis in the late 1930s and early 1940s. Mr. Korte sent an email to Estates Unlimited advising its owners of the questionable provenance of the painting at issue in this matter. As a result, the painting was withdrawn from the auction and Mrs. Bissonnette removed the painting from the auction house. This was the first time in nearly seventy years that anyone had ever challenged Mrs. Bissonnette's claim to ownership of this painting, which she had inherited from her mother in 1991.

In the ensuing years after the painting was removed from the auction house in Cranston, there have been negotiations between the parties in an attempt to resolve this matter without resort to legal action. Unable to amicably resolve this situation, litigation has commenced on two continents. The action brought before this court involves replevin and conversion claims. In order for plaintiff to recover on its replevin and conversion claims, it must prove (1) it is the rightful owner of the painting, (2) the painting was stolen from Mr. Stern, that is taken from him without his permission or authorization, (3) it made a demand for the return of the painting and such demand was refused, and (4) that Mrs. Bissonnette is in wrongful possession of the property. In defense, Mrs. Bissonnette argues the equitable doctrine of laches and the legal defense of statute of limitations.

At this juncture, Mrs. Bissonnette claims that there are facts at issue in this matter. As such, Defendant respectfully requests that this Honorable Court deny Plaintiff's Motion for Summary Judgment, and allow this matter to proceed to a trial on the merits.

## II. LEGAL STANDARD

Rule 56 of the Rules of Civil Procedure provides, in pertinent part, that a Court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions of fact, together with affidavits, if any, show that there is no genuine issue of fact, and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.

In ruling on a summary judgment motion, the Court must view the record and draw inferences in a light most favorable to the nonmoving party. Pignons S.A. v. Mecanique de Precision v. Polariod Corp., 657 F.2d 482, 486 (1st Cir. 1981). "When a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial, there can no longer be a genuine issue of any material fact . . . and the moving party is entitled to judgment as a matter of law." Smith v. Stratus Computer, Inc., 40 F.3d 11, 12 (1st Cir. 1994).

In this matter, there are genuine issues of material fact that are in dispute. As such, this matter is not ripe for summary judgment, and Plaintiff's motion should be denied.

## II. LEGAL ARGUMENT

### ENTRY OF SUMMARY JUDGMENT IS INAPPROPRIATE ON DEFENDANT'S LACHES DEFENSE

Plaintiff asserts in its Memorandum that "Dr. Stern did everything one would expect a theft victim to do to reclaim his property." (Plaintiff's Memorandum of Law at 4). In bolstering its claim, Plaintiff cites Autocephalous Greek-Orthodox Church of Cyprus v. Goldberg & Feldman Fine Arts, Inc., 717 F. Supp. 1374, 1389-91 (S.D. Ind. 1989). It is defendant's

contention that Mr. Stern did not exercise nearly the type of due diligence exerted by the Plaintiffs in the Autocephalous case.

Even assuming for the sake of argument that the painting at issue in this matter belonged to Mr. Stern, the plaintiff in Autocephalous "**immediately** upon learning that the mosaics were missing" contacted international organizations, individuals whom it believed could assist it in disseminating information about the missing mosaics . . . continued to meet and discuss the situation with (international) officials . . . notified the International Council of Museums . . . the International Council of Museums and Sites . . . European and American museums . . . Harvard University's Dumbarton Oaks Institute for Byzantine Studies . . . (and) disseminated information about the missing mosaics to their colleagues and scholars throughout the world by sending letters and by addressing symposia, congresses, and other such meetings." Id. at **14-16. Even though these actions were taken by the Republic of Cyprus, clearly a more powerful force than Mr. Stern, an individual, Mr. Stern was, by all accounts, a well-known, well-respected member of the art world. The only efforts that are known to defendant in the realm of Mr. Stern's diligence to retrieve his lost/stolen property were articles published in two periodicals (neither of which mentioned the painting at issue in this matter), a 1962 document listing the name of the painting in an effort to prove to the German Reparations Court that the painting was sold in 1937 under duress at the Lempertz auction house, and the actions taken by Mr. Stern's representatives subsequent to learning where the painting was located.

While it is unreasonable to demand that Mr. Stern should have sought his paintings during the period immediately following the sale and during the years of World War II, this painting could have appeared in advertisements, letters written to museums, governments or other artistic alliances. Again, Mr. Stern was not a mere collector of art: he was well known,

well respected, and had the means, ability, knowledge and skills to contact individuals and/or entities that could have assisted him in his quest. While plaintiff asserts that Mr. Stern did not know the whereabouts of the painting, neither did the plaintiff in Autocephalous know the whereabouts of the lost mosaics. As such, due diligence should not be measured at the point that plaintiff learned of the location of the lost work, rather, it should viewed through a "totality of the circumstances" lens. Houle v. Collatos, No. 77-1295, 1982 U.S. Dist. LEXIS 10693 at *12 (D. Mass. Feb. 2, 1982) ("[l]aches is determined in light of all of the existing circumstances"). Unlike the plaintiffs in Autocephalous, Mr. Stern did not "immediately" begin searching for this lost painting. As such, there is a factual dispute concerning Mr. Stern's due diligence that should be decided at trial.

As a result of Mr. Stern's lack of due diligence in pursing this particular painting, Mrs. Bissonnette has been prejudiced. The prejudice that Mrs. Bissonnette has experienced includes becoming embroiled in a protracted litigation in federal court and having her family's name disparaged in the process. While Mrs. Bissonnette and the Estate did engage in settlement negotiations, all offers made by the Estate were far below the fair market value of this valuable painting.

Moreover, Mrs. Bissonnette changed her position "in a way that would not have occurred if plaintiff had not delayed." Harley-Davidson v. Estate of O'Connell, 13 F. Supp. 2d 271, 282 (N.D.N.Y. 1998). Mrs. Bissonnette brought the painting to Estates Unlimited in Cranston to sell it. Due to its high value, it is likely that Mrs. Bissonnette would have sold the painting, paid the auction house its commission, and benefitted from the sale. Clearly, Mrs. Bissonnette had no choice but to change her position when notified by Estates Unlimited that the painting was the subject of a claim being processed by the HCPO.

In the case at bar, there are questions of fact concerning Mr. Stern's diligence in pursuing his lost art. As such, this case is inappropriate for the entry of summary judgment.

III. CONCLUSION

For all of the foregoing reasons, Plaintiff's Motion for Summary Judgment should be denied.

Respectfully Submitted,

Maria Louise Bissonnette,

By her Attorneys,

/s/ David A. Levy, Esquire

/s/ Marta E. Garrett, Esquire

David A. Levy, Esquire (Bar Number 4564)

Marta E. Garrett, Esquire (Bar Number 7130)

326 Park Row West, #326

Providence, Rhode Island 02903

(401) 952-0033

(401) 274-5562

**CERTIFICATION**

I, Marta E. Garrett, Esquire, hereby certify that on this 31 day of July, 2007, that I caused a true copy of the within Opposition to Plaintiff's Statement of Undisputed Facts to the following counsel of record, via the ECF system: Thomas R. Kline, Esquire and L. Eden Burgess, Esquire 1350 I Street, NW, Suite 1100, Washington D.C. 20005 and Samuel Zurier, Esquire, TILLINGHAST LICHT LLP, 10 Weybosset Street, Providence, Rhode Island 02903.

/s/ Marta E. Garrett_____________