**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| Stern Estate, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **Civil Act. No. 06-211 (ML)** |
| | § | |
| Maria-Louise Bissonnette, *et al.* | § | |
| | § | |
| Defendants. | § | |
| | § | |

**STERN ESTATE'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and LR Cv 7(b)(2), Dr. and Mrs. Max Stern Foundation ("Stern Estate" or "Plaintiff"), through its trustees, states as follows in Reply to Defendant Maria-Louise Bissonnette's ("Bissonnette" or "Defendant") Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment ("Bissonnette Opp.").

**PRELIMINARY STATEMENT**

Plaintiff's Motion for Summary Judgment addresses all issues bearing on its conversion and replevin claims to *Girl from the Sabiner Mountains* ("Painting"): the elements of each claim and Bissonnette's defenses, namely, statute of limitations, laches, *res judicata*, and collateral estoppel. *Memorandum of Law in Support of Stern Estate's Motion for Summary Judgment* ("Stern Estate Mem."). Plaintiff also provided expert statements by noted author and scholar Lynn Nicholas and Berlin restitution lawyer Dr. Ulf Bischof to establish that, whether one looks to U.S. or German law, the Painting was stolen and remains property of Stern Estate, which is entitled to immediate possession or, failing return, compensation for its loss.

Plaintiff submits that its initial presentation satisfied its burden to establish the absence of a genuine issue of material fact on its conversion and replevin claims. *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986). Bissonnette, as the nonmoving party, bears the burden of "producing specific facts sufficient to deflect the swing of the summary judgment scythe." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003). Those facts, typically set forth in affidavits, depositions, and the like, must have evidentiary value; as a rule, "[e]vidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." *Vazquez v. Lopez-Rosario*, 134 F.3d 28, 33 (1st Cir. 1998).

In response to Stern Estate's Motion, Bissonnette advances no additional evidence and only one detailed argument: that factual issues exist on her laches defense, on which she carries the burden of proof.[1] *Bissonnette Opp.* at 3-7. Bissonnette argues that Dr. Stern and Stern Estate were insufficiently vigilant in seeking recovery of the Painting and that Bissonnette was prejudiced by delays in making the claims that are asserted herein. Since Bissonnette and her family were the sole possessors of the Painting throughout the entire period of alleged delay, this argument would appear to fall under its own weight, there being no indication of any prejudice to her. Taken most charitably, in fact, Bissonnette shows only that Dr. Stern or Stern Estate could have been more diligent, a claim that can be made in every art restitution case. She has not cited a single case in which a party as diligent as Plaintiff and its predecessor-in-interest were found – by judge or jury, in summary judgment or at trial – to have been lacking in diligence.

Even if reasonable minds could differ on whether the Dr. Stern/Stern Estate diligence was adequate, Bissonnette has not demonstrated a need for trial on her laches defense. She has not

---

[1] Bissonnette claims to "argue[]… the legal defense of statute of limitations," but her Opposition says no more than that on the subject. *Bissonnette Opp.* at 2. In addition, Bissonnette's Opposition to Stern Estate's Statement of Undisputed Facts and Additional Statement of Disputed Facts that Preclude Entry of Summary Judgment ("Bissonnette Stmt of Facts"), at 8, ¶ 3, states, "There is nothing that indicates that [Dr. Stern] had good title" to the Painting. Although Bissonnette presents little or no evidence to support either argument, Stern Estate addresses both herein.

changed position in reliance on any real or imagined defect in Plaintiff's diligence and has suffered no prejudice by reason of any such deficiency. Bissonnette cannot and does not assert any of the classic grounds for prejudice in the context of a laches defense: purchase of the object without knowledge of the claim, or the loss of documents or witnesses.

Bissonnette's only prejudice argument is that she could not sell the Painting at auction in Rhode Island *because the Art Loss Register was aware of the claim*. *Bissonnette Opp.* at 5. This interest – the right to sell a stolen painting free from the cloud on title due to a restitution claim – is not the kind of prejudice protected by laches because the problem is due to the claim itself and not any alleged delay in making it. In fact, Bissonnette's argument proves that her inability to sell the Painting *resulted from Stern Estate's diligence in publicizing the claim to ALR and others, not from any lack of diligence*. Bissonnette has, therefore, failed to produce "hard evidence of a material factual dispute" (*Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990)) sufficient to prevent entry of summary judgment in favor of Stern Estate.

**ARGUMENT**

**I. BISSONNETTE PRESENTS INSUFFICIENT FACTS TO DEFEAT SUMMARY JUDGMENT ON STERN ESTATE'S CONVERSION AND REPLEVIN CLAIMS.**

Contrary to Bissonnette's approach, federal practice requires *evidence* from a party opposing entry of a summary judgment:

> To survive summary judgment "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986) (italics in original) (quoting Fed. R. Civ. P. 56(e)). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). The "mere existence of a scintilla of evidence" supporting the non-movant's case is also insufficient to defeat summary judgment.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). *See also id.* at 249-50 ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return

a verdict for that party…. If the evidence is merely colorable…, or is not significantly probative…, summary judgment may be granted.”).

Ignoring her obligations, Bissonnette fails to provide even “a scintilla of evidence” and instead relies on “allegations, conjecture and speculation” in opposing Stern Estate’s Motion. *See, e.g., Bissonnette Stmt of Facts* at 7, ¶ 1 (“there must have been some documentation in existence….”); *id.* at 9, ¶ 3 (“many art dealers… may have wanted to cover their tracks.”). To defeat summary judgment, however, “the nonmovant must go beyond the pleadings and ‘do more than simply show that there is some metaphysical doubt as to the material facts.’” *Matsushita*, 475 U.S. at 586. As the First Circuit has warned, “[the Court] give[s] no weight to conclusory allegations, unsupported conjecture, or free-wheeling invective.” *Cordi-Allen v. Conlon*, 2007 WL 2142882, at *3 (1st Cir. July 27, 2007). *See also Griggs-Ryan*, 904 F.2d at 115 (“A genuine issue of material fact does not spring into being simply because a litigant claims that one exists. Neither wishful thinking…nor conclusory responses unsupported by evidence… will serve to defeat a properly focused Rule 56 motion.”). Bissonnette having failed to present any evidence of material disputed facts, Stern Estate’s motion should be granted.

## II. BISSONNETTE’S ADMISSIONS ESTABLISH THAT STERN ESTATE SHOULD BE AWARDED SUMMARY JUDGMENT.

In her Reply to Plaintiff’s Statement of Undisputed Facts, Bissonnette agrees that the majority of Plaintiff’s factual allegations are undisputed. *See Bissonnette Stmt of Facts* at 1. She does not contest the facts submitted to establish this Court’s jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1367(a): diversity (*Stern Estate’s Statement of Undisputed Facts in Support of its Motion for Summary Judgment* (“Stern Estate Stmt of Facts”) ¶¶ 1-3) and amount in controversy (*id.* ¶ 4). Bissonnette also does not contest that venue is proper in this Court (*id.* ¶¶ 5-9).

Most significantly, Bissonnette does not contest that the Painting was stolen from Dr. Stern. In its Motion for Summary Judgment, Stern Estate sets forth the history of Dr. Stern and his gallery, including the Painting at issue here. Dr. Stern was a Jewish art dealer and owner of the Galerie Stern in Düsseldorf, Germany in the 1930s; he was victimized by the National Socialists' anti-Semitic policies, including sweeping prohibitions on Jews conducting business of any kind. *Stern Estate Stmt of Facts* ¶¶ 17-29. In September 1937, Dr. Stern was ordered to liquidate his inventory and dissolve his gallery through a Nazi-approved auction house. *Id.* ¶ 18. On or about November 13, 1937, Lempertz gallery auctioned off Dr. Stern's inventory. *Id.* ¶¶ 19-21. At the Lempertz auction, Dr. Wilharm purchased the Painting. *Id.* ¶ 32. Bissonnette, Wilharm's stepdaughter, inherited the Painting in 1991 and has possessed it since 1959. *Id.* ¶¶ 34-37. She has refused to return the Painting to Stern Estate. *Id.* ¶ 61; *Bissonnette Stmt of Facts* at 1.[2]

Stern Estate's evidence of theft includes the expert declarations of Ms. Nicholas (*Declaration and Expert Report of Lynn H. Nicholas*, Dec. 28, 2006) and Dr. Bischof (*Expert Report and Declaration of Dr. Ulf Bischof*, June 8, 2007), along with the Nazi orders requiring Dr. Stern to sell off his gallery stock (*Letter from Chamber to Stern*, Sept. 13, 1937 (*Vineberg Dec.* Ex. 6)) and the post-War decision granting Dr. Stern partial compensation for this loss (*Decision by Higher District Court (Landgericht) Düsseldorf in Dr. Stern v. Land Nordrhein-Westfalen*, 26 O (Entsch) 454/62 (Feb. 24, 1964) ("Stern v. Land Nordrhein-Westfalen")

---

[2] With the sole exception of Paragraph 61 of Stern Estate's Statement of Undisputed Facts, Bissonnette does not contest any of the facts cited in this paragraph. Although she previously admitted the point (*Bissonnette's Answer to Stern Estate Complaint* ¶ 41), Bissonnette did not reply to Paragraph 61 of Stern Estate's Statement of Undisputed Facts, which states, "Bissonnette has continued to refuse to return the Painting to Stern Estate," a fact that appears obvious. Absent denial, LR Cv 56(a)(3) requires that the fact alleged by Stern Estate in Paragraph 61 be deemed admitted.

(*Vineberg Dec.* Ex. 15)). Recognizing the force of this presentation, Bissonnette makes no challenge to Stern Estate's evidence that the Nazi authorities' liquidation orders were equivalent to a confiscation and prove that they stole the Painting from Dr. Stern.

## III. BISSONNETTE FAILS TO PROVIDE EVIDENCE OF DISPUTED MATERIAL FACTS TO SUPPORT TO HER OPPOSITION ARGUMENTS.

Bissonnette indicates that she has three bases for opposing Stern Estate's Motion: (a) that Stern Estate's due diligence was insufficiently robust to resolve her laches defense as a matter of law (*Bissonnette Opp.* at 3-6); (b) that an unspecified statute of limitations argument precludes judgment in Stern Estate's favor on its Motion (*id.* at 2); and (c) that Stern Estate has not and cannot establish that Dr. Stern owned the Painting before the theft (*Bissonnette Stmt of Facts* at 3-4, ¶ 43). Stern Estate addresses each argument in turn.

### A. Bissonnette Provides Insufficient Grounds To Support Her Laches Defense.

Bissonnette concentrates most of her energy on her laches defense, in which she challenges Dr. Stern's and his Estate's due diligence. Laches requires two showings: delay and prejudice. *Adam v. Adam*, 624 A.2d 1093, 1096 (R.I. 1993), *citing Chase v. Chase*, 20 R.I. 202, 203-04, 37 A. 804, 805 (R.I. 1897) ("laches… is not mere delay, but delay that works a disadvantage to another"); *Solomon R. Guggenheim Fdtn. v. Lubell*, 567 N.Y.S.2d 623, 626, 569 N.E.2d 426, 429 (N.Y. 1991) ("appellant's lack of diligence argument was more in the nature of laches… as a result, the appellant needed to show that she had been prejudiced by the museum's delay in demanding return of the [object]."). Bissonnette fails to establish facts showing prejudice caused by any delay in pursuing this claim, so her laches defense must be rejected.[3]

---

[3] Bissonnette does not appear to deny that Dr. Stern and Stern Estate took the steps relied upon in the Motion for Summary Judgment, and submits no affidavit or other evidence to support any denial of the facts showing Stern Estate's due diligence. Pursuant to LR Cv 56(a)(4), any denied or controverted fact must be supported by affidavit or other evidence.

**1. Dr. Stern and Stern Estate were Diligent in Seeking Recovery.**

Defendant argues that there are disputed factual issues concerning whether Stern Estate has satisfied applicable standards of diligence in its efforts to locate and recover Dr. Stern's collection. *Bissonnette Opp.* at 3-6. Bissonnette criticizes Stern Estate's efforts as being far short of those taken by Cyprus in *Autocephalous Greek-Orthodox Church of Cyprus v. Goldberg & Feldman Fine Arts, Inc.*, 717 F. Supp. 1374 (S.D. Ind. 1989) (*Bissonnette Opp.* at 3-4), although she does not dispute Stern Estate's point that its diligence *qualitatively* consisted of the same types of actions as those undertaken by Cyprus: efforts to locate the stolen artwork and to prevent its being marketed. *Stern Estate Mem.* at 4 n.3. Bissonnette also acknowledges that Cyprus is "clearly a more powerful force" than Dr. Stern (*Bissonnette Opp.* at 4), indicating her understanding that the *quantity* of Dr. Stern's and Stern Estate's efforts cannot and should not be judged by the same yardstick as those of Cyprus, with its worldwide reach and deeper resources.[4]

Comparing Dr. Stern's diligence to the efforts undertaken by similarly situated claimants makes clear that Stern Estate is entitled to summary judgment on Bissonnette's laches defense. In cases where a court has found that the claimant failed to pursue lost or stolen art diligently, the defendant established the claimant's long period of inaction after receiving knowledge of the theft or misappropriation. *Stuart & Sons L.P. v. Curtis Publishing Co., Inc.* 456 F. Supp. 2d 336, 348 (D. Conn. 2006) ("In contrast to the majority of cases involving stolen or missing artwork, the undisputed facts here show that the Defendants have known for many years … that [plaintiff] possessed and was asserting ownership of [the disputed] artwork."). For example, in *Peters v. Sotheby's*, 34 A.D.3d 29, 821 N.Y.S.2d 61 (N.Y. App. Div. 2006), *leave to appeal*

[4] Even by reference to similarly situated countries, evidence in that case showed "that in the Mediterranean, Cyprus 'stands apart' in its attempts to recover [stolen] property." *Cyprus*, 717 F. Supp. at 1389, *quoting* Dr. Gary Vikan, now Director of the Walters Art Museum in Baltimore.

*denied*, 865 N.E.2d 1257 (N.Y. 2007), despite having contemporaneous knowledge of the conversion of a painting in the 1930s and of its possessor, the alleged theft victim did not report a theft or take any steps to recover it at that time. In *Sanchez v. Trustees of University of Pennsylvania*, 2005 WL 94847, at *1-2 (S.D.N.Y. Jan. 18, 2004), the plaintiff family had numerous leads to the possessor and the location of the family's objects, but made very limited efforts to recover the objects. In *Wertheimer v. Cirker's Hayes Storage Warehouse*, the family knew of the misappropriation of the painting since 1947, yet did nothing, even though the painting was advertised for sale for a lengthy period of time. 300 A.D.2d 117, 117-18, 752 N.Y.S.2d 295 (N.Y.A.D. 2002). These cases establish that where there is long-time knowledge of an object's whereabouts coupled with complete inaction by the claimant, the claimant will not recover.

Here, Dr. Stern had no ability to locate the Painting, which apart from a local exhibition in Kassel, Germany in the 1950s (*Bissonnette's First 12(b) Aff.* ¶ 10) remained unpublished and unexhibited from 1945 to the present. Dr. Stern and his successors did far more than the claimants in the cases discussed above, despite being hindered by an almost complete absence of information about Stern artworks seized or forcibly auctioned during the Nazi period. Immediately after the War, Dr. Stern accessed diplomatic channels, personal resources, post-War claim procedures set up by the Allies and by West Germany, and the press in an effort to publicize and recover his extensive wartime losses. *Stern Estate Stmt of Facts* ¶¶ 39-45. Since Dr. Stern's death, Stern Estate has followed his precedent by employing many available resources, including the Art Loss Register (a widely recognized resource for registering lost and stolen art), traveling exhibitions of restituted artworks, and publications that tell Dr. Stern's story. *Id. See also Concordia University press release, "Concordia Announces the Return of an*

*Important French Painting Lost to Max Stern During the Nazi Regime,"* Oct. 19, 2006, at SE01351 (*Vineberg Dec.* Ex. 10).

Bissonnette complains that because some of the earlier efforts fail to include a specific reference to or photograph of the Painting, Stern Estate has not demonstrated adequate diligence. Bissonnette does not, however, cite a single case in support of her argument that a claimant's general recovery efforts are valueless in finding a particular artwork. Rather, as Bissonnette recognizes, courts evaluate the diligence of an art theft victim "through a 'totality of the circumstances' lens." *Bissonnette Opp.* at 5, *citing Houle v. Collatos*, 1982 U.S. Dist. LEXIS 10693, at *12 (D. Mass. Feb. 2, 1982). Dr. Stern took significant steps to spread the word of his losses in the appropriate circles, putting the art world on notice that artworks from his collection were likely to have been purchased at a forced sale or otherwise stolen. His decision not to list every item that was unaccounted for in each effort does not render his efforts undue or insufficient.

Bissonnette points to the timing of Dr. Stern's diligence efforts and contends that he did not "immediately" begin searching for his lost Painting. *Bissonnette Opp.* at 5. At the same time, Bissonnette concedes that "it is unreasonable to demand that Mr. Stern should have sought his paintings during the period immediately following the sale and during the years of World War II." *Id.* at 4. Bissonnette's concession makes the point: Dr. Stern took steps to find and recover his collection as quickly as he was reasonably able to do so. *Stern Estate Stmt of Facts* ¶¶ 39-45. As early as 1948, Dr. Stern, who – thanks to the efforts of Nazi Germany – came to this continent as an impoverished refugee, worked through Canadian and British authorities to

pursue recoveries. *Id.* ¶ 39. To require Stern Estate to show efforts any earlier would be unreasonable.[5]

### 2. Bissonnette Suffered No Prejudice.

Even if Bissonnette has shown that a reasonable jury might find that she has shown a lack of diligence on the part of Dr. Stern and Stern Estate, her laches argument suffers from the fatal flaw that *she cannot show that she suffered any prejudice as a result of any alleged lack of diligence*. Prejudice sufficient for a laches defense requires a showing that the defendant "changed his position in a way that would not have occurred if the plaintiff had not delayed." *Harley-Davidson, Inc. v. Estate of O'Connell*, 13 F. Supp. 2d 271, 282 (N.D.N.Y. 1998). For example, the loss of witnesses and documents may, in an appropriate case, constitute prejudice. *See, e.g.*, *id.* Unlike the prejudice arguments that have been given weight in other cases, Bissonnette claims only that Stern Estate's lack of diligence prevented her from selling the Painting at Estates Unlimited and benefiting from the sale. *Bissonnette Opp.* at 5.

That Bissonnette was not able to sell the Painting as she had planned is not the fault of any alleged delay in Stern Estate making its claim, but is due to the claim itself. Bissonnette is in possession of a painting subject to a serious and substantial claim that it was stolen through a forced sale ordered by Nazi authorities during the period of National Socialist rule in Germany. She and her family have been in continuous possession of the same stolen painting since the liquidation sale of the Galerie Stern. *Stern Estate Stmt of Facts* ¶¶ 32-37; *Bissonnette Stmt of*

[5] Bissonnette also claims that "some evidence of the transactions at the Lempertz [auction] survived the war." *Bissonnette Stmt of Facts* at 7, ¶ 1; *see also id.* ("there must have been some documentation in existence [at Lempertz]"). Bissonnette provides no factual support for her claim; she does not cite, nor did she produce in discovery, a single document from Lempertz establishing that any Nazi-era documentation survived the wartime bombing (*see Stern Estate Stmt of Facts* ¶ 42). In addition, Bissonnette does not dispute Stern Estate's Statement of Fact ¶ 42 that "[Lempertz's] Nazi-era records were destroyed."

*Facts* at 1 (agreeing that Stern Estate's Statements of Fact ¶¶ 32-37 are undisputed). Stern Estate made its claim promptly after learning of the Painting's whereabouts and filed suit as soon as it learned settlement negotiations had failed. The timing of the Stern Estate claim does not change that Bissonnette possesses a painting subject to a claim that it was stolen, nor would that fact have changed if Dr. Stern or his Estate had miraculously found the Painting on her family's wall earlier and made this claim one, ten, or fifty years earlier.

**B. Bissonnette Is Silent About Her Statute Of Limitations Defense.**

Stern Estate's summary judgment Memorandum sets forth in detail that it timely brought this case under Rhode Island law by filing suit within ten years of accrual of its alternative conversion and replevin claims. *Stern Estate Mem.* at 19-22. Rather than oppose Stern Estate's arguments, Bissonnette tries to preserve her statute of limitations defense by mentioning it in passing, simply stating that she "argues the equitable doctrine of laches and the legal doctrine of statute of limitations." *Bissonnette Opp.* at 2. She makes no other effort to press her argument; her Opposition is otherwise silent on statute of limitations, and does not even clarify which of Plaintiff's claims are untimely or what statute of limitations she relies upon.

**1. Conversion**

Stern Estate's conversion claim is unquestionably timely, since it has long been black-letter law in Rhode Island that a conversion claim does not accrue against one whose initial possession of an object is not considered wrongful until there has been a demand and a refusal to turn over the property to the true owner. *See, e.g., Claflin v. Gurney*, 17 R.I. 185, 187, 20 A. 932, 933 (R.I. 1890); *Goodbody & Co. Inc. v. Parente*, 116 R.I. 437, 440, 358 A.2d 32, 34 (1976) (improper exercise of dominion begins "where one, like defendant here, has rightfully come into possession of another's property, but refuses to surrender it upon demand to the person entitled thereto."). While Rhode Island courts generally apply a damages remedy where a

conversion has been found and the amount of a monetary award can be determined with certainty (*see, e.g., Case v. Bogosian*, 1996 WL 936944 (1996) (case reopened for factual determination of fair market value of automobile)), the Rhode Island Supreme Court has made clear that where a party establishing conversion "prays for an equitable remedy," as Stern Estate does here, the trial judge "may exercise the equitable powers conferred upon him or her by G.L. 1956 (1985 Reenactment) § 8-2-13 to grant relief such as recovery of personal property." *Moseman Construction Co. v. State of Rhode Island Dep't of Transportation*, 608 A.2d 34, 36-37 (R.I. 1992). *Accord Goldberg v. Lancellotti*, 503 A.2d 1129, 1131 (R.I. 1986) ("[T]here is nothing that suggests that the framers of the [replevin] statute intended it to constitute an exclusive remedy. Clearly, § 34-21-1 does not divest the Superior Court of its inherent jurisdiction to grant other forms of relief when the right to possession of personal property is in dispute.").[6]

**2. Replevin**

Although Bissonnette has not addressed the issue, Plaintiff must concede that Rhode Island's law of replevin cannot be understood as simply as previously briefed. *See Stern Estate Mem.* at 20-21. The Rhode Island Supreme Court has limited the cause of action in replevin, saying it "applies only when the plaintiff seeks pretrial seizure of personal property pending a trial to determine ownership." *Moseman*, 608 A.2d at 36. A federal court sitting in diversity may, however, regard Rhode Island's replevin statute, G.L. 1956 (1984 Reenactment) § 34-21-1, as creating a cause of action to recover identified property and apply its own procedures in determining whether to provide a remedy in any particular case. *See, e.g., Cyprus*, 717 F. Supp.

---

[6] Plaintiff's Complaint prays that the Court "award Stern Estate such other and further relief to which it may be entitled at law or in equity." *Complaint* at 14, ¶ i. This statement invokes the inherent power of this Court to exercise its equitable powers under Article III of the Constitution, comparable to the broad equitable authority of the Rhode Island courts. *Moseman*, 608 A.2d at 36-37 (*supra*).

at 1395-96. Therefore, Plaintiff submits that the Rhode Island replevin statute, in parallel with its conversion statute, provides a basis for the Court to award possession of the Painting, without imposing any requirement that a plaintiff follow the Rhode Island Superior Court writ of replevin procedures for pretrial seizure.

Likewise, determination of when a cause of action accrues falls to the Court. *See, e.g.*, *Autocephalous Greek-Orthodox Church of Cyprus v. Goldberg & Feldman Fine Arts, Inc.*, 917 F.2d 278, 288 (7th Cir. 1990). The Rhode Supreme Court has held that demand and refusal are not strictly required before a party may commence a replevin action, even against one initially not in wrongful possession of property belonging to another. *Brunswick Corp. v. Sposato*, 120 R.I. 673, 676-77, 389 A.2d 1251, 1253-54 (R.I. 1978). And yet, in cases addressing wrongful detention, demand and refusal are routinely found, even if not necessary. *See, e.g.*, *Eagle Snacks, Inc. v. Blackstone Potato Chip Co.*, 1986 WL 714427 (R.I. Superior Ct. Jan. 15, 1986); *Providence Cmty. Action Program, Inc. v. Urban League of Rhode Island, Inc.*, 1983 WL 486808 (R.I. Super. Ct. June 21, 1983). Thus, it is open to this Court to hold that under Rhode Island law, a cause of action in replevin does not accrue against one not in wrongful possession, and the statute of limitations does not begin to run until the true owner makes demand for return and has the demand rebuffed. Any other approach would have Rhode Island's ten-year statute of limitations commence at different times for replevin and conversion claims brought against one who comes into possession of property without wrongdoing but later wrongfully detains it.

Bissonnette has not explained or supported her statute of limitations defense and, in any event, Stern Estate's conversion and replevin claims are timely under Rhode Island law.

### C. Dr. Stern Was The Owner In Possession Of the Painting At The Time Of The Nazi-Ordered Auction.

Bissonnette argues that Stern Estate has not established that Dr. Stern owned the Painting at the time of the auction, claiming that Stern Estate's failure to establish Dr. Stern's ownership prohibits this Court from "wrongly depriv[ing]" Bissonnette of her property. *Bissonnette Stmt of Facts* at 8-9, ¶ 3. This argument misapprehends both the factual record and the law applicable to Stern Estate's claims.

Stern Estate has amply demonstrated Dr. Stern's ownership of the Painting. The restitution court in Germany acknowledged that as of the time of the Lempertz sale in 1937, Stern owned the Painting. In its 1964 decision (*Vineberg Dec.* Ex. 15, at SE00552a), the German Court cited and relied upon a list of Dr. Stern's losses prepared in 1962, which includes the Painting (*see Fusco Aff.* Ex. F, at SE00536). By awarding Dr. Stern compensation for lost profits on the auctioned artworks as listed, the Court acknowledged that Dr. Stern was their owner and entitled to receive partial compensation.

Moreover, it is established generally and accepted in Rhode Island that both conversion and replevin claims vindicate quiet possession as well as ownership, and may be brought by one whose quiet possession was disturbed. *Brunswick,* 120 R.I. at 676, 389 A.2d at 1253 ("Nothing more than the right of present possession . . . is necessary to enable plaintiff to maintain [a replevin] action."); *Narragansett Electric Co. v. Carbone*, 898 A.2d 87, 97 (R.I. 2006) (a conversion claimant ordinarily must only show that it "was in possession of the [property], or entitled to possession of the [property], at the time of conversion."). As explained in *Providence Cmty. Action Program*:

> In Rhode Island, replevin is a statutory action available to persons claiming possession of goods or chattels either wrongfully taken or wrongfully detained. Nothing more than the right to present possession, founded upon a general or special ownership of the goods or chattels, is necessary to enable a plaintiff to



WAS:131050.2

> maintain the action. *Brunswick Corp. v. Sposato*, 120 R.I. 673, 676, 389 A.2d 1251, 1253 (1978).

1983 WL 486808, at *1.

## CONCLUSION

Bissonnette fails to present evidence demonstrating any disputed facts to prevent the Court from entering summary judgment in favor of Stern Estate, awarding it possession of the Painting or its value if the Painting cannot be returned. Stern Estate's claims are timely, and it is entitled to return of the Painting under either or both its conversion and replevin claims.

Respectfully submitted:

*/s/ Thomas R. Kline*
ANDREWS KURTH LLP
Thomas R. Kline (admitted *pro hac vice*)
thomaskline@andrewskurth.com
L. Eden Burgess (admitted *pro hac vice*)
edenburgess@andrewskurth.com
1350 I Street NW, Suite 1100
Washington, DC 20005
Telephone: (202) 662-2700
Facsimile: (202) 662-2739

*/s/ Samuel Zurier*
TILLINGHAST LICHT LLP
Samuel Zurier (R.I. Bar No. 3576)
szurier@tllaw.com
10 Weybosset Street
Providence, RI 02903-2818
Telephone: (401) 456-1200
Facsimile: (401) 456-1210

Dated: August 14, 2007

## CERTIFICATE OF SERVICE

I the undersigned hereby certify that on August 14, 2007, the foregoing was served by email and by first-class U.S. mail, postage prepaid, on:

David A. Levy, Esq.
Marta E. Garrett, Esq.
50 Park Row West
Suite 326
Providence, RI 02903
Email: garrett@sbllp.net

*Counsel for Defendant*

/s/ Lauren Lewis